1   Timothy J. Halloran – 104498
        THalloran@mpbf.com
2   Keith G. Adams – 240497
        KAdams@mpbf.com
3   Dina M. Zagari – 278627
        DZagari@mpf.com
4   MURPHY, PEARSON, BRADLEY & FEENEY
    550 S. Hope Street, Suite 650
5   Los Angeles, CA 90071
    Telephone:   (213) 327-3500
6   Facsimile:    (213) 627-2445

7   Attorneys for Defendant
    ZAZZLE INC.

8

9                    **UNITED STATES DISTRICT COURT**

10      **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

11

| | |
|---|---|
| 12   GREG YOUNG PUBLISHING, INC., a corporation, | Case No.: 2:16-CV-04587-SVW-KS |
| 13 | **MEMORANDUM OF POINTS** |
| 14              Plaintiff, | **AND AUTHORITIES IN SUPPORT OF DEFENDANT ZAZZLE INC.'S MOTION FOR** |
| 15        v. | **SUMMARY JUDGMENT** |
| 16   ZAZZLE INC., a corporation, and DOES 1 TO 10, | *Notice of Motion and Motion, Memorandum of Points and* |
| 17              Defendants. | *Authorities, Declaration of Keith Adams, Statement of Uncontroverted* |
| 18 | *Facts and Conclusions of Law, and Proposed Judgment All* |
| 19 | *Filed Concurrently* |
| 20 | **Hearing** |
| 21 | Date:          April 24, 2017<br>Time:          1:30 p.m. |
| 22 | Place:         First Street Courthouse<br>Room:         Courtroom 10A |
| 23 | Complaint Filed:  June 23, 2016 |
| 24 | FPTC Date:        June 12, 2017<br>Trial Date:        June 20, 2017 |

25

26

27

28

# TABLE OF CONTENTS

Page

I.     INTRODUCTION .................................................................................. 1

II.    STATEMENT OF FACTS ..................................................................... 2

   A.  Greg Young And His Businesses .................................................. 2

   B.  The Westmoreland Relationship And Works ............................... 2

   C.  The Erickson Relationship And Works ........................................ 3

   D.  GYPI's March 25, 2017 "Assignments" ...................................... 6

III.   LEGAL STANDARD ............................................................................ 7

IV.    ARGUMENT ......................................................................................... 7

   A.  GYPI Lacks Standing As To All Of The Works At Issue ........... 7

       1.  Standing To Sue For Copyright Infringement Requires
           Copyright Ownership ......................................................... 7

       2.  GYPI Lacks Standing As To Westmoreland's Copyrights .............. 8

           a.  GYPI Does Not Have An Ownership Interest In
               Westmoreland's Copyrights ...................................... 8

           b.  For Marketing Agents To Have Standing, They Must
               Have Ownership Rights That GYPI Did Not Have .............. 10

           c.  The "Right to Sue" Clause Is Void *Ab Initio* ........................ 10

       3.  GYPI Lacks Any Ownership Interest In The Erickson Works ....... 11

           a.  GYPI Lacks Proper Chain Of Title To *All* Of Erickson's
               Works ............................................................................ 11

           b.  The 1999 Agreement Creates Gaps In The Chain Of
               Title .............................................................................. 14

               (1)  The 1999 Agreement Was Ineffective To Give
                    GYP Any Copyright Interest ................................. 14

               (2)  The 2004 Agreement Did Not Fix The 1999
                    Agreement ............................................................. 15

       4.  GYPI Cannot Correct Its Standing Or Chain Of Title Issues ......... 17

   B.  GYPI Is Not Entitled To Statutory Damages As To Numerous
       Works ........................................................................................... 18

       1.  Only Holders of Statutory Copyrights Can Claim Statutory
           Damages ............................................................................. 18

DEFENDANT ZAZZLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT

CASE NO.
2:16-CV-04587

**TABLE OF CONTENTS**
(continued)

Page

2.  The Statutory Copyrights In Numerous Works Are For Uncopyrightable Lithographic Reproductions ................................ 19

3.  The Supplemental Registrations Do Not Give GYPI Statutory Copyrights.................................................................... 20

4.  The "Harmless Error" Rule Does Not Apply .................................. 21

5.  Plaintiff Should Be Denied Statutory Damages As To The Works Registered As Reproductions................................................ 22

V.   CONCLUSION ................................................................................... 22

DEFENDANT ZAZZLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

CASE NO.
2:16-CV-04587

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aalmuhammed v. Lee*,
202 F.3d 1227 (9th Cir. 2000)........................................................................ 15

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*,
944 F.2d 971 (2d Cir. 1991)........................................................................... 11

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ......................................................................................... 7

*Apple Computer, Inc. v. Microsoft Corp.*,
821 F. Supp. 616 (N.D. Cal. 1993) ................................................................ 22

*Bourne Co. v. Hunter Country Club, Inc.*,
990 F.2d 934 (7th Cir. 1993)............................................................................ 9

*Bridgeman Art Library, Ltd., v. Corel Corp.*,
36 F. Supp. 2d 191 (S.D.N.Y. 1999) ............................................................. 20

*Celotex Corporation v. Catrett*,
477 U.S. 317 (1986) ......................................................................................... 7

*Cmty. for Creative Non-Violence v. Reid*,
490 U.S. 730 (1989) ....................................................................................... 15

*Data Gen. Corp. v. Grumman Sys. Support Corp.*,
795 F. Supp. 501 (D. Mass. 1992)
*aff'd on other grounds*, 36 F. 3d 1147 (1st Cir. 1994) ................................. 22

*Delacroix v. Lublin Graphics, Inc.*,
993 F. Supp. 74 (D. Conn. 1997) ................................................................... 17

*Durham Indus., Inc. v. Tomy Corp.*,
630 F.2d 905 (2d Cir. 1980)........................................................................... 20

*Effects Associates, Inc. v. Cohen*,
908 F.2d 555 (9th Cir. 1990)...................................................................... 8, 12

*Fantasy, Inc. v. Fogerty*,
654 F. Supp. 1129 (N.D. Cal. 1987) ................................................................ 9

*Hearst Corp. v. Stark*,
639 F. Supp. 970 (N.D. Cal. 1986) ................................................................ 22

*Hulex Music v. C.F. Maint. & Prop. Mgmt., Inc.*,
115 F.R.D. 303 (D.Neb.1987)......................................................................... 9

*In re Flash Memory Antitrust Litig.*,
2010 WL 2465329 (N.D. Cal. June 10, 2010) ............................................... 18

- iii -

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3   *In re Napster, Inc. Copyright Litigation*,
      191 F. Supp.2d 1087 (N.D. Cal. 2002) ........................................................ 8

4

5   *Ivanova v. Columbia Pictures Industries, Inc.*,
      217 F.R.D. 501 (C.D. Cal. 2003) .............................................................. 7

6   *Kramer v. Thomas*,
      2006 WL 4729242 (C.D. Cal. Sept. 28, 2006) ........................................ 12

7

8   *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*,
      345 F.3d 1140 (9th Cir. 2003) ................................................................ 21

9   *Lanard Toys Ltd. v. Novelty Inc.*,
      511 F. Supp. 2d 1020 (C.D. Cal. 2007) .................................................... 21

10

11  *Lance v. Forsberg*,
      106 Cal App 2d 226 (1951) ..................................................................... 12

12  *Lans v. Gateway 2000, Inc.*,
      84 F. Supp.2d 112 (D.D.C.1999),

13    *aff'd* 252 F.3d 1320 (Fed. Cir. 2001) ...................................................... 18

14  *Linda R.S. v. Richard D.*,
      410 U.S. 614 (1973) ................................................................................ 17

15

16  *Lujan v. Defenders of Wildlife*,
      504 U.S. 555 (1992) ................................................................................ 17

17  *Lumiere (Rights) Ltd. v. Baker & Taylor, Inc.*,
      116 F.3d 484, 1997 WL 303244 (9th Cir. 1997) ................................. 8, 11

18

19  *Maron v. Howard*,
      258 Cal.App.2d 473 (1968) ..................................................................... 12

20  *McMichael v. Napa Cty.*,
      709 F.2d 1268 (9th Cir. 1983) ........................................................... 17, 18

21

22  *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*,
      795 F.3d 997 (9th Cir. 2015) ................................................................... 10

23  *Nafal v. Carter*,
      540 F. Supp. 2d 1128 (C.D. Cal. 2007),

24    *aff'd* 388 Fed. Appx. 721 (9th Cir. 2010) ............................................ 9, 11

25  *Newman-Green, Inc. v. Alfonzo-Larrain*,
      490 U.S. 826 (1989) ........................................................................... 17, 18

26

27  *Plunket v. Doyle*,
      2001 WL 175252 (S.D.N.Y. Feb. 22, 2001) ............................................. 9

28  *Polar Bear Prods. v. Timex Corp.*,
      384 F.3d 700 (9th Cir. 2004) ................................................................... 19

- iv -

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Pressroom Unions–Printers League Income Sec. Fund v. Cont'l Assurance Co.*,
700 F.2d 889 (2d Cir. 1983) ................................................................. 18

*Proline Concrete Tools, Inc. v. Dennis*,
2013 WL 12116134 (S.D. Cal. Mar. 28, 2013) ................................... 20

*Righthaven LLC v. Hoehn*,
716 F.3d 1166 (9th Cir. 2013) ....................................................... 11, 18

*Schiffer Pub'l, Ltd. v. Chronicle Books, LLC*,
2005 WL 67077 (E.D. Pa. Jan. 11, 2005) .......................................... 20

*Silvers v. Sony Pictures Entm't, Inc.*,
402 F. 3d 881 (9th Cir. 2005) ........................................... 7, 10, 11, 17

*United Fabrics Int'l, Inc. v. C&J Wear, Inc.*,
2009 WL 10655841 (C.D. Cal. Sept. 29, 2009) ................................ 11

*Vianix Del. LLC v. Nuance Commc'ns, Inc.*,
2009 WL 1364346 (D. Del. May 12, 2009) ....................................... 18

*Warth v. Seldin*,
422 U.S. 490 (1975) ........................................................................... 17

### STATUTES

17 U.S.C.
§ 101 ......................................................................... 1, 13, 14, 19
§ 102(5)(a) ........................................................................... 19
§ 103 ..................................................................................... 19
§ 201 ..................................................................................... 15
§ 201(a) ............................................................................. 7, 16
§ 201(b) ................................................................................. 7
§ 201(d)(1) .......................................................................... 7, 8
§ 201(d)(2) ............................................................................. 8
§ 204 ............................................................................... 12, 14
§ 408(d) ............................................................................... 20
§ 410(c) ............................................................................... 14
§ 411 ................................................................................. 2, 7
§ 411(b) ............................................................................... 21
§ 412 ............................................................................. 18, 22
§ 501 ..................................................................................... 9
§ 501(b) ..................................................................... 7, 11, 17
§ 504(a) ............................................................................... 18
§ 504(c) ............................................................................... 19
§504(b) ........................................................................... 18, 19

### OTHER AUTHORITIES

1 M. Nimmer & D. Nimmer, *Nimmer on Copyright* (1996)
§ 2.08[C][2] ........................................................................ 19

- v -

# TABLE OF AUTHORITIES
(continued)

**Page**

3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* (1996)
§ 12.11[C]................................................................................................8

H.R. Rep. No. 94–1476, 94th Cong., 2d Sess. 159,
reprinted in 1976 U.S.Code Cong. & Ad. News 5569 ...................................9

## RULES

Federal Rules of Civil Procedure
Rule 15..........................................................................................18
Rule 56(c) .......................................................................................7

## REGULATIONS

37 C.F.R.
§ 201.5(b)(1)...................................................................................20
§ 201.5(b)(2)(i)................................................................................20
§ 201.5(b)(2)(ii)...............................................................................20
§ 201.5(b)(2)(iii)(B) .........................................................................21

1

## I.   __INTRODUCTION__

2      Plaintiff Greg Young Publishing, Inc. ("GYPI") brings copyright infringement

3   claims against defendant Zazzle Inc. ("Zazzle"), an online marketplace. GYPI claims to

4   be the owner, through assignment/license, of copyrights in the works of two artists,

5   Kerne Erickson and Scott Westmoreland. GYPI claims that Zazzle infringed on the

6   copyrights in 35 Erickson works and 6 Westmoreland works.

7      GYPI lacks standing to pursue its copyright infringement claims.

8      As to the Westmoreland works, GYPI lacks standing because its contract with

9   Westmoreland does <u>not</u> assign or license Westmoreland's copyrights to GYPI. Rather,

10   the contract makes GYPI Westmoreland's marketing agent, and marketing agents lack

11   standing to pursue infringement claims. The "right-to-sue" clause in the same agreement

12   is void under Ninth Circuit precedent.

13      Non-authors like GYPI who claim to have standing to sue bear the burden of

14   proving their chain of title to copyrights. GYPI lacks a proper chain of title to the

15   Erickson works. In 1999, Erickson and Greg Young Publishing ("GYP," a d/b/a of Greg

16   Young as an individual) entered into a purported "work for hire" contract, where

17   Erickson would create paintings for GYP as independent contractor "work for hire."

18   However, the paintings could not be "work for hire." 17 U.S.C. § 101. Realizing this

19   error, GYP and Erickson signed a new agreement in 2004, where Erickson assigned his

20   copyrights in the existing paintings to GYP. Then, in 2007, Erickson and "Greg Young

21   International" ("GYI", another d/b/a of Mr. Young) executed a new contract, wherein

22   Erickson's works were either "for hire" for, or assigned to, GYI.

23      GYPI itself was only formed in 2007, and does not have any direct contract with

24   Erickson. There were two assignments from Greg Young and GYI to GYPI — and

25   those assignments only assigned two works at issue. Even those assignments are

26   ineffective. GYPI also registered for copyright in one Erickson painting — but that

27   required a signed writing, and there is no signed writing between Erickson and GYPI.

28      GYPI lacks standing to pursue copyright infringement claims as to every

- 1 -

Erickson work at issue.

GYPI effectively conceded this point at the eleventh hour, producing purported assignments dated March 25, 2017, from Mr. Young, Mr. Erickson and Mr. Westmoreland. Such documents are too little, too late. Copyright standing is determined at the time of infringement, and federal jurisdiction is determined at the time of filing of the complaint. Attempts to manufacture jurisdiction by "amending the facts" are barred by Supreme Court and Ninth Circuit precedent. The Court should not tolerate GYPI's attempts to manipulate standing through after-the-fact assignments.

Lastly, GYPI is not entitled to statutory damages as to the works initially registered as "reproductions." To qualify for statutory damages, there must be a statutory copyright. What was registered were derivative "reproductions" of the paintings. Such reproductions are unoriginal and uncopyrightable. Neither the supplemental registrations nor the "harmless error" doctrine of 17 U.S.C. § 411 save the claimed statutory copyrights. GYPI cannot claim statutory damages for works that lack proper statutory copyrights.

## II.   STATEMENT OF FACTS

### A.   Greg Young And His Businesses

Greg Young is in the business of licensing images to third parties. Statement of Uncontroverted Facts ("SUF") ¶1. Beginning in 1992, Mr. Young did business through a d/b/a, "Greg Young Publishing." SUF ¶2. Beginning in 2007, he also did business through another d/b/a, "Greg Young International." SUF ¶3. Both were registered d/b/a's to Mr. Young individually. SUF ¶¶4-5. In 2007, Greg Young created "Greg Young Publishing, Inc.," the plaintiff in this case, which was registered with the California Secretary of State on December 18, 2007. SUF ¶6.

### B.   The Westmoreland Relationship And Works

Scott Westmoreland is an independent artist. SUF ¶7. Westmoreland registered and owns the copyright to six artworks at issue in this case. SUF ¶8.

On June 30, 2010, Westmoreland entered into an agreement with "Greg Young

- 2 -

Publishing, a California corporation" — *i.e.*, GYPI (the "Westmoreland Agreement").
SUF ¶9. The agreement appointed GYPI Westmoreland's "exclusive representative . . .
for soliciting, negotiating and administering agreements with third parties." SUF ¶12.
GYPI was to use its "reasonable best efforts" to interest third parties in Westmoreland's
work and negotiate licensing agreements on his behalf. SUF ¶13. All of those functions,
and any resulting agreements, were "subject to [Westmoreland's] prior approval." SUF
¶14. In exchange, GYPI received a portion of the proceeds. SUF ¶15. The agreement
also did <u>not</u> provide any assignment or license of <u>any</u> copyright interest to GYPI. SUF
¶16. The agreement defines Westmoreland's copyrights as being part of the "Property"
and states that GYPI "shall not at any time acquire any rights in the Property." SUF ¶17.
The agreement did have a clause stating that if Westmoreland "declines to bring an
action on his own behalf to enforce the copyrights . . . then [GYP] shall have the right to
enforce the copyrights . . . ." SUF ¶18. GYPI's express understanding is that it brought
this lawsuit pursuant to this clause — *i.e.*, that it is "bringing the lawsuit on behalf of
[Westmoreland's] IP rights that he owns." SUF ¶19.

Pursuant to the Westmoreland Agreement, GYPI negotiated several licensing
agreements with third parties. SUF ¶20. Each such agreement had several common
features, as each: was between Westmoreland and the third party, not GYPI; described
GYPI as merely an "exclusive licensing agent;" contained a copyright license from
<u>Westmoreland</u>, not GYPI; and was signed by <u>Westmoreland</u>, not GYPI. SUF ¶¶21-24.

**C.    <u>The Erickson Relationship And Works</u>**

In 1999, Mr. Young came up with an idea for a series of "vintage" paintings to
license. SUF ¶25. Mr. Young contacted Kerne Erickson, a painter. SUF ¶26. The two
entered into a business relationship (formalized in different ways as set forth below)
wherein Mr. Young would provide third-party images and "ideas" to Erickson that
Erickson would use to author paintings. SUF ¶27-30. Dozens of paintings were authored
by Erickson under this arrangement. SUF ¶31. Mr. Young then went on to create
accurate lithographic reproductions of the paintings. SUF ¶¶32-33.

DEFENDANT ZAZZLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT

CASE NO.
2:16-CV-04587

On December 21, 1999, Mr. Young/GYP and Erickson entered into a "Work for Hire Agreement" (the "1999 Agreement"). SUF ¶34. The 1999 Agreement provided that GYP would give Erickson "archetypes" and "instructions," and Erickson would create paintings based thereon. SUF ¶35. GYP could approve or reject the paintings, and paid a fixed sum on acceptance. SUF ¶¶36-37. The agreement provided that Erickson would be an independent contractor, and receive no benefits. SUF ¶38 "[C]opyrightable works" authored by Erickson would be the "exclusive property of GYP" — *i.e.*, owned by Mr. Young/GYP as work for hire. SUF ¶39.

Mr. Young learned that the 1999 Agreement characterized works as "for hire" that could not possibly be "work for hire." SUF ¶40. On August 19, 2004, Erickson and Mr. Young/GYP entered into another agreement (the "2004 Agreement"). SUF ¶41. The 2004 Agreement sought to "clarify" that the works authored under the 1999 Agreement until the date of the 2004 Agreement were assigned to Mr. Young/GYP. SUF ¶42. The agreement also stated: (i) the parties intended for works authored under the 1999 Agreement to be "for hire;" (ii) the parties intended that all copyrights would vest in GYP; (iii) to the extent the works Erickson had already authored were not "for hire," the 2004 Agreement characterized them as the "Work Product" and assigned the rights in those works to GYP; and (iv) characterized Erickson as an independent contractor. SUF ¶¶43-45, 50. The agreement then specifically assigned the rights to 23 of the works at issue from Erickson to GYP. SUF ¶46.[1] The 2004 Agreement did not "void or terminate" the 1999 Agreement. SUF ¶48. Absent from the 2004 Agreement was any *future* assignment of rights to works authored under the 1999 Agreement to GYP. SUF ¶49. The only works assigned by the 2004 Agreement was the "Work Product" already authored under the 1999 Agreement. SUF ¶¶45-46. Erickson did agree to "execute such other documents as may be requested . . . to cure any defect in this assignment" (SUF ¶51), but no such documents were timely produced. SUF ¶¶60, 83.

---

[1] Two works (CS27 – Los Angeles by Clipper and CS30 – Hawaii) were not assigned by the 2004 Agreement, even though they had already been authored. SUF ¶47.

On May 16, 2007, Erickson and "Greg Young International" (another d/b/a of Mr. Young) entered into a separate agreement wherein Erickson would create works for Mr. Young/GYI (the "2007 Agreement"). SUF ¶53. The 2007 Agreement stated that "all copyrightable materials . . . shall be deemed a 'work made for hire,'" but also included a provision that automatically assigned any copyrights that did not vest in GYI (as work-for-hire) to GYI. SUF ¶54. The agreement further specified that GYI would have the right to register the work with the Copyright Office. SUF ¶55. Like the 1999 and 2004 Agreements, the 2007 Agreement expressly stated that Erickson was an independent contractor, not an employee. SUF ¶56. The 2007 Agreement also superseded all prior agreements between the parties and their predecessors. SUF ¶57. The 2007 Agreement also included a purported assignment of copyright interests to one of the works at issue in this litigation (CS95 – Havana) from Erickson to GYI. SUF ¶58.

Mr. Young vaguely testified that, somehow, the 2004 and/or 2007 Agreements or their addendums were amended to include additional copyright assignments. SUF ¶59. No documents were provided supporting this assertion prior to GYPI's deposition. SUF ¶60. Late in the evening of March 26, 2017, GYPI produced, without authentication, documents purporting to be "addendums" to the 2004 Agreement. SUF ¶83.

On May 14, 2013, Greg Young, as an individual, assigned the copyright to "Visit Santa Monica" to GYPI (the "May 2013 Assignment"). SUF ¶61.

On September 27, 2011, Mr. Young/GYI assigned, in a written agreement recorded with the Copyright Office, various works to GYPI (the "September 2011 Assignment"). SUF ¶62. The only work possibly at issue in this litigation was "CS99 – Havana," which does not actually exist. SUF ¶63. There is "CS95 – Havana" and a "CS99 – Daytona Beach," both registered with the Copyright Office, but no "CS99 – Havana." SUF ¶73.

GYPI and Erickson have no written agreement that has been alleged or that pre-dates this litigation. SUF ¶64. The only transfer of rights to GYPI pre-dating this case were the May 2013 Assignment from Mr. Young to GYPI, and the September 2013

Assignment from GYI to GYPI. SUF ¶¶60-62, 64, 81.

The various artworks authored under these ever-shifting agreements were purportedly registered with the Copyright Office. SUF ¶¶65-75. Generally speaking, from 1999 to 2003, GYP registered the works as "works for hire" and characterized them as "reproductions." SUF ¶66. In 2003 (and again in 2013), there were "supplemental" registrations recorded, generally stating that the works were owned via assignment (not as "works for hire") and were actually paintings, not reproductions. SUF ¶68. Beginning in 2004 (with "CS75 – Cuba"), the works were generally registered as "paintings," with GYP listed as the copyright claimant through assignment, and Erickson listed as the author. SUF ¶71. Thirty-four of the thirty-five works were authored before GYPI came into existence. SUF ¶72. All works were registered by Mr. Young/GYP (not GYPI), with three exceptions: CS77 – Visit Santa Monica was registered in the name of Mr. Young alone on January 11, 2005; CS99 – Havana was registered in the name of GYI; and CS115 – Blue Hawaii was registered in the name of GYPI, although GYPI itself had no formal agreement with Erickson. SUF ¶74.[2] None of the registrations claimed Mr. Young as an author or co-author (as opposed to claimant or owner through work-for-hire). SUF ¶75.

## D.   GYPI's March 25, 2017 "Assignments"

On March 3, 2017, pursuant to the parties' stipulation, the Court set an effective last date to file summary judgment motions of March 27, 2017. SUF ¶76. GYPI's deposition was taken on March 20, 2017. SUF ¶77. At that deposition, it became readily apparent to all involved, including GYPI, that it had severe chain-of-title issues. SUF ¶78. Zazzle informed GYPI that it intended to move for summary judgment based on GYPI's lack of standing, and the parties briefly met-and-conferred on the issue. SUF ¶79. At 8:30 p.m. on March 26, 2017, GYPI then produced three purported assignments of rights from Mr. Young, Mr. Erickson and Ms. Westmoreland, presumably so it could

---

[2] In addition, in 2013, supplemental registrations were made for 17 works, listing GYP, not GYPI, as the copyright claimant. SUF ¶70.

1  argue that it had standing. SUF ¶¶80-81.

2  ### III.   LEGAL STANDARD

3        Summary judgment is appropriate where the record "show[s] that there is no

4  genuine issue as to any material fact and that the moving party is entitled to judgment as

5  a matter of law." F.R.C.P. 56(c). The moving party bears the initial burden of

6  demonstrating the absence of a genuine issue of material fact. *Anderson v. Liberty*

7  *Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is material only if it affects the outcome.

8  *Id.* at 248. The moving party need not disprove the other party's case. *Celotex*

9  *Corporation v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial

10 burden, the "adverse party may not rest . . . [on its] pleadings," and must demonstrate by

11 "admissible" evidence the existence of a genuine issue of material fact for trial. F.R.C.P.

12 56(c), *Celotex*, 477 U.S. at 323. "[T]he mere existence of a scintilla of evidence" is

13 insufficient. *Anderson*, 477 U.S. at 252.

14 ### IV.   ARGUMENT

15 **A.   GYPI Lacks Standing As To All Of The Works At Issue**

16       **1.   Standing To Sue For Copyright Infringement Requires Copyright**

17            **Ownership**

18       Pursuant to 17 U.S.C. § 501(b), "[the] legal or beneficial owner of an exclusive

19 right under a copyright is entitled, subject to the requirements of section 411, to institute

20 an action for any infringement of that particular right . . . ." Thus, under the Copyright

21 Act only legal or beneficial owners of copyrights have standing to pursue infringement

22 claims. *See Silvers v. Sony Pictures Entm't, Inc.,* 402 F. 3d 881, 889 (9th Cir. 2005) (*en*

23 *banc*) ("[O]nly the owner of an exclusive right under the copyright is entitled to sue for

24 infringement"); *Ivanova v. Columbia Pictures Industries, Inc.*, 217 F.R.D. 501, 507-508

25 (C.D. Cal. 2003) (same). Initial ownership of copyright vests in the author(s) of a work

26 — either the individual author, or the "employer" as author in a work for hire. 17 U.S.C.

27 §§ 201(a)-(b). Copyright ownership can be transferred through operation of law (*e.g.*, by

28 will) (see 17 U.S.C. § 201(d)(1)), or through agreements, but such agreements must be

- 7 -

1   in writing. *See* 17 U.S.C. §§ 201(d)(1), 201(d)(2), 204; *Effects Associates, Inc. v. Cohen*,

2   908 F.2d 555, 557 (9th Cir. 1990). Non-authors claiming ownership by written transfer

3   bear the burden of proving their chain of title. *See, e.g., Lumiere (Rights) Ltd. v. Baker*

4   *& Taylor, Inc.*, 116 F.3d 484, 1997 WL 303244 (9th Cir. 1997) ("An assignee of a

5   previously registered statutory copyright . . . bears the burden of proving its chain of

6   title . . .") (*citing* 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 12.11[C]

7   (1996)); *In re Napster, Inc. Copyright Litigation*, 191 F. Supp.2d 1087, 1101 (N.D. Cal.

8   2002) (holding that it was the plaintiff's burden to produce the chain of title from the

9   listed author).

10      **2.**     **GYPI Lacks Standing As To Westmoreland's Copyrights**

11            **a.**     **GYPI Does Not Have An Ownership Interest In Westmoreland's**

12                  **Copyrights**

13       Westmoreland authored his own artwork, and is the registered owner of the

14   copyrights. SUF ¶¶7-8. The only agreement between GYPI and Westmoreland is the

15   Westmoreland Agreement. SUF ¶¶9-10.

16       The Westmoreland Agreement does not assign or license <u>any</u> copyrights from

17   Westmoreland to GYPI. SUF ¶16. In fact, the agreement carefully does the opposite. It

18   defines Westmoreland's copyrights as being part of the "Property," and then states that

19   GYPI "acknowledges the principal's exclusive right in and to the Property" and "shall

20   not at any time acquire any rights in the Property." SUF ¶17. This is the strongest

21   possible evidence that GYPI is <u>not</u> a copyright owner. If the parties had intended GYPI

22   to have an ownership interest in Westmoreland's copyrights, they could not be his

23   "exclusive" property. As the Ninth Circuit has held, "[i]f the copyright holder agrees to

24   transfer ownership to another party, that party must get the copyright holder to sign a

25   piece of paper saying so." *Effects Associates, Inc., supra,* 908 F.2d at 557. Far from a

26   clear and unambiguous statement of intent to transfer copyright ownership, the

27   Westmoreland Agreement expressly disavows any such intent.

28       The agreement merely makes GYPI Westmoreland's "exclusive representative,"

- 8 -

1  with the right and the duty to solicit and pitch potential licensees, negotiate agreements
2  (subject to Westmoreland's approval) with potential licensees, and administer the
3  resulting agreements. SUF ¶¶12-14. That is to say, GYPI acts as Westmoreland's agent,
4  negotiating agreements on his behalf. All of the third-party licenses GYPI negotiates are
5  ultimately entered into by Westmoreland, not GYPI, and invariably described GYPI as a
6  "marketing agent." SUF ¶¶21-24.

7        What GYPI acquired in the Westmoreland agreement was not "an exclusive right
8  under a copyright." What GYPI acquired was the right to act as Westmoreland's agent.
9  Court after court has found that such agents lack standing to sue for copyright
10  infringement.[3] Nor would GYPI be considered a "beneficial owner" under Section 501.[4]

11        As held in *Nafal v. Carter*, 540 F. Supp. 2d 1128 (C.D. Cal. 2007), *aff'd* 388
12  Fed. Appx. 721 (9th Cir. 2010), "[i]n order to be considered a co-owner of an exclusive
13  license, Plaintiff must in some manner be similarly situated with respect to [the
14  copyright owner], meaning that he has an independent and equivalent power to exercise
15  his rights . . . ." *Id.* at 1142. GYPI has <u>no</u> such independent power with respect to the
16  Westmoreland copyrights, as the copyrights are ultimately licensed by Westmoreland,
17  not GYPI. GYPI therefore lacks standing
18  / / /

---

19  [3] *See, e.g., Bourne Co. v. Hunter Country Club, Inc.*, 990 F.2d 934, 937 (7th Cir. 1993)
20  ("A licensing agent is neither the legal nor the beneficial owners of the copyright and has
  no interest in the copyright."); *Hulex Music v. C.F. Maint. & Prop. Mgmt., Inc.,* 115
21  F.R.D. 303, 304 (D.Neb.1987) (holding that a licensing agent "is not the legal or
  beneficial owner of the copyright"); *Plunket v. Doyle*, 2001 WL 175252, at *5 (S.D.N.Y.
22  Feb. 22, 2001) (plaintiff who claimed to have the "exclusive worldwide rights to manage,
  as well as to negotiate, license, and otherwise cause and permit the exploitation" of all
23  rights lacked standing under the Copyright Act).

24  [4] The Copyright Act does not define "beneficial owner." *See* H.R. Rep. No. 94–1476,
  94th Cong., 2d Sess. 159, reprinted in 1976 U.S.Code Cong. & Ad. News 5569, 5575
25  (providing just one example: "a 'beneficial owner' . . . would include, for example, an
  author who had parted with legal title to the copyright in exchange for percentage
26  royalties based on sales or license fees") Courts in the Ninth Circuit have narrowly
  defined "beneficial owner" as being only an individual who had legal title and parted
27  with it in exchange for royalties. *See, e.g., Fantasy, Inc. v. Fogerty*, 654 F. Supp. 1129
  (N.D. Cal. 1987) (a "beneficial owner has transferred his exclusive rights over the
28  copyright's use in exchange for an economic interest in proceeds derived from that
  use").

DEFENDANT ZAZZLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT

CASE NO.
2:16-CV-04587

### b.   For Marketing Agents To Have Standing, They Must Have Ownership Rights That GYPI Did Not Have

In a recent decision, *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1002-06 (9th Cir. 2015), the Ninth Circuit found that an agency who had entered into a series of "Agency Agreements" with photographers had standing to sue for copyright infringement as to such photographs. However, the "Agency Agreements" were quite different than the Westmoreland Agreement at issue. *Minden* found that the agreements transferred "transferred an interest in a legally cognizable right in the photographers' copyrights" because they permitted the agency to "to reproduce, and to authorize the reproduction of, the copyrighted photographs" — one of the six exclusive rights of Copyright Owners under the Copyright Act. *Id.* at 1003. The agency had the right "to authorize" both the distribution and the display of the photographs by granting licenses to third parties without the involvement of the photographers. *Id.* at 1003. The only real restrictions on those rights were that the agency had to seek the photographers' permissions for "certain kinds of licenses" and the agreements could be terminated at specified intervals. *Id.* at 1003.

The contrast with GYPI is stark. Unlike the agency in *Minden*, GYPI cannot enter any agreements with third parties without Westmoreland's permission. Westmoreland itself, not GYPI, enters into all such contracts. GYPI itself is not authorized to distribute or display Westmoreland's photographs. The key element in *Minden* was that the agreements "convey[ed] the rights to reproduce, distribute, and display the photographs via an 'exclusive license' to grant licenses to third parties," making the agent the equivalent of a copyright owner. *Id.* at 1005. Such a right is entirely absent here.

### c.   The "Right to Sue" Clause Is Void *Ab Initio*

Nor is GYPI saved by the clause in its contract that purports to grant it a right to sue, which it uses to justify bringing this action. SUF ¶19. In *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881 (9th Cir. 2005) (*en banc*), the plaintiff had written a screenplay as "work for hire" for a company. *Id.* at 883. The company retained

- 10 -

ownership in the film, but assigned to plaintiff "all right, title and interest in and to any claims and causes of action . . . with respect to the screenplay . . . and the motion picture." *Id.* The Circuit held that, as 17 U.S.C. § 501(b) stated that "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled ... to institute an action for any infringement," then "under traditional principles of statutory interpretation, Congress' explicit listing of who may sue for copyright infringement should be understood as an exclusion of others from suing for infringement." *Id.* at 885. The Circuit thus held that "Congress . . . did not alter the requirement that only owners of an exclusive right in the copyright could bring suit." *Id. Silvers* thus concluded that "[t]he bare assignment of an accrued cause of action is impermissible under 17 U.S.C. § 501(b)." *Id.* at 890. Here, as GYPI lacks any ownership interest as set forth above, the "right to sue" clause in Westmoreland Agreement is a "bare assignment" of causes of action barred by the *en banc* holding in *Silvers*.[5]

### 3.     GYPI Lacks Any Ownership Interest In The Erickson Works

#### a.     GYPI Lacks Proper Chain Of Title To *All* Of Erickson's Works

GYPI lacks standing to sue for infringement of the Erickson works as well.

GYPI is a California corporation that was registered on December 18, 2007. SUF ¶6. Of the 35 Erickson works at issue, *34* were authored on or before June 12, 2007 — *i.e.*, before GYPI existed. SUF ¶72. GYPI could not possibly be the original owner or author of the 34 artworks authored before it even came into existence. As such, it bears the burden of proving its chain of title. *See, e.g., Lumiere (Rights) Ltd.,* 116 F.3d 484; *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 2009 WL 10655841, at *2 (C.D. Cal. Sept. 29, 2009) (referring to plaintiff's "burden to show ownership of the copyright,

---

[5] *See, e.g., Nafal v. Carter*, 388 Fed. Appx. 721, 723 (9th Cir. 2010) ("[The] documents were a disguised assignment of a cause of action prohibited under *Silver*"); *ABKCO Music, Inc. v. Harrisongs Music, Ltd.,* 944 F.2d 971, 980 (2d Cir. 1991) ("[The] Copyright Act does not permit copyright holders to choose third parties to bring suits on their behalf."); *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1169–70 (9th Cir. 2013) ("[Assignment] of the bare right to sue for infringement, without the transfer of an associated exclusive right, is impermissible under the Copyright Act and does not confer standing").

1  particularly a chain of title"); *Kramer v. Thomas*, 2006 WL 4729242, at *6 (C.D. Cal.

2  Sept. 28, 2006) ("[An] assignee of a previously registered statutory copyright . . . bears

3  the burden of proving its chain of title . . . .").

4       GYPI lacks any sort of chain of title to 32 of the 35 works at issue. The 1999

5  Agreement was between Mr. Young/GYP and Erickson; the 2004 Agreement, assigning

6  past works, was between Mr. Young/GYP and Erickson; and the 2007 Agreement was

7  between Mr. Young/GYI and Erickson. SUF ¶¶34, 41. There is no written agreement

8  between GYPI and Erickson pre-dating this litigation, at least none alleged or produced

9  in this case. SUF ¶¶64, 81. Thus, absent a *written* assignment from Erickson,

10  Mr. Young, GYP or GYI to GYPI, GYPI lacks a chain of title.

11       Furthermore, virtually all of the copyright registrations, both those before GYPI

12  came into existence and those from after, list "Greg Young Publications" (*i.e.*, GYP) as

13  the copyright claimant. SUF ¶74.[6] That only makes sense: after all, the 1999, 2004 and

14  2007 Agreements were with GYP/GYI, both d/b/as of Mr. Young, and were made

15  before GYPI even existed. Thus, it was Mr. Young as an individual, not GYPI, who

16  would have been able to claim rights under that agreement.

17       What is missing here is an agreement by Mr. Young, GYP and/or GYI that

18  assigns their rights in the Erickson works at issue to GYPI that pre-dates this litigation

19  (a requirement for standing as set forth below). Without such agreement(s), GYPI lacks

20  a chain of title. A transfer of a copyright must be in "writing and signed by the owner of

21  the rights conveyed." 17 U.S.C. § 204. While even a "one-line *pro forma* statement will

22  do" (*Effects Associates, Inc.*, 908 F.2d at 558), GYPI has <u>nothing</u>.[7]

23  
24  [6] The registrations or supplemental registrations as to works at issue made while GYPI existed were CS115 – Blue Hawaii registration (listing GYPI) and the 2013 supplemental

25  registrations for various works, which listed <u>GYP</u>, not GYPI. SUF ¶¶70, 74.

26  [7] Under California law, incorporation of a pre-existing entity does not automatically transfer property to a new corporation. *See, e.g., Maron v. Howard*, 258 Cal.App.2d 473, 485 (1968) ("The mere incorporation of an existing partnership or other voluntary

27  association . . . does not *ipso facto* operate to transfer to the corporation the title to the real or personal property of the partnership or association . . . but there must be a

28  conveyance, contract of sale, or assignment . . .") (emphasis added); *Lance v. Forsberg*, 106 Cal App 2d 226, 230 (1951) (holding that incorporation of a partnership does not

| DEFENDANT ZAZZLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT | CASE NO. 2:16-CV-04587 |

There are only three Erickson works where GYPI has even a semblance of a chain of title. GYPI lacks the rights to each of these as well.

*CS77 – Visit Santa Monica:* This was the subject of a May 2013 Assignment from Mr. Young to GYPI. SUF ¶61.[8] However, Mr. Young lacked proper title to this work. It was authored, presumably pursuant to the 1999 Agreement. However, that agreement was invalid, as it attempted to characterize paintings authored by an independent contractor as "works for hire" when they legally could not have been. *See* Section IV.A.3.b, *infra*; 17 U.S.C. § 101; SUF ¶40. Nor was this **2005** painting included in the **2004** Agreement, which included a "back-up" assignment of works authored under the 1999 Agreement to GYP. SUF ¶48 As Mr. Young himself lacked legal title to this work, he could not have transferred it to GYPI. The only document purporting to assign rights in CS77 from Erickson was an objectionable and unauthenticated document produced *after* GYPI's deposition and shortly before the summary judgment deadline, depriving Zazzle of any opportunity to effectively examine GYPI as to the document. SUF ¶¶60, 77, 80- 82.

*CS99 – Havana:* This was purportedly the subject of the September 2013 Assignment from Mr. Young/GYI to GYPI. SUF ¶62. However, the September 2013 Assignment lists a work called "Havana: no. CS99." GYI did not have the rights to such work, because none existed. SUF ¶63. Under the 2007 Agreement, GYI had the rights to "CS95 – Havana" and "CS99 – Daytona Beach." There was no "CS99 – Havana" to transfer.

*CS115 – Blue Hawaii:* GYPI registered itself as the copyright claimant (*i.e.*, owner of all rights) for this artwork "by written agreement," identifying Erickson as the

---

operate to transfer the title to property of partnership to the new corporation, and requiring a separate conveyance).

[8] In addition, as will be explained in Zazzle's opposition to GYPI's motion for partial summary judgment, GYPI's copyright infringement claim as to this work fails as a matter of law. There were no sales of physical products associated with CS77. As such, any alleged display or distribution of "images" of CS77 by Zazzle falls within the "safe harbor" provisions of the Digital Millennium Copyright Act. *See* 17 U.S.C. § 512(c).

author. SUF ¶74. Yet GYPI has <u>no</u> written agreement with Erickson (SUF ¶64) as required by section 204 (for a transfer) or section 101 (for work for hire). Nor can GYPI rely on the registration presumption of 17 U.S.C. § 410(c), which states that "the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence . . . of the facts stated in the certificate." The registration was effective June 2, 2010 (SUF ¶74) — as such, more than five years have passed and GYPI is no longer entitled to the benefit of the presumption. Nor did "GYP," much less "GYPI," even have a contract with Erickson in 2010, as GYP's 1999 and 2004 Agreements had been superseded by the 2007 Agreement with GYI. SUF ¶57.

### b.   The 1999 Agreement Creates Gaps In The Chain Of Title

Zazzle anticipates that GYPI will claim that it somehow has standing as the successor-in-interest to GYP, or that references to "GYP" refer to "GYPI," even though GYPI did not exist for most of the relevant period. Even treating GYP and GYPI as identical, GYPI has chain of title problems. The reason is simple: the initial 1999 Agreement was fatally flawed; the rights to those works vested in Erickson, not GYP; and GYPI never obtained an assignment as to many works from Erickson.

### (1)   The 1999 Agreement Was Ineffective To Give GYP Any Copyright Interest

The 1999 Agreement, titled "Work For Hire Agreement," was ineffective. The clear intent of the agreement was that artwork produced under it would be "work for hire." SUF ¶¶39-40, 43.[9] However, that was impossible. 17 U.S.C. § 101 defines two permissible categories of "work for hire": (1) "a work prepared by an employee within the scope of his or her employment," and (2) works "specially ordered or commission for use . . . [in] a collective work . . . motion picture or other audiovisual work, as a translation, as a supplementary work . . . if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire."

---

[9] The 2004 Agreement, even while purporting to be an assignment, confirmed this intent when it stated that the "Work Product" (defined as certain works produced under the 1999 Agreement) was to "be considered a work made for hire." SUF ¶43.

1    The paintings were obviously not within any of the categories under (2). As to the

2    determination of whether Erickson was an "employee," under the Supreme Court's

3    decision in *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751-53 (1989), that

4    determination is made by considering the "common law of agency." Erickson certainly

5    does not so qualify. As a start, the 1999 Agreement (and all subsequent agreements)

6    expressly characterize him as an independent contractor, not an employee, and he was

7    paid as such and provided no benefits. SUF ¶¶38, 50, 56. GYP was not involved in the

8    physical creation of the works. SUF ¶¶28-29. The fact that GYP could assign projects to

9    Erickson does not distinguish him from any other independent contractor with a long-

10   running relationship with a client. Erickson is even paid a fixed amount per painting

11   (SUF ¶37) — a factor that the Supreme Court found relevant in determining that an

12   individual was an independent contractor. *See CCNV*, 490 U.S. at 753 ("CCNV paid

13   Reid $15,000, a sum dependent on 'completion of a specific job, a method by which

14   independent contractors are often compensated.'")

15       The 1999 Agreement was invalid. Paintings cannot be work for hire unless they

16   are created by employees, and Erickson was never an employee. Thus, initial ownership

17   of the copyrights vested in Erickson, not GYP. *See* 17 U.S.C. § 201.[10]

18                    **(2)    The 2004 Agreement Did Not Fix The 1999 Agreement**

19       GYP eventually realized that the 1999 Agreement was ineffective, and entered

20   into the 2004 Agreement. SUF ¶¶40-41. The 2004 Agreement defined the artwork

21   already authored by Erickson under the 1999 Agreement as "Work Product." SUF ¶45.

22   It stated that it was "the intent and understanding of the parties" that the copyright in the

23   "Work Product" would vest in GYP, that it was the parties' intent that the "Work

24   ────────────────────
     [10] Nor can Mr. Young (or GYP) claim to be a co-author. Co-authorship "requires each
25   author to make an independently copyrightable contribution" to the disputed work."
     *Aalmuhammed v. Lee*, 202 F.3d 1227, 1231 (9th Cir. 2000). There must be (1) an
26   exercise of control, (2) objective manifestations of shared intent to be coauthors, and (3)
     audience appeal must turn on both author's contributions. *Id.* at 1234. Mr. Young does
27   not claim to be a coauthor (SUF ¶30) and the copyright registrations, which Mr. Young
     submitted, either (a) list Erickson, not Mr. Young or GYP, as the sole "author," or (b)
28   lists GYP as the author as a "work made for hire" by Erickson. SUF ¶66. There are no
     "objective manifestations" of any intent to be coauthors.

                                         - 15 -

1   Product shall be considered a work for hire," and that, to the extent the "Work Product"
2   was not work-for-hire, the agreement assigned the rights from Erickson to GYP. SUF
3   ¶¶42-44.

4       There were two key issues with this agreement.

5       *First*, the 2004 Agreement purported to assign the rights in the works Erickson
6   had authored to GYP — but it missed two works that had already been authored at that
7   time, CS27 – Los Angeles by Clipper and CS30 – Hawaii. SUF ¶47. Copyright in those
8   works initially vested in Erickson, as an author. 17 U.S.C. § 201(a). There is no written
9   agreement with Erickson transferring those works to GYP, as is required.

10      *Second*, the 2004 Agreement expressly did <u>not</u> revoke or supersede the 1999
11  Agreement, and specified that the 1999 Agreement "shall continue to stay in effect."
12  SUF ¶48. The result is that works authored *after* the 2004 Agreement were still subject
13  to the 1999 Agreement. What's more, the 2004 Agreement was a "complete and
14  absolute assignment to GYP" of the copyrights in the "Work Product" — but the "Work
15  Product" was defined by "Schedule A," which naturally did not include works that had
16  not yet been authored. SUF ¶45. So the 2004 Agreement left in place the flawed 1999
17  Agreement, meaning that works authored after its effective date (August 19, 2004)
18  continued to be owned by Erickson as an author under section 201(a). After August 19,
19  2004, Erickson create nine of the works at issue in this litigation. SUF ¶52. Absent a
20  subsequent *written* assignment to GYP by Erickson of the copyright interests in those
21  nine works, Erickson still owns them. No such assignment was timely produced in this
22  case as to at least seven of those works. SUF ¶60.[11] GYPI eventually produced
23  documents purporting to be "addendums" to the 2004 Agreement assigning works
24  created past 2004. SUF ¶82. Said "addendums" should not be admitted in opposition, as
25  Zazzle was effectively deprived of the chance to cross-examine GYPI on them by
26  GYPI's failure to produce the addendums prior to its deposition. Even if admitted, they

27  _____
[11] The two works where an arguable assignment was produced were CS77 – Visit Los
28  Angeles and CS99 – Havana. The issues with those assignments are addressed in Section
    IV.A.3, *infra*.

DEFENDANT ZAZZLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN          CASE NO.
SUPPORT OF MOTION FOR SUMMARY JUDGMENT                                    2:16-CV-04587

1   do GYPI no good, as they assign rights to GYP (*i.e.*, Mr. Young), not GYPI.

2         **4.**     **GYPI Cannot Correct Its Standing Or Chain Of Title Issues**

3         GYPI lacks a chain-of-title to, or ownership interest in, any of the Erickson works

4   at issue in this litigation, and therefore lacks standing. GYPI also cannot cure these

5   defects through its *post hoc* assignment/licenses of rights from Mr. Young or

6   Mr. Erickson to GYPI. SUF ¶81. Nor can GYPI be permitted to amend the complaint to

7   name the proper plaintiff (*e.g.*, Mr. Young d/b/a GYP and GYI).

8         In order for a plaintiff to be "entitled . . . to institute an action" (17 U.S.C.

9   § 501(b)) for infringement, the infringement must be "committed while he or she is the

10   owner of" the particular exclusive right allegedly infringed. *See Silvers*, 402 F.3d at

11   885; *Delacroix v. Lublin Graphics, Inc.*, 993 F. Supp. 74, 83 (D. Conn. 1997) (holding

12   that where a complaint is filed by the assignee before the assignment, the assignee lacks

13   standing).

14         This action was instituted in June 2016, and relates to alleged infringements that

15   have already occurred. Whatever GYPI does now or going forward, its chain-of-title

16   was entirely defective at the relevant times. "Before the judicial process may be

17   invoked, a plaintiff must 'show that the facts alleged present the court with a 'case or

18   controversy' in the constitutional sense and that he is a proper plaintiff to raise the

19   issues sought to be litigated.'" *McMichael v. Napa Cty.*, 709 F.2d 1268, 1269 (9th Cir.

20   1983) (citing and quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 616 (1973)). To be

21   the proper plaintiff, a party "must assert his own rights and 'cannot rest his claim to

22   relief on the legal rights or interests of third parties.'" *McMichael*, 709 F.2d at 1270

23   (citing *Warth v. Seldin*, 422 U.S. 490, 517-18 (1975)).

24         Furthermore, "[t]he existence of federal jurisdiction ordinarily depends on the

25   facts *as they exist when the complaint was filed*." *Lujan v. Defenders of Wildlife*, 504

26   U.S. 555, 571 n. 4 (1992) (*quoting Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S.

27   826, 830 (1989)) (emphasis in original). Although a court may allow parties to amend

28   jurisdictional allegations, that power is limited to amendment of "incorrect statements

- 17 -

1    about jurisdiction that actually exists, and not defects in the jurisdictional facts

2    themselves." *Newman-Green, Inc.*, 490 U.S. at 831.

3           Thus, a party lacking standing at the outset of the lawsuit has no power to

4    prosecute the action. *See McMichael v. County of Napa*, 709 F.2d 1268, 1269 (9th

5    Cir.1983). "[A] plaintiff may not amend the complaint to substitute a new plaintiff in

6    order to cure a lack of jurisdiction, because a plaintiff may not create jurisdiction by

7    amendment when none exists." *Lans v. Gateway 2000, Inc.*, 84 F. Supp.2d 112, 115

8    (D.D.C.1999) (denying leave to amend to substitute proper patent infringement

9    plaintiff) (quotations omitted) *aff'd* 252 F.3d 1320 (Fed. Cir. 2001).[12]

10          GYPI's belated March 25, 2017 assignments are little more than attempts to cure

11   "defects in the jurisdictional facts themselves," barred by *Newman-Green, Inc.* GYPI

12   cannot cure its lack of standing by amendment or belated assignment. *See Righthaven*

13   *LLC v. Allec,* 2012 WL 909832, at *1 (D. Nev. Mar. 16, 2012) (denying attempt by

14   copyright plaintiff to amend its complaint, and considering standing solely on the basis

15   of the "the actual assignment and language of the [agreement] as it existed at the time

16   the Complaint [] was filed," as the post-complaint amendment was an "attempt to

17   impermissibly amend the facts to manufacture standing").

18   **B.    GYPI Is Not Entitled To Statutory Damages As To Numerous Works**

19          **1.    Only Holders of Statutory Copyrights Can Claim Statutory Damages**

20          Only plaintiffs with pre-registered statutory copyrights are entitled to statutory

21   damages and attorney's fees. 17 U.S.C. §§ 412, 504(a), (b). For <u>unregistered</u> copyrights,

22   only actual damages are available. 17 U.S.C. § 412. Registration prior to the

23   alleged infringement is a prerequisite to obtaining statutory damages. *See Polar*

24   [12] *See also In re Flash Memory Antitrust Litig.*, 2010 WL 2465329, at *3 (N.D. Cal.

25   June 10, 2010) ("Chanda cannot cure his admitted lack of standing by seeking leave to
     amend under Rule 15 . . . ."); *Pressroom Unions–Printers League Income Sec. Fund v.*

26   *Cont'l Assurance Co.*, 700 F.2d 889, 893 (2d Cir. 1983) ("The longstanding and clear rule
     is that 'if jurisdiction is lacking at the commencement of [a] suit, it cannot be aided by the

27   intervention of a [plaintiff] with a sufficient claim.' ") (quotation omitted); *Vianix Del.*
     *LLC v. Nuance Commc'ns, Inc.*, 2009 WL 1364346 at *2 (D. Del. May 12, 2009) (denying

28   plaintiff's motion for leave to amend to substitute a party with standing where plaintiff
     lacked standing at the inception of the case).

1    *Bear Prods. v. Timex Corp.*, 384 F.3d 700, 708 n. 5 (9th Cir. 2004) (holding that where

2    the plaintiff did not register its copyright before infringement, it can recover only actual

3    damages and profits under § 504(b), not statutory damages under § 504(c)).

4    **2.    The Statutory Copyrights In Numerous Works Are For**

5    **Uncopyrightable Lithographic Reproductions**

6    Twenty-four Erickson works were initially registered as "reproductions" of works

7    of art, almost all as "reproduction of painting by photolithography," with ownership

8    claimed by GYP as "work for hire." SUF ¶67.

9    The fundamental problem with the registrations is not that they were inaccurate,

10   but that they were too accurate. Those paintings were authored by Erickson under the

11   invalid 1999 Agreement, and were not "work for hire." Rather, the copyrights were

12   owned by Erickson as the author. GYP then registered for copyright in the lithographic

13   reproductions, the only works GYP would have been the "author" of, as the

14   reproductions were the only works "fixed in a tangible medium of expression" by GYP.

15   However, those reproductions were <u>not</u> eligible for copyright protection.

16   Mr. Young testified that he created them by taking extremely accurate photographs of

17   Erickson's artwork, without embellishing or changing the images in any way. SUF

18   ¶¶32-33. That is to say, the reproductions were "derivative works" of the paintings, as

19   they were "based upon one or more preexisting works." 17 U.S.C. § 101. The copyright

20   in a derivative work "extends only to the material contributed by the author of such

21   work," and does not "does not affect or enlarge the scope, duration, ownership, or

22   subsistence of, any copyright protection in the preexisting material." 17 U.S.C. § 103.

23   Reproductions are considered derivative works. *See* 17 U.S.C. § 102(5)(a); 1 M. & D.

24   Nimmer, *Nimmer on Copyright* § 2.08[C][2], at 2-108 ("If the copyright claimant

25   cannot establish his own originality or ownership in the underlying work, he may still be

26   able to claim the more limited protection given to a reproduction of a work of art.").

27   GYP's only contribution to the preexisting works (the paintings) was copying them into

28   another medium (lithographs), as accurately as possible and without embellishment or

- 19 -

1     changes. As such, they are "unoriginal" and lack copyright protection. *See, e.g.,*

2     *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 910 (2d Cir. 1980); *Bridgeman Art*

3     *Library, Ltd., v. Corel Corp.*, 36 F. Supp. 2d 191, 197 (S.D.N.Y. 1999); *Proline*

4     *Concrete Tools, Inc. v. Dennis*, 2013 WL 12116134, at \*5 (S.D. Cal. Mar. 28, 2013).

5         **3.**     **The Supplemental Registrations Do Not Give GYPI Statutory**

6                 **Copyrights**

7         After initially registering its reproductions as works for hire, GYP then filed

8     "supplemental" registrations that purported to correct the errors in the original

9     applications. Those supplemental registrations, in effect, did the following: they

10    changed the "author" of the work from GYP, as author of a work-for-hire, to Erickson,

11    with ownership by GYP through assignment; and they changed the works themselves,

12    going from claiming copyrights in photolithographic reproductions of paintings to

13    claiming copyrights in the underlying paintings themselves. SUF ¶¶68-70.

14         The Copyright Act permits the Copyright Office to issue supplemental

15    registrations "to correct an error in a copyright registration" or "amplify the information

16    given." 17 U.S.C. § 408(d). A supplemental registration can only be made "if a basic

17    copyright registration for the same work has already been completed." 37 C.F.R.

18    § 201.5(b)(1) (emphasis added). "A correction is appropriate if information in the basic

19    registration was incorrect at the time that basic registration was mad." 37 C.F.R.

20    § 201.5(b)(2)(i). An amplification is appropriate to "supplement or clarify" information

21    that should have been on the original application, or to "reflect changes in facts . . . that

22    have occurred since the basic registration was made." 37 C.F.R. § 201.5(b)(2)(ii).

23         The supplemental registrations are thus invalid. The plain text of the Copyright

24    Act and the regulations make clear that a supplemental registration is only available

25    where the registration for the same work has already been filed. There was no "basic

26    copyright registration" for Erickson's paintings in the first instance. *See, e.g., Schiffer*

27    *Pub'l, Ltd. v. Chronicle Books, LLC,* 2005 WL 67077, at \*3-4 (E.D. Pa. Jan. 11, 2005)

28    (holding that adding new works not included in an original registration impermissibly

changes the content of the registered work in violation of 37 C.F.R.
§ 201.5(b)(2)(iii)(B)). In addition, a "correction" requires "incorrect information" in the basic registration. But the initial registrations were correct, not incorrect: GYP claimed an interest in the reproductions that it created. There is no provision permitting supplemental registrations to "correct" already-accurate information. There were no proper grounds for "amplification" as the past facts concerning the creation of the paintings by Erickson and the reproductions by GYP had obviously not changed.[13]

### 4.     The "Harmless Error" Rule Does Not Apply

Section 411(b) establishes a sort of "innocent error" rule, and preserves registrations that suffer from some inaccuracy in the registration application provided that (1) the inaccuracy was included without knowledge that the information was inaccurate, and (2) the inaccuracy would not have caused the Register of Copyrights to refuse the registration. *See* 17 U.S.C. § 411(b). The Ninth Circuit has embraced a broad view of innocent error under this provision. *See, e.g., Lamps Plus, Inc. v. Seattle Lighting Fixture Co.,* 345 F.3d 1140, 1145 (9th Cir. 2003); *Urantia Found. v. Maaherra,* 114 F.3d 955, 963 (9th Cir. 1997). Section 411(b) does not affect the result here. Section 411(b) undoubtedly applies to registrations that contain unintentionally inaccurate information. However, GYP's original registrations, as set forth above, were accurate — they were just for unoriginal reproductions not eligible for copyright protection. "[Errors] or misstatements contained in an application for registration will invalidate the subject copyright <u>only where the work in question would not have been eligible for copyright</u> had the registration application contained a correct statement of the facts." *Lanard Toys Ltd. v. Novelty Inc.*, 511 F. Supp. 2d 1020, 1034 (C.D. Cal. 2007) (emphasis added). Here, the reproductions would not have been eligible for protection if the registrations were accurate; as such, the "harmless error" rule does not

---

[13] Even if GYP argues that the supplemental registrations were to provide "amplifications" based on the 2004 Agreement, the registrations for seven works were "supplemented" before the August 19, 2004 date of that agreement. SUF ¶69. There was no basis for any "amplification" as to such works.

- 21 -

1  save the registrations.

2       **5.**     **Plaintiff Should Be Denied Statutory Damages As To The Works**

3                 **Registered As Reproductions**

4       Even if the erroneous registrations are deemed valid, this court should not rely on

5  them for award of statutory damages or attorney's fees. "Preexisting material in a

6  derivative work which is carried forward from a prior work is only protected under the

7  copyrights for the prior work." *Apple Computer, Inc. v. Microsoft Corp.*, 821 F. Supp.

8  616, 628 (N.D. Cal. 1993). For the works initially registered as lithographs, the

9  underlying paintings therefore lack statutory copyright. Although a plaintiff may

10  maintain an infringement action despite innocent mistakes in its registration, those

11  mistakes may impact the amount of damages that the plaintiff is awarded. *See, e.g.,*

12  *Hearst Corp. v. Stark*, 639 F. Supp. 970, 974 (N.D. Cal. 1986). A plaintiff might be

13  precluded under Section 412 of the Copyright Act from recovering statutory damages or

14  attorney's fees for infringement, and be entitled only to an award of actual damages,

15  defendants' profits, and injunctive relief. *Id.*; *see also Data Gen. Corp. v. Grumman Sys.*

16  *Support Corp.,* 795 F. Supp. 501, 504 (D. Mass. 1992) (for purposes of awarding

17  attorney's fees, separately registered derivative works are not to be considered as

18  constituting the same work as the original), *aff'd on other grounds,* 36 F. 3d 1147 (1st

19  Cir. 1994). The same should apply here, and GYPI denied any entitlement to statutory

20  damages or attorney's fees for works registered as reproductions.

21                      **V.**    **CONCLUSION**

22       Zazzle respectfully requests that the Court grant its motion for summary

23  judgment, as GYPI lacks standing to pursue its claims.

24   DATED: March 27, 2017         MURPHY, PEARSON, BRADLEY & FEENEY

25

26                 By   _____

26                      Keith G. Adams

27                      Attorneys for Defendant

27                      ZAZZLE INC.

28

DEFENDANT ZAZZLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT

CASE NO.
2:16-CV-04587