**JEFFREY S. YOUNG, SBN 172016**
**LAW OFFICES OF JEFFREY S. YOUNG**
1307 State Street, First Floor
Santa Barbara, CA 93101
jeff@jeffreyyounglaw.com
Tel: (805) 884-0338
Fax: (805) 884-0799

Attorney for Plaintiff GREG YOUNG PUBLISHING, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| GREG YOUNG PUBLISHING, INC., a Corporation<br><br>Plaintiffs,<br><br>vs.<br><br>ZAZZLE, INC., a corporation, and DOES 1 to 10<br><br>Defendants. | Case No.: 2:16 –CV-04587 SVW (KSx)<br><br>GYP'S OPPOSITION TO ZAZZLE INC.'S MOTION FOR SUMMARY JUDGMENT<br><br>Date:              April 24, 2017<br>Time:                        1:30 p.m.<br>Judge:     Hon. Stephen V. Wilson<br>Dept.:                            10A |

# TABLE OF CONTENTS

**I.   INTRODUCTION** ..................................................................................1

**II.   BACKGROUND ON THE KERNE ERICKSON ARTWORK TRANSFERS** ......................2

**A.   KERNE ERICKSON AND GREG YOUNG** ..................................................2

**B.   THE AGREEMENTS** ............................................................................4

**I.   THE 1999 AGREEMENT** ....................................................................4

**II.   THE 2004 AMENDMENT** ..................................................................5

**III.    THE ADDENDA** ............................................................................6

**IV.   THE 2007 AGREEMENT** ..................................................................7

**V.   THE MARCH 2017 AFFIRMATION AND ASSIGNMENT OF RIGHTS AGREEMENT** ....10

**III.    ARGUMENT FOR THE KERNE ERICKSON ARTWORK TRANSFERS** ..................10

**A.   GYPI HAS VALID WRITTEN INSTRUMENTS TO PROVE THE ASSIGNMENT** ..........10

**B.   ZAZZLE CANNOT INVOKE 17 U.S.C. § 204(A) AGAINST GYPI** ..................12

**C.   GYPI'S AFTER-THE-FACT WRITINGS ARE PERMISSIBLE AND VALIDATE THE VARIOUS ASSIGNMENTS** ............................................................12

**D.   GYPI HAS STANDING** ......................................................................14

**E.   THE SUPPLEMENTAL REGISTRATIONS ARE VALID** ................................15

**IV.    BACKGROUND ON THE EXCLUSIVE RIGHTS TO THE SCOTT WESTMORELAND ARTWORK** ........................................................................18

**A.   GYPI AND MR. WESTMORELAND AS PARTNERS** ................................18

**B.   GYPI IS THE EXCLUSIVE LICENSING AGENT OF WESTMORELAND** ..............19

**C.   GYPI HAS THE RIGHT TO SUE ON BEHALF OF WESTMORELAND** ................21

**D.   GYPI'S HAS STANDING** ..................................................................22

**V.   CONCLUSION:** ..............................................................................23

# TABLE OF AUTHORITIES

Page

## CASES

*Community for Creative Non–Violence v. Reid, 846 F.2d 1485* (D.C.Cir.1998) .......................5

*Contractual Obligation Productions, LLC v. AMC Networks, Inc.,*
546 F.Supp.2d 120 (S.D.N.Y. 2008)...................................................................12

*Craft v. Kobler,* 667 F.Supp. 120 (S.D.N.Y.1987).............................................17

*Eden Toys, Inc. v. Florelee Undergarment Co.,* 697 F.2d 27 (2d Cir.1982) ....................13, 14

*Effects Assocs., Inc. v. Cohen,* 908 F.2d 555, 557 (9th Cir.1990)...............................11

*Jules Jordan Video, Inc. v. 144942 Canada Inc., 617 F.3d 1146 (9th Cir. 2010)* .............13, 15

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.,* 345 F.3d 1140 (9th Cir.2003) .....................17

*Lyrick Studios, Inc. v. Big Idea Productions, Inc.,* 420 F. 3d 388 (5th Cir. 2005)....................14

Magnuson v. Video Yesteryear, 35 F.3d 1425 (9th Cir.1996) ...........................................13, 14

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.,*
795 F.3d 997 (9th Cir. 2015) .............................................................. passim

*Radio Television Espanola S.A. v. New World Entm't, Ltd.,*
183 F.3d 922, 927 (9th Cir.1999) ......................................................................12

*Schiffer Publishing, Ltd. v. Chronicle Books, LLC,*
2005 WL 67077 (E.D. Pa.. Jan. 11, 2005)...........................................................18

*Urantia Found. v. Maaherra,* 114 F.3d 955 (9th Cir.1997)......................................17

V*alente–Kritzer Video v. Pinckney,* 881 F.2d 772 (9th Cir.1989) ...........................................14

## STATUTES

17 U.S.C. § 106........................................................................................................2, 20

17 U.S.C. § 204(a) ...........................................................................................11, 12, 13

17 U.S.C. § 408(d) ...............................................................................................17, 18

## OTHER AUTHORITIES

3 Nimmer § 10.03[A] ....................................................................................................14

## I. INTRODUCTION

With its motion, Defendant Zazzle, Inc. ("Zazzle") hopes that technical loopholes will be the answer to avoiding liability for its infringement of Plaintiff Greg Young Publishing, Inc.'s ("GYPI") copyrights.  Its "Hail Mary" attempt to challenge GYPI's standing to bring claims for the copyrights at issue in this case is understandable given that Zazzle is currently facing forty-one (41) separate counts of copyright infringement in connection with its unauthorized use of GYPI's images (the "GYPI Images").  In fact, Zazzle's activities have violated four of the six "exclusive rights" in most of the copyrights at issue.[1]

The "exclusive rights" in a copyright, which are enumerated at 17 U.S.C. § 106, "are the rights "to do and to authorize" others to do six things with the copyrighted work, including the right to (1) reproduce the work, (2) prepare derivative works based upon the work, (3) distribute copies of the work, and (4) display the work publicly." *See Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997 (9th Cir.2015) (citing *17 U.S.C.* § 106).  Zazzle has publicly displayed forty-one (41) unique GYP Images on the Zazzle website, and from those it has reproduced thirty-five (35) unique images at least 4,629 times using Zazzle printers, applied those same reproductions to products using Zazzle employees to prepare derivative works, and finally distributed the derivative products for commercial sale.

Zazzle now hopes to turn the tables by convincing the court that GYPI holds no claim to the 41 images that Zazzle has infringed, either because GYPI does not have ownership in the thirty-five (35) Kerne Erickson copyrights that

---

[1] For the sake of brevity, Plaintiff will refer to the artworks created by the artists Kerne Erickson and Scott Westmoreland as "GYPI Images" and GYPI's copyrights, but as further explained herein, GYPI only claims ownership in the copyrights to the Kerne Erickson works, while the claims related to the Scott Westmoreland works are brought by GYPI as the exclusive licensing agent of Mr. Westmoreland, who retains ownership of his works.

make up the vast majority of the infringements or because GYPI does not have the exclusive right to authorize others to make use of the exclusive rights in the six (6) Scott Westmoreland works at issue in this case.  In both regards, Zazzle is mistaken.  Although Zazzle's Motion starts with the Westmoreland works, GYPI's opposition to the Motion (this "Opposition") will first examine the Kerne Erickson works.

## II. BACKGROUND ON THE KERNE ERICKSON ARTWORK TRANSFERS

### a. Kerne Erickson and Greg Young

Greg Young is the sole officer, director, and shareholder of GYPI. (Decl. of Greg Young in Opp. to Zazzle Inc.'s Motion for Summ. J. [hereinafter "GY Decl."] ¶1). He exercises complete control over GYPI, and makes all decisions concerning the company.  (GY Decl. ¶1). Mr. Young is not an attorney, but rather an entrepreneur who started an art publishing business in 1992, which he later incorporated fifteen years later at the very end of 2007.  (GY Decl. ¶2). Kerne Erickson is an internationally known artist and resident of California.  (GY Decl. ¶3).  Much of Mr. Erickson's notoriety in the last two decades is due to the successful publishing and licensing efforts of Mr. Young. (GY Decl. ¶3).

Greg and Kerne have had a professional and personal relationship for eighteen (18) years and continue to work together to this very day. (GY Decl. ¶4). They were first introduced by a mutual colleague, Gordon T. McClelland. (GY Decl. ¶6).  It was Mr. McClelland who proposed the underlying terms of the December 21, 1999, *Work for Hire Agreement* (the "1999 Agreement"), entered into by and between Greg Young d/b/a Greg Young Publishing and Mr. Erickson. (GY Decl. ¶6).  It was also Mr. McClelland who, several years later, requested on behalf of Kerne that Greg revise the parties' terms by a) paying Kerne a higher price per commissioned painting and b) allowing Kerne to keep the original painting so that he could also earn additional revenue from his

efforts via the sale of the original. (GY Decl. ¶7). Greg agreed to the revised terms and honored them based on nothing other than a handshake until they were eventually memorialized in the May 16, 2007, *Commissioned Artist Agreement* (the "2007 Agreement") between Kerne Erickson and Greg Young International (a short lived d/b/a of Greg Young at that time prior to the incorporation of GYPI). (GY Decl. ¶8).

Kerne has created approximately one hundred and fifty (150) commissioned paintings for Greg since 1999. (GY Decl. ¶11). Greg has published and licensed Kerne's paintings for nearly that same amount of time, beginning first by publishing posters and then slowly branching into licensing the images to various product manufacturers throughout the world. (GY Decl. ¶12) Despite having personally printed or having authorized the printing of hundreds of thousands of reproductions of Kerne's artwork, Greg has never once paid Kerne a royalty in connection with Greg's commercialization of the Kerne Erickson images. (GY Decl. ¶13).

The fact that Kerne Erickson has never been paid a single dollar in royalties after hundreds of thousands of commercial reproductions of his artwork underscores the point that Kerne Erickson does not own his artwork. Further support for this point is the fact that Kerne has never once challenged Greg's extensive use and licensing of his creations.  (GY Decl. ¶14). Kerne understands today what he has understood for the past eighteen years – that every time he finishing a commissioned painting and hands it to Greg for processing he is transferring ownership in the underlying copyright of the image to Greg Young. (GY Decl. ¶14, 15).  This arrangement has never been an issue for these two gentlemen for nearly two decades, but Zazzle is now trying to make it into a very big issue to avoid liability in this case (GY Decl. ¶15).

### b. The Agreements

Zazzle's Motion attempts to paint a calamitous picture of the various agreements that make up the history of the relationship between Greg Young and his friend Kerne Erickson.  To Zazzle's credit, the agreements and addendums that have been used to memorialize the assignment of approximately one hundred and fifty (150) artworks commissioned by Greg have not been perfect.  All the same, as this Opposition will demonstrate, just the 1999 Agreement and 2007 Agreement along, without any further support, are more than sufficient to satisfy the legal requirement of a written transfer to Greg Young of all commissioned works created by Kerne Erickson.

### i. The 1999 Agreement

The first agreement ever executed by Kerne and Greg was the 1999 Agreement referenced above.  This Agreement was given the unfortunate title of *Work for Hire Agreement* despite the language contained therein making it expressly clear that Kerne Erickson was to be an independent contractor.  Surely the drafter was confused by the name "work for hire," mistaking it to mean to that the artist was being hired to create artwork.  Justice Ginsburg even acknowledged the "prevailing confusion over the work for hire doctrine" in a case that eventually went to the US Supreme Court to clarify the confusion.  *Community for Creative Non–Violence v. Reid,* 846 F.2d 1485 (D.C.Cir.1998).  The misunderstanding over the meaning of "work for hire" was continued with the copyright registrations for the early Kerne Erickson works, where Greg Young mistakenly stated that he owned the works as works for hire.

Despite the title of the document, nowhere in the agreement does it ever state that the paintings created in connection therewith shall be considered works for hire.  Instead, the agreement expressly stated in Paragraph 6 that <u>any copyrightable work created under it shall be the exclusive property of Greg</u>

<u>Young Publishing</u>. As previously stated, this fact has never been challenged by Kerne Erickson.

And while the parties occasionally entered into addenda to document the works that were created under the 1999 Agreement, doing so was legally unnecessary.  The one simple sentence of conveyance was enough to transfer the copyrights to Greg Young and it is the essence of the agreement between Kerne Erickson and Greg Young. Greg Young has never understood Kerne Erickson to be its employee, and upon learning the true meaning of "work for hire" over a decade ago has never asserted that the doctrine truly applies to their relationship.  (GY Decl. ¶5).  Instead, Greg Young's ownership comes by way of written assignment from Kerne Erickson under the 1999 Agreement. Consequently, Zazzle's lengthy analysis of how the copyrights were not transferred under the work for hire doctrine is much ado about nothing and needs no further analysis.

### ii.  The 2004 Amendment

In 2003, Greg Young experienced his first copyright infringement and upon advice of counsel he executed the August 19, 2004, *Assignment of Past Rights to Greg Young Publishing (An Amendment To The December 21, 1999 "Work For Hire Agreement")* (the "2004 Amendment") to "clarify that the rights in all works created from December 21, 1999 until the date written by GYP under its signature have in fact been assigned as of the earliest date allowable by law." The 2004 Amendment was prepared in connection with a pending infringement matter and was simply meant to avoid the very same issues that Zazzle is now raising.  (GY Decl. ¶9).

The 2004 Amendment further clarified that:

> "This Agreement shall not void or terminate the Work For Hire
> Agreement signed by both parties on December 21, 1999, but is

1
2
3
4

> merely intended to clarify the assignment of rights originally intended
> to be accomplished through that agreement. The December 21,
> 1999 agreement shall continue to stay in effect on the "as needed
> basis" specified in that agreement."

5
6

The 2004 Amendment also reiterated that it had always been the intent of the parties that 100% of the copyrights would vest in Greg Young Publishing.

7
8
9
10
11
12
13
14
15
16
17
18
19

Although Zazzle tries to make issue of how the 2004 Amendment did not revoke or supersede the 1999 Agreement, GYPI does not disagree.  The 2004 Amendment, by its very title and the language therein, was an *amendment* to the 1999 Agreement and not a superseding agreement.  Zazzle's supposition that the 1999 Agreement continued to be perpetually flawed after the 2004 Amendment is baseless.  The 1999 Agreement was not flawed, as discussed above, and if it were, the 2004 Amendment fixed any such flaws.  Moreover, the 2004 Amendment contained a conflicts clause.  Therefore, any argument that works created after August 19, 2004, would have been tainted by the flaws of the 1999 Agreement does not work because such an issue would be covered by the conflicts clause in the 2004 Amendment, which, as just discussed, completely clarified that the intent of the 1999 Agreement was to convey the works to Greg Young Publishing by written assignment.

20

### iii.  The Addenda

21
22
23
24
25
26
27
28

GYPI has provided Zazzle with two Addenda that were "made solely for the purpose of adding works under" the 1999 Agreement as amended by the 2004 Amendment.  *See* the *Addendum Number 1 (ONE) to Assignment of Rights Agreement* dated September 1, 2005 ("Addendum 1") (GY Decl. ¶19, Ex. C) and the *Addendum Number 2 (TWO) to Assignment of Rights Agreement* dated May 27, 2006 ("Addendum 2") (GY Decl. ¶20, Ex. D). The existence of these two Addenda were remembered and referenced by Greg Young during his deposition on March 20, 2017, and were then provided shortly thereafter upon

request from Zazzle's counsel. (Decl. of Keith Adams, Zazzle MSJ [hereinafter "Adams Decl."] Ex. R at 69:8-72:23).  Addendum 1 contains a schedule listing, among other works not at issue in this case, CS77 Visit Santa Monica, CS78 San Francisco, CS79 Escape to Cuba, CS80 Key West Florida and CS81 Napa Valley. Addendum 2 contains a schedule listing, among other works not at issue in this case, CS84 Fly to Hawaii, CS87 Greetings from Samoa and CS89 Duke, Surfing Legend.

Although these Addenda are helpful in providing further evidence of the ongoing arrangement between Kerne Erickson and Greg Young, they were actually legally unnecessary.  Consequently, any prejudice that Zazzle may claim in its Motion as to their untimely production is inconsequential.  When the works listed in the addenda were created, Kerne and Greg were still operating under their 1999 Agreement/2004 Amendment.  When those works were delivered to Greg, it was already well established by both the 2004 Amendment and the 1999 Agreement that Greg was purchasing 100% ownership in the copyrights of each commissioned work.  This point is further underscored by the fact that after Greg agreed to revise his terms with Kerne, Greg was then paying more money for the commissioned paintings, while no longer taking possession of the physical canvas.  Since he was not purchasing the painting, he was clearly purchasing the copyright in the painting, otherwise he was receiving nothing of value.

### iv.  The 2007 Agreement

The 2007 Agreement memorialized the price increase and the fact that Kerne could keep the tangible paining while Greg received the intangible copyright.  This agreement was primarily prompted by Greg Young changing his d/b/a to Greg Young International, which Mr. Young did as the result of advice from his family lawyer to form a new company to protect his assets due to a divorce he was going through at the time. (GY Decl. ¶25). When he changed his

business name, he thought he was creating a new company different form Greg Young Publishing, never realizing that both companies were simply d/b/a's of Greg Young as an individual operating as a sole proprietor. (GY Decl. ¶25). While Zazzle does not appear to take issue with the language of the 2007 Agreement, it raises a few objections in connection with the works that are governed underneath it.

First, Zazzle attempts to make issue out of the fact that the *Havana* image at issue in this case, was labeled as "CS95 Havana" in a schedule to the 2007 Agreement while it was registered as "CS99 Havana" with the US Copyright Office. (Adams Decl. Ex. O, pp. 00184-00185). The schedule lists CS99 as another painting entitled *Daytona Beach*. (Adams Decl., Ex. L, p. 0064). While *Daytona Beach* is not at issue in this case, it is relevant to note that *Daytona Beach* was registered with the Copyright Office as "CS95 Daytona Beach." (GY Decl. ¶18, Ex. B). Clearly, the "CS" codes for *Daytona Beach* and *Havana* were mixed-up. The "CS" codes are an internal tracking system established purely by Greg Young without any input from Kerne Erickson. (GY Decl. ¶16). Thankfully, Kerne Erickson was assigning copyrights in paintings and not in names. To be sure, there is only one *Havana* painting by Kerne Erickson registered or otherwise and the copyright in that painting is what got assigned. A painting by any other name will still look the same.

Even if the "CS" code somehow makes a difference, or if there were two *Havana* paintings, the 2007 Agreement contemplates the assignment of any works commissioned thereunder. Paragraph 3(a) of the agreement clearly states no other action has to be taken to effectuate the assignment for any work commissioned by Greg Young. Commissioned Artist Agreement at Para. 3(a). So, like the 1999 Agreement, nothing more needed to be done to effectuate a transfer of the copyright from Kerne to Greg. Listing the works on a schedule or in an addendum was just done as extra protection for Greg Young.

1    Zazzle also challenges GYPI's rights to *CS115 Blue Hawaii*, which was

2  one of the first works registered with the US Copyright Office in the name of

3  Greg Young Publishing, Inc. not too long after Greg Young incorporated his

4  business.  After the creation of GYPI, Kerne and Greg continued to do business

5  as usual.  (GY Decl. ¶10). Greg continued to commission works from Kerne,

6  Kerne continued to create those works, Greg continued to pay the agreed price

7  for the works and Kerne continued to transfer the copyrights in the underlying

8  image.  The only thing that changed was Greg began registering the

9  commissioned images under the name of Greg Young Publishing, Inc. and also

10  licensed the works to third parties using the corporate name. Until Zazzle's

11  Motion, it is clear that Mr. Young did not fully appreciate the fact that by

12  incorporating as Greg Young Publishing, Inc. he was forming a separate legal

13  entity that was different from Greg Young Publishing. In fact, he had always

14  viewed Greg Young Publishing and Greg Young Publishing, Inc. as one and the

15  same company. (GY Decl. ¶24). Thinking that Greg Young International was a

16  different company, he later made the effort to execute documents to formally

17  transfer ownership of the copyrights that Kerne Erickson had created for "Greg

18  Young International" into GYPI. (GY Decl. ¶25). For the reasons stated above,

19  he never thought to do the same for the works created when he was operating

20  as "Greg Young Publishing." (GY Decl. ¶26).

21    Because Greg Young began registering works in the name of GYPI

22  despite the fact that he owned them himself pursuant to the 2007 Agreement, it

23  is clear that his intent was always to assign the works to GYPI.  Although Zazzle

24  would love for this entity change from Greg Young d/b/a Greg Young Publishing

25  or d/b/a Greg Young International to Greg Young Publishing, Inc. to be the fatal

26  flaw in GYPI's case, it will not prove to be the panacea Zazzle is hoping to find.

27

28

### v.  The March 2017 Affirmation and Assignment of Rights Agreement

When Zazzle sent a letter to GYPI's counsel on the evening of March 21, 2017, threatening the very same claims it has now brought in its Motion, GYPI responded by trying to tie up any loose ends that Zazzle may have felt existed. The hope was to avoid the time and cost of the very Motion that GYPI is now opposing.

Consequently, GYPI asked Kerne Erickson to sign an Affirmation to, once again, clarify that it has always been his intent to transfer full ownership of the copyrights in his works to Greg Young (the "Kerne Erickson Affirmation") (Decl. of Kerne Erickson, Ex. A).  For the record, GYPI believes the Kerne Erickson Affirmation to be completely unnecessary given the already ample evidence of signed conveyances that exist.

Greg Young in turn executed an Assignment of Rights Agreement (the "2017 Assignment") (GY Decl., Ex. E), signing on behalf of both himself and GYPI, to provide Zazzle with the written conveyance instrument to verify that Greg Young truly meant for his copyrights to vest in his company, GYPI.  Zazzle challenges this document as too little and too late; not just because it was provided a day or two before Zazzle filed its Motion, but because it was executed after GYPI's filing of this lawsuit.   GYPI will now show why Zazzle's complaints ignore the applicable case law on these issues.

## III. ARGUMENT FOR THE KERNE ERICKSON ARTWORK TRANSFERS
### a.  GYPI has valid written instruments to prove the assignment

Zazzle's entire chain of title argument is essentially different takes on the same challenge, specifically that Young and GYPI have both failed to meet the requirements of 17 U.S.C. § 204(a).  Under § 204(a) of the Copyright Act, "[a] transfer of copyright ownership, other than by operation of law, is not valid

unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a).  The writing in question "doesn't have to be the Magna Charta; a one-line pro forma statement will do." *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir.1990). Nor does the writing have to contain any special or particular language.  *Radio Television Espanola S.A. v. New World Entm't, Ltd.*, 183 F.3d 922, 927 (9th Cir.1999) ("No magic words must be included in a document to satisfy § 204(a).").  The only requirement is that the writing show an agreement to transfer the copyright. *See id.*

As discussed, the 1999 Agreement is a written instrument of conveyance that covers any and all works commissioned by Greg Young from Kerne Erickson during the term of the 1999 Agreement.  Likewise, the 2007 Agreement covers any and all works commissioned by Greg Young from Kerne Erickson during the term of the 2007 Agreement, which is still active.  "[A]ssignments of copyrights for work yet to be created are commonplace in the entertainment industry and have repeatedly been held enforceable in federal courts." *Contractual Obligation Productions, LLC v. AMC Networks, Inc.*, 546 F.Supp.2d 120, 127-128 (S.D.N.Y. 2008).   Paragraph 6 of the 1999 Agreement clearly states "Any copyrightable works....developed or produced in whole or in part by Erickson in connection with the services provided under this agreement shall be the exclusive property of GYP."  The 1999 Agreement is so solid that the 2004 Amendment, which clarified the intent of the parties, and Addendum 1 and Addendum 2, which memorialized the works that had been assigned over the course of certain periods of time, are all legally unnecessary.   Section 204(a) simply requires a signed written conveyance and the 1999 Agreement is exactly that.

Just as the 1999 Agreement (amended for clarification by the 2004 Amendment) covered every work created under it, so did the 2007 Agreement. For ten years and over fifty works since the execution of the 2007 Agreement and continuing to this very day, the 2007 Agreement has legally served as a valid written conveyance to Greg Young of the commissioned Kerne Erickson works.  Despite the clear language and long-term agreements and relationship between Greg and Kerne, Zazzle now wants this Court to find that, despite their mutual understanding, Kerne did not actually assign his works to Greg because they failed to meet some strict legal requirement.

### b.  Zazzle cannot invoke 17 U.S.C. § 204(a) against GYPI

Zazzle's attempt to challenge the validity of the written assignments between Greg and Kerne is misplaced.  The Ninth Circuit has stated that "[w]hen there is no dispute between the copyright owner and transferee, it would be unusual and unwarranted to permit a third-party infringer to invoke § 204(a) to avoid suit for copyright infringement." *Jules Jordan Video, Inc. v. 144942 Canada Inc.,* 617 F.3d 1146, 1157 (9th Cir.2010).   "The purpose of the requirement that a transfer be in writing [ ] was to protect the copyright holder from persons fraudulently claiming to hold licenses."   *Magnuson v. Video Yesteryear,* 35 F.3d 1425, 1428 (9th Cir.1996).  However, where "the copyright holder appears to have little dispute with its licensee on this matter, it would be anomalous to permit a third party infringer to invoke this provision against the licensee." *Eden Toys, Inc. v. Florelee Undergarment Co.,* 697 F.2d 27, 36 (2d Cir.1982) (cited by *id.)*  Zazzle is the third party infringer in this case attempting to invoke § 204(a) to avoid suit for copyright infringement.

### c.  GYPI's after-the-fact writings are permissible and validate the various assignments

The Second Circuit held that for the same reason "it would be anomalous to permit a third party infringer to invoke" § 204(a) to avoid suit for copyright

infringement, an oral transfer will be valid where it is affirmed by a later memorandum of transfer executed by the copyright owner. Id.  This has been followed by the Ninth Circuit, which has stated that the later writing can even happen after the initiation of litigation.  "[C]ase law holds that under some circumstances a prior oral grant that is confirmed by a later writing becomes valid as of the time of the oral grant, even if the writing is subsequent to the initiation of litigation on the copyright infringement." *Magnuson v. Video Yesteryear*, 35 F.3d 1425, 1428 (9th Cir.1996) (*citing* 3 Nimmer § 10.03[A] at 10–39; V*alente–Kritzer Video v. Pinckney*, 881 F.2d 772, 775 (9th Cir.1989); *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 36 (2d Cir.1982)). *See also Lyrick Studios, Inc. v. Big Idea Productions, Inc.*, 420 F. 3d 388, 392 (5th Cir.2005) ("An after-the-fact writing can validate an agreement from the date of its inception, at least against challenges to the agreement by third parties.")

Zazzle's too little too late arguments claiming that GYPI has wrongfully tried to create standing after the fact ignores the well-accepted doctrine cited above.  In fact, none of the March 26, 2017, agreements are attempting to change any of the facts that existed prior to litigation.  On the contrary, as it has already been shown, there is ample evidence that all copyrights in every Kerne Erickson work have been assigned to Greg Young from the very moment Kerne Erickson finished and handed the work over to.  This can be seen in both the written evidence (i.e., the various agreements, the amendment, addenda and affirmation) and circumstantial evidence (e.g., no royalty payments being paid to Kerne, no challenges from Kerne, the fact that Greg pays Kerne but allows Kerne to keep the tangible work of art, and the eighteen years and still going strong relationship between Kerne and Greg).  Consequently, if the Court finds that the Kerne Erickson Affirmation is necessary, which GYPI does not believe it is, then the affirmation should be ruled as a permissible document to cure any flaws that the prior written instruments can be said to have regarding the assignments from Erickson to Young. Likewise, after Greg Young became the

owner of the copyrights, his after-the-fact writing assigning all of the Erickson works to GYPI (i.e. the 2017 Assignment) should also be found to be a permissible document that validates the assignments from Greg Young to GYPI.

### d. GYPI has standing

GYPI has shown how the 1999 Agreement and 2007 Agreement were both valid written conveyances of all artwork created by Kerne Erickson to Greg Young from the beginning of the Greg/Kerne relationship to this very day. A logical examination of the facts makes this a very easy conclusion, despite Zazzle's well-fought effort to muddy the water with discussions of work for hire, mistitled agreements and mistitled artworks. However, GYPI would be amiss to not further address how ownership in the Kerne Erickson copyrights can be said to vest in Greg Young Publishing, Inc., rather than in Greg Young.

This Opposition has already presented legal support for the principles that i) a third party infringer should not be permitted to invoke § 204(a) to avoid suit for copyright infringement, and ii) a prior oral grant can be confirmed by a later writing, and becomes valid as of the time of the oral grant, even if the writing is subsequent to the initiation of litigation on the copyright infringement. Greg Young is the sole officer, director, and shareholder of GYPI and therefore the only prior oral communication that would need to have occurred in order to have assigned the copyrights was between Greg Young as sole proprietor and Greg Young as officer/director/shareholder. So, if it were the intention of Greg Young that ownership in all of his Erickson works would transfer to his new company, GYPI, then the ownership did in fact transfer. The Ninth Circuit came to this logical conclusion when it found that where a copyright owner is the same person as the sole officer, director, and shareholder of the corporation, then whatever the copyright owner intended, so did the corporation. *Jules Jordan* at 1156 ("Since JJV was Gasper, JJV intended whatever Gasper intended, and if

Gasper intended that his creative work be outside the scope of his employment with JJV, there was no one to disagree.").

The evidence strongly supports that Greg Young truly intended to assign all of his Erickson copyrights to GYPI.  When Greg formed GYPI he stopped operating as Greg Young d/b/a Greg Young International or d/b/a Greg Young Publishing, and continued to operate the exact same business as before, but only now with an INC. at the end of his company name. (GY Decl. ¶2, Ex. A). Greg still continued to commission artwork from Erickson, but he began entering into his third party licensing agreements in connection with all of his artwork that he owned, under the name GYPI. Greg also began applying for copyright registrations in his Erickson artworks that were created after 2007 with GYPI as the owner. His consistent registrations with GYPI as the owner of the copyright demonstrates his intent every time he registers a new copyright. Finally, if Greg thought that he still owned the copyrights he could have just as easily filed this lawsuit in his own name, given that he is the only party involved in GYPI.

It is thus clear from all of this evidence that Greg Young's intent and understanding was that ownership in each and every copyright he owned became the property of GYPI after it was incorporated.  If there was any doubt to this, Mr. Young has now said as much in the 2017 Assignment, which validates the prior assignment he made to GYPI and satisfies the Section 204(a) requirement.  Consequently, GYPI should be found to have owned every copyright in the Erickson works at issue in this case *prior* to the filing of the lawsuit, because the ownership transfer that Mr. Young made to GYPI has now been validated in a written instrument of conveyance.

### e. The Supplemental Registrations are Valid

Much like Greg Young's early contracts, his early copyright registrations were less than perfect.  Mistakes made in connection with the original

1   registrations have provided Zazzle with another opportunity to try to exploit Mr.

2   Young's early misunderstanding of copyright law.  GYPI calls the original

3   information provided in Greg Young's first twenty-four registrations "errors" while

4   Zazzle characterizes them as too accurate to correct.

5        The Ninth Circuit has held that "inadvertent mistakes on registration

6   certificates do not invalidate a copyright and thus do not bar infringement

7   actions, unless ... the claimant intended to defraud the Copyright Office by

8   making the misstatement." *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345

9   F.3d 1140, 1145 (9th Cir.2003) (*quoting Urantia Found. v. Maaherra*, 114 F.3d

10  955, 963 (9th Cir.1997)).  If mislabeling a work-for-hire "was inadvertent, little

11  turns on the error; the copyright is not thereby invalidated, nor is the certificate of

12  registration rendered incapable of supporting the action." *Urantia Found.,* 114

13  F.3d at 963 (citing *Craft v. Kobler,* 667 F.Supp. 120, 125 (S.D.N.Y.1987)).

14       There are twenty-four copyrights at issue in this case that were originally

15  inaccurately registered as works for hire with the nature of the work specified as

16  "photolithograph" and the work described as a derivative work.  (Statement of

17  Genuine Disputes of Material Facts (hereinafter "SUF") at ¶ 67). Mr. Young later

18  used the permitted practice of supplemental registration as provided by 17

19  U.S.C. § 408(d) to fix his errors in each of the works and clarify that a) the work

20  was not a "work made for hire", b) the "Nature of Authorship" was "2

21  Dimensional artwork", c) a transfer of the ownership occurred by written

22  assignment, d) the work was not a derivative work, and e) no material was

23  added to the work. In the "Explanation of Correction" on the supplemental

24  registration, the following explanation was provided for all 24 supplemental

25  registrations:

26       "Greg Young Publishing acquired the original work by written

27       assignment but misunderstood the work made for hire doctrine.  It

28       also mistakenly focused on the fact that it was manufacturing prints

without realizing the importance of its ownership of the underlying work." (See for example Adams Decl., Ex. O, pp. 0077, 0081,0085).

The Copyright Office accepted the explanation and the supplemental applications were registered.

Despite the explanation on the supplemental registrations and Greg Young testifying in his deposition that he always understood his ownership was in the underlying work and that Kerne had assigned all copyrights to Greg, Zazzle has concocted its own alternative explanation for what Greg Young intended when he filed his registrations. (Jeff Young Decl. Ex. A at 60:10-22). Zazzle essentially argues that the information provided in the original registrations was exactly what Greg had intended to register and therefore was so "accurate" that it could no longer be fixed under § 408(d), which allows for the correction of errors.

The problem with Zazzle's argument is that it simply is not true.  The truth is that Greg Young's early business was publishing and selling posters and his focus at the time was on protecting infringements of the image because it would be appearing on posters.  (GY Decl. ¶12)  As shown by the 1999 Agreement, there was much misunderstanding about the meaning of "work for hire." Combine these two misunderstandings and they result in the inadvertent mistakes that appeared in the original registrations.

Zazzle, however, has turned GYPI's errors into a "happy accident" for itself where it manages to manipulate the facts into a story that the errors have magically aligned to create an "accurate" original registration that cannot be corrected.  While creative, this argument is a big stretch and has no solid support.  If this Court accepts Zazzle's idea, then at the very least it should find that the GYPI supplemental registrations serve as the registrations of the underlying Kerne Erickson works.  This was the finding in the case cited by Zazzle where the court found that the new works added by a supplemental registration were registered as of the date of the supplemental registration. *See*

*Schiffer Publishing, Ltd. v. Chronicle Books, LLC*, 2005 WL 67077 at *4 (E.D. Pa.. Jan. 11, 2005).  Because the dates of GYPI's supplemental registrations were in 2003 and 2013, the works at issue would still have been registered prior to the vast majority of infringements that occurred in this case.

## IV.   BACKGROUND ON THE EXCLUSIVE RIGHTS TO THE SCOTT WESTMORELAND ARTWORK

### a. GYPI and Mr. Westmoreland as Partners

Besides the thirty-five (35) Kerne Erickson works that are at issue in this case, there are an additional six (6) artworks created by the artist Scott Westmoreland.  Unlike the Kerne Erickson works for which GYPI has standing based on ownership, GYPI's standing in connection with the Westmoreland works comes by way of its position as the exclusive licensing agent for Scott Westmoreland under a June 30, 2010, Licensing Agent Agreement (the "Licensing Agent Agreement").  Since entering into the Licensing Agent Agreement, Mr. Westmoreland has never licensed a third party without GYPI performing all licensing functions. (GY Decl. ¶22)

The relationship between Mr. Young and Mr. Westmoreland is one of agent and artist, a sort of partnership, whereby Mr. Westmoreland provides the art and GYPI acts as the exclusive licensing agent providing the business sensibilities.  Mr. Westmoreland owns the artwork and the copyrights therein; this is not disputed by GYPI.  Mr. Westmoreland, however, has granted GYPI the exclusive right to act in all regards in connection with the licensing of his artwork.  Phrased another way, besides Mr. Westmoreland, <u>only</u> GYPI may authorize third parties to reproduce his artwork, to prepare derivative works based upon the artwork, to distribute copies of the artwork, and to display the artwork publicly. (Adams Dec. Ex. E, pp. 0020-0026). Moreover, besides Mr. Westmoreland, <u>only</u> GYPI has the right to enforce copyright infringement instances, should they occur. (*Id.* at 0024).  This is a natural arrangement

because both GYPI and Mr. Westmoreland have valuable interests in the Westmoreland artwork and the licensing of that artwork.

### b. GYPI is the exclusive licensing agent of Westmoreland

Zazzle's Motion has already discussed at length the importance of copyright ownership when it comes to the necessary standing to bring a copyright infringement claim.  However, "[i]t is established law under the 1976 Act that any party to whom such a right has been transferred—whether via an assignment or an exclusive license—has standing to bring an infringement action based on that right."  *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1003 (9th Cir.2015). Because we know that Scott Westmoreland has not assigned his copyrights to GYPI, GYPI must demonstrate that it holds an exclusive license.

This Opposition previously discussed how 17 U.S.C. § 106 provides for the "exclusive rights" in a copyright, which are the rights "to do and to *authorize*" others to do six things with the copyrighted work.  When it comes to Westmoreland's works, only Westmoreland and GYPI possess the exclusive right to *authorize* others to exercise Westmoreland's exclusive copyrights.  The Licensing Agent Agreement expressly establishes GYPI as the exclusive representative "for soliciting, negotiating, and administering agreements with third parties for the licensing of Merchandise and other Proprietary Rights related to the Property." (Licensing Agent Agreement, 1). The definition of "Property" includes all artworks at issue in the case (and more) and the definition of "Merchandise" includes any and all types of goods throughout the world. (Adams Decl. Ex. E).

While Zazzle attempts to distinguish *Minden Pictures*, a recent Ninth Circuit case with facts very similar to this issue, the factual similarities with this case cannot be overemphasized.   First, the Minden court identified that, "[e]ach Agreement contains an 'authorization' clause in which the photographers agree

to 'appoint[ ] [Minden] as sole and exclusive agent and representative with respect to the Licensing of any and all uses of Images' in the relevant territory." *Minden*, 795 F.3d at 1000. Here, the Licensing Agent Agreement appoints GYPI as the exclusive representative of Scott Westmoreland for the licensing of any and all types of goods throughout the world.  Second, in *Minden*, the agent would receive a commission in connection with the principal's work. *Id.* at 999. Here, as the exclusive representative of Mr. Westmoreland's works, GYPI is also compensated with a commission every time he secures new product licenses on behalf of Mr. Westmoreland. (Licensing Agent Agreement, 2).

Although Mr. Westmoreland may be the party that signs the licensing agreements for his works, the fact that Scott Westmoreland's third party licensing agreements all name GYPI as a third party beneficiary is significant. Moreover, they all state that "the parties recognize that Greg Young Publishing is the exclusive licensing agent for Westmoreland and its agency is coupled with an interest" which further demonstrates that GYPI holds a special position relative to Westmoreland's interests that is akin to what was seen in *Minden Pictures*.  (Adams Decl. Ex. F at 0027, Ex. G at 0036-0038, Ex. H at 0040-0042, Ex. I at 0044). Ultimately, the Minden court found that Minden had standing because the agency agreements at issue conveyed "the rights to reproduce, distribute, and display the photographs to Minden via an "exclusive license" to grant licenses to third parties." *Minden* 795 F.3d at 1005-1006.  GYPI also has an "exclusive license" to grant licenses to third parties, and the fact that it was agreed that Mr. Westmoreland would sign those licenses does not rob GYPI of that unique right. Nor does that fact that Mr. Westmoreland has the right to accept or reject any license presented to him by GYPI. "That the photographers have retained some limited degree of authority to grant licenses themselves does not eliminate Minden's interest in the copyright as the sole entity to act as the photographers' licensing agent." *Id.* at 1005. The Court in Minden was satisfied that licensing agency agreements "conveyed a sufficient property

interest in the photographs to permit it to bring an infringement suit." *Id.* at 1002. With such similar factual backgrounds, the Court should follow the precedent established in *Minden*.

### c. GYPI has the right to sue on behalf of Westmoreland

The Licensing Agent Agreement also gave GYPI the right to file suit for infringements of Westmoreland's artwork as his agent. (Adams Decl. Ex. E at 0024, "Enforcement of Copyrights"). Westmoreland stated that he intended GYPI to be the sole and exclusive licensing agent. (Adams Decl. Ex. E at 0020). Further, Westmoreland affirmed that "GYP may exercise all right, title, interest, and benefit of me as the author of each of the Artwork to bring and enforce any claims of infringement or violation of my rights in the Artwork which may have accrued prior or during the term of the Licensing Agent Agreement." (Decl. of Scott Westmoreland ¶4, Ex. A) (hereinafter "Westmoreland Affirmation") (The Westmoreland Affirmation refers to Greg Young Publishing, Inc. as "GYP"). Mr. Westmoreland's rights to enforce his copyrights were transferred to GYPI both contractually and as a result of GYPI being the exclusive licensing agent of Mr. Westmoreland.

Surely the Court could not deny that Mr. Westmoreland has the right to file suit against Zazzle on his own. However here, Mr. Westmoreland contracted with GYPI to appoint GYPI as the exclusive party responsible for authorizing others to license Mr. Westmoreland's artwork and that appointment included another appointment as the responsible party for enforcing the protection of that very same artwork. Mr. Westmoreland intended GYPI to be the protector of his images and that protection should naturally extend to bringing lawsuits against infringers of the artwork contemplated in the exclusive licensing agreement. The *Minden* Court dealt with the exact same issue and stated there is no reason why "the photographers should not also be able to rely on Minden to protect and defend the licenses that it has issued on their behalf." *Minden,* 795 F.3d at 1005.

The United States Court of Appeals for the Ninth Circuit could not have made a clearer statement that just as in the instant case, a copyright holder should be able to rely on their exclusive licensing agent to protect their rights.

From a judicial efficiency standpoint, GYPI filing suit on behalf of its own copyrights as well as copyrights for which it is the exclusive licensee, benefits all parties involved by reducing court cases and other costs associated with litigation. The *Minden* Court noted that there are practical disadvantages of having individual artists bringing suit compared with the prospect of their licensing agents bringing suit for them, and these disadvantages include the cost and complexities of a suit of this nature, of which infringers are aware and take advantage. *Id.*

Mr. Westmoreland authorized GYPI to reproduce the work and distribute copies of the work. Opposing counsel may believe that Westmoreland cannot transfer his rights to allow another to enforce his copyrights, but "the Copyright Act permits the copyright owner to subdivide his or her interest in what otherwise would be a wholly owned 'exclusive right' by authorizing the owner to transfer his or her share, 'in whole or in part," to someone else.'" *Id.* An interest in copyright is not limited to being the owner of such copyright, but is inclusive of any of the exclusive rights comprised in the copyright. *See Id.* Not only could Mr. Westmoreland transfer all of his rights, he could transfer only parts of his ownership rights, such as the right to enforce against copyright infringement.

### d. GYPI has standing

Even though the Westmoreland Licensing Agent Agreement does not confer ownership in copyrights, it is akin to the interest transferred in *Minden*, where the court stated "the photographers have promised that Minden, and only Minden, will have the power, as the photographers' licensing agent, to authorize third parties to reproduce, distribute, and display the photographs" and as a result the Court had "no doubt … that the Agency Agreements transferred an

interest in a legally cognizable right in the photographers' copyrights." *Minden,* 795 F.3d at 1003. The Licensing Agent Agreement *expressly* appointed GYPI as the exclusive licensing agent and also expressly allows GYPI to enforce copyrights included in the agreement, just as in *Minden. See Minden,* 795 F.3d at 1000, (Adams Decl. Ex. E at 0024, "Enforcement of Copyrights"). As a party with an exclusive interest in the artwork at subject in this case, GYPI has adequate standing to bring this suit on behalf of Mr. Westmoreland's artworks.

## V. CONCLUSION:

Despite all of Zazzle's attempts to introduce red herrings and otherwise try to take advantage of Mr. Young's less than perfect understanding of the law or contracting. It is clear that the plain language in the agreements at issue in this case confer the necessary rights to GYPI as supported by the case law. Consequently, GYP has standing to bring every copyright infringement claim at issue in this case. Furthermore, because all copyrights at issue have valid registrations, Zazzle's argument that statutory damages do not apply is simply without merit.

Should the court find that the copyrights in the Kerne Erickson works were never transferred from Greg Young to GYPI, and such issue cannot be cured, then GYPI respectfully seeks leave of the Court to amend its complaint to join Greg Young as an additional Plaintiff. Should the court find that a valid exclusive license to authorize others to use the Scott Westmoreland copyrights was not transferred from Scott Westmoreland to GYPI, and such cannot be cured, then GYPI respectfully seeks leave of the Court to amend its complaint to join Scott Westmoreland as an additional Plaintiff. Given the time and costs already expended in this case and the need for a resolution as to the infringement of 41 copyrights, coupled with no prejudice to Zazzle given that the facts are the same, efficiency and justice should require that the proper plaintiff(s) (whether

that be GYPI or Greg Young and/or Scott Westmoreland) be allowed to bring suit.

Respectfully submitted,

DATED: April 3, 2017                 LAW OFFICES OF JEFFREY YOUNG

By:      /s/ Jeffrey S. Young
Jeffrey S. Young, Attorney for
Plaintiff Greg Young Publishing, Inc.