**JEFFREY S. YOUNG, SBN 172016**
**LAW OFFICE OF JEFFREY S. YOUNG**
1307 State Street, First Floor
Santa Barbara, CA 93101
jeff@jeffreyyounglaw.com
Tel: (805) 884-0338
Fax: (805) 884-0799

Attorney for Plaintiff GREG YOUNG PUBLISHING, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| GREG YOUNG PUBLISHING, INC., a Corporation<br><br>Plaintiffs,<br><br>vs.<br><br>ZAZZLE, INC., a corporation, and DOES 1 to 10<br><br>Defendants. | Case No.: 2:16 –CV-04587 SVW (KSx)<br><br>PLAINTIFF GYPI'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>Date:           April 24, 2017<br>Time:                 1:30 p.m.<br>Judge:   Hon. Stephen V. Wilson<br>Dept.:                       10A |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 2

I. ARGUMENT ....................................................................................................... 4

   a. The Court Must Rule That the DMCA Does Not Apply to Zazzle's Printing, Manufacturing and Distribution of Products ............................................... 4

   b. The Court Should Also Rule That the DMCA Does Not Apply to Zazzle's Online Display of Infringing Images ............................................................ 6

   c. A Ruling That the DMCA Safe Harbor Does Not Apply to Zazzle's Storage and Display of Infringing Images Would Be Extremely Narrow and Would Not "Gut" the DMCA.. 9

   d. The Cases Cited By Zazzle Do Not Apply to the Facts Here ..................... 11

II. CONCLUSION ................................................................ Error! Bookmark not defined.

# TABLE OF AUTHORITIES

**CASES**

*Agence France Presse v. Morel*, 934 F. Supp. 2d 547 .......................................... 10
*Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090 ............................. 11, 13
*Gardner v. CafePress Inc.*, 2014 WL 794216 ......................................................... 10
Hendrickson v. Amazon.com, 298 F. Supp. 2d 914 .................................................. 9
*Hendrickson v. eBay, Inc.*, 165 F.Supp. 2d 1082 .................................................... 11
*In re Aimster Copyright Lit.*, 252 F. Supp. 2d 634 ................................................... 2
*Io Grp., Inc. v. Veoh Networks, Inc.*, 586 F.Supp.2d 1132 .................................... 12
*MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 .................................................. 2
*UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006 ....5, 12, 13
*Ventura Content, Ltd. v. Motherless, Inc.,* 2013 WL 11237204 ............................ 13
*Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724 ........................... 11, 12

**STATUTES**

17 U.S.C. § 512 (k)(1)(B) ......................................................................................... 2

PLAINTIFF GREG YOUNG PUBLISHING, INC.'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

CASE NO. 2:16-CV-04587

1

**INTRODUCTION**

Defendant Zazzle Inc. ("Zazzle") is an offline provider of products that happens to use certain online services solely for the purpose of facilitating sales of its customizable print-on-demand products. Plaintiff Greg Young Publishing, Inc. ("GYPI") has brought its Motion for Partial Summary Judgment (its "Motion") as to the DMCA safe harbor affirmative defense raised by Zazzle in its Answer. A fair portion of GYPI's Motion argues that Zazzle is not the type of 'service provider' that is protected by the DMCA. Zazzle and GYPI are both in agreement that courts have broadly interpreted the definition of 'service provider' which "means a provider of online services or network access, or the operator of facilities therefor." 17 U.S.C. § 512 (k)(1)(B).[1] However, the interpretation of this definition can only be stretched so far before the balance that the DMCA strikes between copyright protection and the encouragement of technological innovation falls apart. *See MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 928 (2005).

Zazzle operates zazzle.com, an e-commerce website that sells products which can be customized with images. (Zazzle's SGI ¶5). By reviewing this website the Court will find that there are no other features or functionality separate and apart from the marketing of Zazzle's customizable products. Zazzle customizes many of its products by applying printed images that it has acquired through its practice of allowing third parties to upload images for public view and selection (Zazzle's SGI ¶6 and 7). The website offers no reason or purpose for any person to upload any particular image to Zazzle's website other than the prospect of earning a royalty if that uploaded image is selected by a customer and printed onto a product manufactured and sold by Zazzle. Zazzle's

---

[1] Zazzle is mistaken that GYPI does not cite the definition of "service provider." See GYPI's Motion at p. 12 where the definition provided verbatim in connection with a citation to *In re Aimster Copyright Lit.*, 252 F. Supp. 2d 634, 658 (N.D. Ill. 2002).

1  SGI ¶27.  One can only conclude that Zazzle is incenting third-parties to upload
2  images because every additional image that gets added to Zazzle's massive
3  library of images holds the possibility of additional sales for Zazzle.
4     Surely, if Zazzle did not receive a financial benefit from selling products
5  customized with images uploaded by third parties, it would not offer such a
6  feature.  Zazzle also hosts images from third-party brand partners like Disney
7  and allows customers to upload non-public images for use on products.
8  (Zazzle's SGI ¶28).  GYPI proffers that a reasonable business model could be
9  sustained solely from these third-party brand partners and non-public personal
10 image uploads, while inflicting a lot less harm upon copyright owners.  However,
11 Zazzle presumably has concluded that the cost-benefit analysis works in its
12 favor to feature third-party uploaded images in its Marketplace, despite it having
13 to invest significant resources in connection with the sourcing of images from
14 these third-party image providers:  "Recognizing that some users will
15 nonetheless upload infringing material, Zazzle employs dozens of people to
16 review 20,000 images per day, and also uses keyword searches and databases
17 to filter infringing material to the best of its ability." Opp. p. 2:6-10.
18     Zazzle would appear to be the victim of its own success as it laments that
19 it "does not have the ability to "reverse image" search every image uploaded
20 onto its website." Opp. p. 2:10-13.  Its reviewers reportedly "spend
21 approximately 30 seconds to a minute on average reviewing" approximately
22 20,000 images per day. SGI ¶45.  It is Zazzle's own choice, however, to allow
23 such a large volume of images to be uploaded.  Zazzle could certainly fix its
24 problems by limiting the number of uploads through solutions like daily quotas or
25 by raising the hurdle of validation of non-infringement that it places on
26 uploaders.  Zazzle could also choose to employ a few dozen more people to
27 research the uploaded images for longer than thirty to sixty seconds in order to
28

1  ensure that the uploader has proper rights to actually license the image to
2  Zazzle.  Whatever the answer, Zazzle has options to address these issues.
3      Instead, of addressing its issues, Zazzle wrongly hides behind the
4  protections of the DMCA, looks to the copyright owners to do the policing, and
5  then states don't blame us, blame Congress. Opp. p. 2:26-27.  It is undisputed
6  that GYP never granted Zazzle the right to use any of the artwork at issue in this
7  case. Zazzle's SGI ¶4.  Zazzle claims that it does not "have a comprehensive
8  library of every copyrighted image, nor a comprehensive database of copyright
9  licenses." Opp. p. 2:11-13.  However, this case concerns only 41 images, as
10 opposed to every copyrighted image, and GYPI has shown that Zazzle was in
11 possession of a comprehensive library of 36 of those copyrighted images and
12 had actual knowledge that it did not have a license from GYPI to print those
13 images or turn them into products. Ex. D, pp. 0050 – 0065, to J. Young Decl,
14 Dkt. #64-4. In the instances where Zazzle did convert GYPI's images into
15 products, it did so as the sole party in control of its manufacturing activities,
16 while it financially benefitted directly from the sales.

### I.   ARGUMENT

####   a. The Court Must Rule That the DMCA Does Not Apply to Zazzle's Printing, Manufacturing and Distribution of Products

Zazzle's Opposition focuses the Court's attention on everything that Zazzle does and does not do in connection with its online storage and display of the third party uploaded images.  While Zazzle cites case law to attempt to defend its right to DMCA safe harbor protection in connection with allowing third parties to upload images to its website, very little is said in connection with the fact that those same uploads directly lead to customer orders that are then manufactured, "typically by Zazzle."  Zazzle's SGI ¶50.

1. Zazzle vigorously defends its uploading platform, not only to spare itself from liability related to six of the 41 images at issue in this case, but also to preserve an apparently critical part of its business model. In doing so, it is glaringly obvious that Zazzle is unable to make the same level of arguments in connection with the thirty-five (35) images that were not only uploaded by third parties but then made into products by Zazzle. Congress may have enacted safe harbors despite the knowledge that online services "are capable of being misused to facilitate copyright infringement," as Zazzle contends, but Congress certainly did not contemplate that the online service provider itself would be the party actually misusing its services to facilitate the infringement. Opp. p. 6:22-24, citing *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013).

GYPI's Motion and the arguments therein primarily focus on the fact that Zazzle is physically manufacturing products from GYPI's images. This is an offline activity that has absolutely nothing to do with providing "online services or network access" and Zazzle has done very little to dispute that. At best, Zazzle attempts to minimize the role of its employees in the manufacturing process, but even this is not supported by the Zazzle videos submitted into evidence. See Zazzle's SGI ¶50 and Exs. 1-7, Decl. J. Young ¶16.

In addition, Zazzle openly admits that it received a financial benefit from the sale of products containing GYPI's images. Zazzle Opp. pp. 2:15-17 and 20:3-8. It also primarily argues that it lacked control over the images that were uploaded to its website, while making little attempt to refute the fact that it had control over whether it applied those images on the products it manufactured and sold. Its only argument to this point is that "GYPI offers no evidence that Zazzle had the practical "ability" to control the infringement, since the production process was effectively automatic, at least insofar as the printing of images was concerned, after a product was ordered and approved by Zazzle's CMT." Opp. p. 19:20-23.

Zazzle is therefore only able to claim that the "printing of images" "was effectively automatic," which would make sense given that printing is typically done using electronic printers; but the Videos (Exs. 1-7, Decl. J. Young ¶16) indisputably demonstrate that Zazzle employees are manning those printers and the computers that send the images to the printers. Moreover, Zazzle employees can be seen performing all of the other intricate steps involved in the manufacturing, finishing, packaging and shipping of the products. Therefore, Zazzle undoubtedly had full control of which products were made, how they were made and when they were made.[2]

Consequently, this Court can and should rule that the DMCA does not apply to Zazzle in connection with its manufacture of physical goods, because activities performed in that role are certainly not the activities of a 'service provider.'[3] Zazzle has provided no support for an interpretation of the DMCA that would be so broad as to apply to offline printing, derivative work manufacturing and physical product distribution.

### b. The Court Should Also Rule That the DMCA Does Not Apply to Zazzle's Online Display of Infringing Images

This Court has the option to limit the DMCA safe harbor to Zazzle's hosting of infringing images on zazzle.com, while differentiating Zazzle's manufacturing activities that take place at its San Jose facilities. Such a ruling would certainly

---

[2] Zazzle states that production only occurs when there is an order. Zazzle's SGI ¶30.]

[3] Zazzle's Opposition takes issue with GYPI's use of "Qualified Service Provider" as if GYPI has attempted to create a new standard that does not currently exist under the law. *See* Opp. p. 9. This was never the intent of that defined term. Rather, the term 'service provider' has a specific meaning and purpose under the DMCA, and that definition differs from the general meaning of service provider, which could apply to nearly any business that provides a service. GYPI was attempting to make that distinction clear in its Motion, but to avoid further offense GYPI will resort to using 'service provider' in quotes in this Reply to make that distinction clear.

serve as a partial victory for both GYPI and for Zazzle. But for GYPI this would only be a temporary victory specific to the current product infringements. GYPI and hundreds to thousands of other copyright owners would then be left to forever police Zazzle's website for unauthorized uploads, while Zazzle gets to continue profiting from the manufacture of infringing products.

Given the consequences to GYPI and other copyright owners, GYPI encourages this Court to go further and rule that the DMCA safe harbor does not protect Zazzle from liability related to both the manufacturing of products <u>and</u> the storage and display of infringing images on its website. The Court can make this determination, because the DMCA does not contemplate a scenario where the ISP is facilitating third party uploads for the purpose of directly profiting from those uploads via the sale of physical goods manufactured by the ISP itself. The DMCA is supposed to strike a balance but every product sold by Zazzle that contains a GYPI image is a potential lost sale from an authorized source of properly licensed products and the DMCA provides no means for GYPI to recover that loss from Zazzle.

The takedown notice procedures of the DMCA simply do not provide for a copyright owner to seek damages associated with the service provider's sales directly associated with its infringing use of the copyright owner's work. If this Court does not issue a stronger ruling that prevents Zazzle from wrongly hiding behind the false veneer of a 'service provider' for safe harbor protection in connection with its flawed business model, it will be handing Zazzle a windfall; Zazzle would continue to profit from making products, completely ignoring whether it is producing infringing derivative works, while the full burden to prevent infringements would be shouldered by the copyright owners who will be forced to constantly police zazzle.com and send countless takedown notices.

Without greater responsibility placed upon Zazzle, given its particular business model, the balance the DMCA attempts to strike will disproportionally

tilt in favor of Zazzle – all so that it can continue to sell various and sundry items in the name of Internet innovation. While Zazzle can adjust its business model to adapt to a ruling in favor of GYPI, an unfavorable ruling for GYPI will leave copyright owners with few options to protect their property. Will all copyright owners now be forced to sign up as partners with Zazzle so that they can at least share in some of the profits made by Zazzle's use of their images? Would Zazzle perhaps recognize, respect and better police those images that are owned by its contractual partners? Or will copyright owners be forced to go through the near impossible trouble and expense of suing Zazzle for copyright infringement every time it manufactures an infringing product?

These are the real issues raised by Zazzle's business model and the reason why this Court must rule that the DMCA safe harbor does not apply to any activities of Zazzle that are part of a system that results in it manufacturing infringing products. Zazzle openly recognizes that third-parties are uploading infringing images to its website. Opp. p. 2:6-10. Given that every image uploaded to zazzle.com is done so for a single purpose, it is not a question of "if" but "when" in terms of infringing images becoming infringing products, and GYPI can only hope to discover each particular image in time to get it taken down before Zazzle gets an order and slaps it on a t-shirt, coffee mug, or calendar.

Zazzle is therefore in a much better position to bear the burden of a ruling unfavorable to its interests. Zazzle could continue to operate without third-party uploads by allowing personal non-shared uploads and by entering into licensing agreements with more content providers like Disney. Alternatively, if Zazzle wishes to continue to source and offer selections from third party uploads, then it can simply pay the price of hiring more employees to better police and research uploaded images, or limit the uploading of images to a more manageable level or even contribute money to a settlement fund to address copyright infringement claims. Zazzle could also place stricter requirements on its third-party uploaders

by requiring them to disclose and prove how they have rights to each particular design they upload; the Zazzle content review team could then quickly determine whether the uploader has a valid right to use the image.

### c. A Ruling That the DMCA Safe Harbor Does Not Apply to Zazzle's Storage and Display of Infringing Images Would Be Extremely Narrow and Would Not "Gut" the DMCA

The Court can support a ruling that the storage and display of infringing images is not protected by the DMCA safe harbor given the particular unique facts of this case. While Zazzle's business model involves third-party uploads, those uploads are tightly integrated and functionally inseparable from its end goal of manufacturing products offline. As previously stated, Zazzle allows third party image uploads for only one reason – to give zazzle.com more material to attract more customers for Zazzle's customizable products. The nexus between Zazzle's image hosting activities and its manufacturing activities are so close and connected that only a similar business model would be affected by the ruling sought.

Zazzle grossly exaggerates the scope and effect of GYPI's argument that Zazzle should not be considered a 'service provider' in connection with the uploading platform. *See* Opp. p. 1:16-17. GYPI is not arguing a company is automatically not a 'service provider' if other parts of its business is not that of a 'service provider.' This Court ruled in *Hendrickson v. Amazon.com, Inc.* that Amazon was a 'service provider' under the facts of that particular case specifically because there was no evidence that Amazon was the direct seller of the infringing item; but this Court left open the idea that had Amazon been the direct seller of the infringing item then Amazon may not have been a 'service provider' in that instance. 298 F. Supp. 2d 914, 915 (C.D. Cal. 2003). Amazon is certainly the direct seller of many products and in connection with those products it would not be a 'service provider.' As such, a company can wear

PLAINTIFF GREG YOUNG PUBLISHING, INC.'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 2:16-CV-04587
9

multiple hats, it just cannot change hats mid transaction. For example, in a hypothetical situation where Amazon decided to manufacture Amazon-branded t-shirts and one of its t-shirt designs contained an infringing image, Amazon should not be protected under the DMCA; yet the possibility of such a situation would not prevent Amazon from seeking DMCA safe harbor in connection with an infringing sale on its marketplace where it is merely allowing third parties to sell through its e-commerce infrastructure.

Here, GYPI is seeking a much narrower ruling than Zazzle claims. The ruling sought would only apply to business models identical to Zazzle and would be effectively limited to any supposed service provider who encourages, accepts and displays uploaded images primarily for the purpose of directly selling goods that it will directly manufacture from those same images. Here, it is only because the infringing images are specifically uploaded, stored and displayed for the sole purpose of Zazzle's manufacturing activities that GYPI contends the safe harbor does not protect Zazzle.

The nexus between Zazzle's acceptance of third-party uploaded images and its manufacture and sale of infringing products is simply too strong for the Court to bifurcate these two aspects of Zazzle's business. Other than exact clones of Zazzle, GYPI can think of no other legitimate online business model that would be adversely affected by the ruling sought. Such a ruling would also track consistently with the conclusions reached in *Agence France Presse v. Morel*, 934 F. Supp. 2d 547 (S.D.N.Y. 2013) and *Gardner v. CafePress Inc.*, 2014 WL 794216 (S.D. Cal. Feb. 26, 2014) where the courts were unable to find that the defendants were 'service providers' where their activities amounted to little more than the mere sale of goods.

Moreover, not one of the 'service providers' at issue in all of the DMCA cases cited by the parties in connection with GYPI's Motion would be adversely affected by the ruling that GYPI seeks. Other than the defendants in *Gardner*

and *Morel*, none of the other 'service providers' in the cited cases resemble Zazzle, because all of them provided passive automated online systems that did not directly sell products made from the infringements uploaded by third-parties. Zazzle claims that its business is indistinguishable from the likes of eBay and Amazon, but this claim is unfounded. *See* Zazzle's Opp. at p. 12:11-13. In the cases that address eBay and Amazon, neither party was ever manufacturing, selling and/or shipping the infringing goods that were at issue in the particular case. *See Hendrickson v. eBay, Inc.*, 165 F.Supp. 2d 1082 (C.D. Cal. 2001), *Hendrickson v. Amazon.com, Inc.*, 298 F. Supp. 2d 914, 915 (C.D. Cal. 2003) and *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090 (W.D. Wash. 2004).

### d. The Cases Cited By Zazzle Do Not Apply to the Facts Here

Zazzle cites several cases to supports its various arguments, but even the core cases on which it relies are distinguishable from the facts in this case. For example, the case cited by Zazzle in connection with its claim that a website can be a 'service provider' even when the website allowed for photos to be physically printed from the photos uploaded to the site, is distinguishable. *See Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724 (S.D.N.Y. Jan 3, 2012). In *Wolk*, the website at issue was Photobucket.com, a "photo-sharing Internet service provider" that "earns the majority of its income from advertising revenue." 840 F. Supp. 2d at 740. Photobucket offered an online service that allowed users to store and share their personal photos, and it only provided a means for users to submit photos to its third-party business partner who in turn would create prints and other items incorporating the photos. Photobucket did not control its photo-printing partner's activities, nor was it involved in the fulfillment of orders. Unlike Zazzle, (a) Photobucket's website did not exist merely to sell prints; (b) the sale of prints was an ancillary service and secondary source of income; (c) the manufacturing of prints was carried out by a third-party using

automated processes; and (d) Photobucket merely facilitated the transmission of orders to its partner. As to the photo-printing defendant, the court did not rule on the DMCA's applicability because it found that the company's activities did not constitute a volitional act due to the fact that the entire system was automated "with no human intervention by any employee." 840 F. Supp. 2d at 742. Because it has been shown that Zazzle's manufacturing process is far from fully automated, the determinations made in *Wolk* do not apply to Zazzle.

While on the subject of automation, GYPI would like to refute Zazzle's argument that courts have ruled that the DMCA is not limited to passive and automated service providers. First, Zazzle uses a quote completely out of context to wrongly suggest that the Ninth Circuit ruled that the DMCA is not limited to only passive websites. *Quoting UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1019 (9th Cir. 2013) ["Had Congress intended to include such a limitation, it would have said so expressly and unambiguously." Opp. p. 1:19-21]. The Ninth Circuit in *UMG Recordings* was quoting *Io Grp., Inc. v. Veoh Networks, Inc.*, 586 F.Supp.2d 1132, 1147 (N.D.Cal.2008) and was specifically discussing whether a 'service provider' loses safe harbor protection if it modifies user-submitted files. This was not a determination that the DMCA protects service providers that use uploaded files in activities that involve more than passive automated systems. On the contrary, the defendants in both *Io Grp.* and *UMG Recordings* were modifying the user-submitted information entirely through the use of <u>automated</u> systems, a fact that actually further supports GYPI's position that automated systems are a critical element of a protected 'service provider.' *See UMG Recordings, Inc.*, 718 F.3d at 1020.

The *UMG Recordings* case plays a prominent role in Zazzle's Opposition beyond this one point. Unfortunately for Zazzle, the facts in *UMG Recordings*, much like in *Wolk*, are vastly different than Zazzle's facts. First, as noted above,

1  the defendant's involvement and contact with the infringing files at issue were all
2  made via various automated processes. *Id.* at 1012.  There was no human
3  intervention in any of the defendant's processes, as there are in Zazzle's
4  processes.  *See* GYPI's SOF ¶¶ 7, 8, 22-24, 26.   The Court even specifically
5  stated "that the language and structure of the statute, as well as the legislative
6  intent that motivated its enactment, clarify that § 512(c) encompasses the
7  access-facilitating <u>processes that automatically occur</u> when a user uploads a
8  video to [defendant]." *Id.* at 1016 [emphasis added].

9  Zazzle also cites *UMG Recordings* as strong support for its arguments for
10 why specific knowledge is needed to establish actual knowledge of an
11 infringement.  Opp. p. 16.  However, in that case the Court's analysis about
12 actual knowledge was entirely guided by the fact that the plaintiff had decided to
13 forgo the DMCA notice protocol, which according to the Court had "stripped [the
14 defendant] of the most powerful evidence of a service provider's knowledge—
15 actual notice of infringement from the copyright holder." *Id.* at 1020 (*citing Corbis
16 Corp. v. Amazon.com, Inc.*, 351 F.Supp.2d 1090, 1107 (W.D.Wash.2004))[4].

17 The facts in our case are very different.  GYPI, through counsel, sent
18 numerous takedowns to Zazzle and even had a phone conversation three years
19 prior to this lawsuit that led to Zazzle accepting a catalog of GYPI's Kerne
20 Erickson images.  Given that the cases cited by Zazzle applied great weight to
21 the fact that the plaintiffs did not provide any type of notice to the defendants,
22 this Court should place proportional weight on the fact that GYPI gave Zazzle

---

[4] The facts were the exact same in the second case cited by Zazzle to support its position that it lacked knowledge of its infringements of GYPI's images.  *See Ventura Content, Ltd. v. Motherless, Inc.,* 2013 WL 11237204, at *6 (C.D. Cal. July 3, 2013) *stating* "It is undisputed that, until it filed the instant action, Plaintiff did not notify Defendants that its copyrighted material was available on Defendants' system. Plaintiff's failure to do so "stripped it of the most powerful evidence of a service provider's knowledge."

multiple notices.  As such, the record does in fact "indicate that [Zazzle] was subjectively aware of facts that would have made it objectively obvious to [it] that the specific copyrights owned by the Plaintiff were being infringed."  Id. at *7.

## II. CONCLUSION

In sum, Zazzle has provided no support to refute GYPI's Motion seeking the Court to deny Zazzle the right to raise as an affirmative defense the DMCA safe harbor protection in connection with at least some, if not all of Zazzle's activities.

DATED: April 10, 2017                    LAW OFFICE OF JEFFREY YOUNG

                                         /s/ *Jeffrey S. Young*

                                  By:    _____

                                         Jeffrey S. Young, Attorney for
                                         Plaintiff Greg Young Publishing, Inc.