LAW OFFICE OF JEFFREY S. YOUNG
JEFFREY S. YOUNG, SB# 172016
1307 State Street, 1st Floor
Santa Barbara, CA 93101
jeff@jeffyounglaw.com
Tel: (805) 884-0338
Fax: (805) 884-0799

LAW OFFICES OF DARREN J. QUINN
DARREN J. QUINN, SB# 149679
12702 Via Cortina, Suite 105
Del Mar, CA 92014
Tel: 619-992-9401

Attorneys for Plaintiff
GREG YOUNG PUBLISHING, INC.

MURPHY, PEARSON, BRADLEY & FEENEY
Timothy J. Halloran – 104498
THalloran@mpbf.com
Keith G. Adams – 240497
KAdams@mpbf.com
Dina M. Zagari – 278627
DZagari@mpf.com
550 S. Hope Street, Suite 650
Los Angeles, CA 90071
Telephone: (213) 327-3500
Facsimile: (213) 627-2445

Attorneys for Defendant
ZAZZLE INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

GREG YOUNG PUBLISHING, INC., a corporation,

Plaintiff,

v.

ZAZZLE INC., a corporation, and DOES 1 TO 10,

Defendants.

Case No.: 2:16-cv-04587 SVW (KSx)

**JOINT [PROPOSED] DISPUTED JURY INSTRUCTIONS AND OBJECTIONS THERETO**

**Complaint Filed:** June 23, 2016
**Pre-Trial Conference:** July 31, 2017
**Trial:** August 8, 2017

# INDEX OF AGREED JURY INSTRUCTIONS



| Page | Instruction |
|---|---|
| 4 | 17.1P Preliminary Instruction—Copyright [Plaintiff's Version] |
| 10 | 17.1D Preliminary Instruction—Copyright [Defendant's Version] |
| 15 | 17.18P Copyright Infringement—Copying—Access Defined [Plaintiff's Version] |
| 18 | 17.18D Copyright Infringement—Copying—Access Defined [Defendant's Version] |
| 21 | 17.19P Substantial Similarity—Extrinsic Test; Intrinsic Test [Plaintiff's Version] |
| 24 | 17.19D Substantial Similarity—Extrinsic Test; Intrinsic Test [Defendant's Version] |
| 27 | 17.24P Copyright—Affirmative Defense—Copyright Misuse [Plaintiff's Version] |
| 34 | 17.24D Copyright—Affirmative Defense—Copyright Misuse [Defendant's Version] |
| 37 | 17.24A-P Copyright—Affirmative Defense— Unclean Hands [Plaintiff's Version] |
| 41 | 17.24A-D Copyright—Affirmative Defense— Unclean Hands [Defendant's Version] |
| 47 | 17.30P Copyright—Affirmative Defense—Limitation on Liability for Information Residing on Systems or Networks at Direction of Users [Plaintiff's Version] |
| 53 | 17.30D Copyright—Affirmative Defense—Limitation on Liability for Information Residing on Systems or Networks at Direction of Users [Defendant's Version] |
| 57 | 17.35P Copyright—Damages—Statutory Damages (17 U.S.C. § 504(c)) [Plaintiff's Version] |
| 62 | 17.35D Copyright—Damages—Statutory Damages (17 U.S.C. § 504(c)) [Defendant's Version] |
| 68 | 17.37P Copyright—Damages—Willful Infringement (17 U.S.C. § 504(c)(2)) [Plaintiff's Version] |
| 71 | 17.37D Copyright—Damages—Willful Infringement (17 U.S.C. § 504(c)(2)) [Defendant's Version] |

**PLAINTIFF'S DISPUTED INSTRUCTION NO. 17.1P (PRELIMINARY INSTRUCTION—COPYRIGHT)**

The plaintiff, GYPI, claims ownership of 39 copyrights and seeks damages against the defendant, ZAZZLE, for copyright infringement. The defendant denies infringing the copyrights and asserts certain affirmative defenses as explained below. To help you understand the evidence in this case, I will explain some of the legal terms you will hear during this trial.

**DEFINITION OF COPYRIGHT**

The owner of a copyright has the right to exclude any other person from reproducing, distributing, performing, displaying or preparing derivative works from the work covered by copyright for a specific period of time.

A copyrighted work can be a literary work, musical work, dramatic work, pantomime, choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual work, sound recording, architectural work, or computer program.

Facts, ideas, procedures, processes, systems, methods of operation, concepts, principles, or discoveries cannot themselves be copyrighted. But facts and ideas (such as the fact or idea of a beach sunset) may give an author inspiration to create a painting or drawing containing the author's original expression of a beach sunset which is copyrighted

The copyrighted work must contain original expression of the author. Only the author's original expression in a copyrighted work is copyrighted by that author. For instance, an author may add original expression to an existing work, but only the author's added original expression to the existing work is copyrighted.

**COPYRIGHT INTERESTS**

Initially, the author is the copyright owner.

The copyright owner may transfer or sell to another person all or part of the owner's property interest in the copyright, that is, the right to exclude others from

reproducing, distributing, performing, displaying or preparing derivative works from the copyrighted work.

To be valid, the transfer or sale must be in writing and signed by the transferor/author. The person to whom a right is transferred is called an assignee.

**HOW COPYRIGHT IS OBTAINED**

Copyright automatically attaches to a work the moment the work is fixed in any tangible medium of expression such as art canvas or a computer file.

The owner of the copyright may register the copyright by completing a registration form and depositing a copy of the copyrighted work with the Copyright Office. After determining that the material deposited constitutes copyrightable subject matter and that certain legal and formal requirements are satisfied, the Register of Copyrights registers the work and issues a certificate of registration to the copyright owner.

**PLAINTIFF'S BURDEN OF PROOF**

In this case, the plaintiff, GYPI, contends that the defendant, ZAZZLE, has infringed the plaintiff's copyrights.

First, plaintiff has the burden of proving by a preponderance of the evidence that the plaintiff is the owner of the copyrights. A certificate of copyright registration made before or within five years after first publication of the work is evidence of the validity of the copyright and of the facts stated in the certificate.

Second, plaintiff has the burden of proving by a preponderance of the evidence that the defendant did any of the following without authority from the copyright owner during the term of the copyright: (1) reproduced plaintiff's copyrighted work; (2) publicly distributed plaintiff's copyrighted work; (3) publicly displayed plaintiff's copyrighted work; or (4) prepared derivative works from plaintiff's copyrighted work. Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the copyrighted work was infringed.

**PROOF OF COPYING**

To prove that the defendant copied the plaintiff's work, the plaintiff may show that the defendant had access to the plaintiff's copyrighted work and that there are substantial similarities between the defendant's work and the plaintiff's copyrighted work.

**LIABILITY FOR INFRINGEMENT**

Copyright infringement is strict liability. This means that defendant can be liable for copyright infringement even if defendant innocently infringed plaintiff's copyright, acted reasonably, or did not intend to infringe.

A defendant who reproduces or copies plaintiff's copyrighted work in an electronic file or onto a physical product without authority from the copyright owner during the term of the copyright infringes the copyright.

A defendant who prepares derivative works from a copyrighted work without authority from the copyright owner during the term of the copyright infringes the copyright. A derivative work modifies plaintiff's copyrighted work in some manner such as cropping or resizing an image.

A defendant who publicly displays a copyrighted work without authority from the copyright owner during the term of the copyright infringes the copyright. A display of a copyrighted work on a publicly accessible website or on advertisements is a public display.

A defendant who distributes a copyrighted work without authority from the copyright owner during the term of the copyright infringes the copyright. A sale of a product containing plaintiff's work is a distribution of plaintiff's copyrighted work. Although separate exclusive rights, a copyright owner's exclusive rights to reproduce, prepare derivative works, publicly display, and publicly distribute are cumulative and may overlap.

**PLAINTIFF'S CITATIONS RE: DISPUTED INSTRUCTION NO. 17.1P (PRELIMINARY INSTRUCTION—COPYRIGHT)**

**Attribution**: 9th Circuit Manual of Model Jury Instructions, Instruction 17.1

Plaintiff's Citations:

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159 (9th Cir. 2007) *quoting A&M Records v. Napster, Inc., 2*39 F.3d 1004, 1013 (9th Cir. 2001).

> Plaintiffs must satisfy two requirements to present a prima facie case of direct infringement: (1) they must show ownership of the allegedly infringed material and (2***) they must demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106***. See 17 U.S.C. § 501(a) (infringement occurs when alleged infringer engages in activity listed in § 106); see also *Baxter v. MCA, Inc*., 812 F.2d 421, 423 (9th Cir. 1987); see, e.g., *S.O.S., Inc. v. Payday, Inc*., 886 F.2d 1081, 1085 n.3 (9th Cir. 1989) ("The word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights. . . .").

*Silvers v. Sony Pictures Entm't, Inc*., 330 F.3d 1204, 1208 (9th Cir. Cal. 2003)

> The Congressional Report with regard to the adoption of § 106 states that: ***the five fundamental rights that the bill gives to copyright owners -- the exclusive rights of reproduction, adaptation, publication, performance and display -- are [**11] stated generally in section 106*. *These exclusive rights, which comprise the so called "bundle of rights" that is a copyright, are cumulative and may overlap in some cases***. Each of the five enumerated rights may be subdivided indefinitely and . . . in connection with section 201, each subdivision of an exclusive right may be owned and enforced separately. H.R. Rep. No. 94-1476, 1976 WL 14045, pt. 1, at 61 (1976) (emphasis added).

*United States v. Liu*, 731 F.3d 982, 988 (9th Cir. Cal. 2013)

> ***In a civil suit, liability for copyright infringement is strict***. "***[T]he innocent intent of the defendant constitutes no defense to liability***." *Monge v. Maya Magazines, Inc*., 688 F.3d 1164, 1170 (9th Cir. 2012) (citing 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.08[B][1] (Matthew Bender rev. ed. 2011)).

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1160 (9th Cir. Cal. 2007).

> A photographic image is a work that is ‘fixed in a tangible medium of expression,’ for purposes of the Copyright Act, when embodied (i.e., stored) in a computer's server (or hard disk, or other storage device). The image stored in the computer is the ‘copy’ of the work for purposes of copyright law. See *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 517-18 (9th Cir. 1993)

*See also MAI Sys. Corp. v. Peak Computer*, 991 F.2d 511, 519 (9th Cir. Cal. 1993) (“However, since we find that the copy created in the RAM can be ‘perceived, reproduced, or otherwise communicated,’ we hold that the loading of software into the RAM creates a copy under the Copyright Act. 17 U.S.C. § 101”); *Ticketmaster L.L.C. v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096, 1105 (C.D. Cal. 2007) (“The copies of webpages stored automatically in a computer's cache or random access memory ("RAM") upon a viewing of the webpage fall within the Copyright Act's definition of ‘copy.’”)

**PLAINTIFF'S OBJECTIONS AND RATIONALE RE: DISPUTED INSTRUCTION NO. 17.1P (PRELIMINARY INSTRUCTION—COPYRIGHT)**

1. Plaintiff's instruction adds a concrete example to help explain the difference between uncopyrightable ideas and copyrightable express. Plaintiff's instruction adds:

> But facts and ideas (such as the fact or idea of a beach sunset) may give an author inspiration to create a painting or drawing containing the author's original expression of a beach sunset which is copyrighted.

The jury must clearly understand that anyone can paint a sunset, but no one can copy an author's expression.

2. Defendant's instruction could mislead the jury that copyrightable expression cannot be added to pre-existing works such as public domain works. Defendant's instruction vaguely states:

> The copyrighted works must be original. An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of copying.

In contrast, plaintiff's instruction clearly states:

> The copyrighted work must contain original expression of the author. ***Only the author's original expression in a copyrighted work is copyrighted by that author***. ***For instance, an author may add original expression to an existing work, but only the author's added original expression to the existing work is copyrighted***."

(emphasis added) Plaintiff's instruction is important because there may be some testimony that a few of the works were inspired by or contain elements of pre-existing works.

3. Plaintiff's instruction provides a concrete example of the tangible mediums of expression in this case. Plaintiff's instruction states:

> Copyright automatically attaches to a work the moment the work is fixed in any tangible medium of expression ***such as art canvas or a computer file***.

(emphasis added). Defendant's instruction provides no context:

> Copyright automatically attaches to a work the moment the work is fixed in any tangible medium of expression."

4. Plaintiff's instruction more clearly defines the infringement in the context of the four exclusive rights under 17 U.S.C. §106 at issue.

> Second, plaintiff has the burden of proving by a preponderance of the evidence that the defendant did any of the following without authority from the copyright owner during the term of the copyright: (1) reproduced plaintiff's copyrighted work; (2) publicly distributed plaintiff's copyrighted work; (3) publicly displayed plaintiff's copyrighted work; or (4) prepared derivative works from plaintiff's copyrighted work.

(emphasis added). *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d at 1159. In contrast, defendant's instruction uses the shorthand "copied" that is incomplete and confusing:

> Second, plaintiff has the burden of proving by a preponderance of the evidence that the defendant copied original expression from the copyrighted work."

5. Plaintiff's instruction clarifies that copyright infringement liability is "strict." Plaintiff's instruction adds:

> Copyright infringement is strict liability. This means that defendant can be liable for copyright infringement even if defendant innocently infringed plaintiff's copyright, acted reasonably, or did not intend to infringe."

This instruction tracks Ninth Circuit law and is necessary to dispel juror misconceptions that defendant's intent is relevant to liability (as opposed to damages). *See United States v. Liu*, 731 F.3d at 988.

6. The jury needs direction from the court regarding what the four exclusive rights under 17 U.S.C. §106 mean in the context of this case. Defendant's instruction states:

> One who reproduces, publicly distributes, publicly displays, or prepares derivative works from a copyrighted work without authority from the copyright owner during the term of the copyright infringes the copyright."

In contrast, plaintiff's instruction gives the jury some context regarding what those four exclusive rights mean with respect to liability:

A defendant who reproduces or copies plaintiff's copyrighted work in an electronic file or onto a physical product without authority from the copyright owner during the term of the copyright infringes the copyright.

A defendant who prepares derivative works from a copyrighted work without authority from the copyright owner during the term of the copyright infringes the copyright. A derivative work modifies plaintiff's copyrighted work in some manner such as cropping or resizing an image.

A defendant who publicly displays a copyrighted work without authority from the copyright owner during the term of the copyright infringes the copyright. A display of a copyrighted work on a publicly accessible website or on advertisements is a public display.

A defendant who distributes a copyrighted work without authority from the copyright owner during the term of the copyright infringes the copyright. A sale of a product containing plaintiff's work is a distribution of plaintiff's copyrighted work.

Although separate exclusive rights, a copyright owner's exclusive rights to reproduce, prepare derivative works, publicly display, and publicly distribute are cumulative and may overlap."

The violation of a right "to prepare derivative works" [§106(2)] typically requires a violation of the right "to reproduce the copyrighted work" [§106(1)] The Ninth Circuit explains:

> We held that a copyright holder's right to create [**26] derivative works is not infringed unless the alleged derivative work "incorporate[s] a protected work in some concrete or permanent 'form.'" Id. In other words, in some contexts, the claimant must be able to claim infringement of its reproduction right in order to claim infringement of its right to prepare derivative works.

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1161 (9th Cir. Cal. 2007). *See alsoWojnarowicz v. American Family Ass'n*, 745 F. Supp. 130, 142 (S.D.N.Y. 1990) ("By editing or cropping plaintiff's artworks and presenting the unauthorized modified version, defendants have additionally violated plaintiff's exclusive right to prepare derivative works. 17 U.S.C. § 106(2).")

Courts have held that modifying the size of an infringing image can violate the right to produce derivative works under §106(2).

> It is undisputed that JBJ redrew and modified the size of the initial Kim Clark design in order that it would fit onto the rollers and screens by which it was printed onto fabric. The Second Circuit has held that such

> efforts, known as "putting a design into repeat," is a sufficiently original contribution to qualify the new fabric pattern as a derivative work.

*JBJ Fabrics, Inc. v. India Garments, Inc.*, 1993 U.S. Dist. LEXIS 11744, 10-11 (S.D.N.Y. Aug. 20, 1993)

Likewise, cropping an image also infringes the right “to prepare derivative works” under §106(2). *See Latimer v. Roaring Toyz, Inc.*, 574 F. Supp. 2d 1265, 1274 (M.D. Fla. 2008) (“‘A cropped photograph of an earlier photograph is a derivative work.’”) *quoting SHL Imaging, Inc. v. Artisan Homes, Inc.*, 117 F.Supp.2d 301, 305-06 (S.D. N.Y. 2000).

When “a person displays a photographic image by using a computer to fill a computer screen with a copy of the photographic image fixed in the computer's memory,” the copyright holder’s display rights under 17 U.S.C. §106(5) is infringed. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1160 (9th Cir. Cal. 2007) (emphasis added).

**DEFENDANT'S DISPUTED INSTRUCTION NO. 17.1D (PRELIMINARY INSTRUCTION - COPYRIGHT)**

The plaintiff, GYPI, claims ownership of 39 copyrights and seeks damages against the defendant, Zazzle, for copyright infringement. The defendant denies infringing the copyrights and asserts certain affirmative defenses as explained below. To help you understand the evidence in this case, I will explain some of the legal terms you will hear during this trial.

**DEFINITION OF COPYRIGHT**

The owner of a copyright has the right to exclude any other person from reproducing, distributing, performing, displaying or preparing derivative works from the work covered by copyright for a specific period of time.

A copyrighted work can be a literary work, musical work, dramatic work, pantomime, choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual work, sound recording, architectural work, or computer program.

Facts, ideas, procedures, processes, systems, methods of operation, concepts, principles, or discoveries cannot themselves be copyrighted.

The copyrighted works must be original. An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of copying.

**COPYRIGHT INTERESTS**

Initially, the author is the copyright owner.

The copyright owner may transfer or sell to another person all or part of the owner's property interest in the copyright, that is, the right to exclude others from reproducing, distributing, performing, displaying or preparing derivative works from the copyrighted work. To be valid, the transfer or sale must be in writing and signed by the transferor/author. The person to whom a right is transferred is called an assignee.

**HOW COPYRIGHT IS OBTAINED**

Copyright automatically attaches to a work the moment the work is fixed in any

tangible medium of expression.

The owner of the copyright may register the copyright by completing a registration form and depositing a copy of the copyrighted work with the Copyright Office. After determining that the material deposited constitutes copyrightable subject matter and that certain legal and formal requirements are satisfied, the Register of Copyrights registers the work and issues a certificate of registration to the copyright owner.

**PLAINTIFF'S BURDEN OF PROOF**

In this case, the plaintiff, GYPI, contends that the defendant, Zazzle, has infringed the plaintiff's copyrights.

First, plaintiff has the burden of proving by a preponderance of the evidence that the plaintiff is the owner of the copyrights. A certificate of copyright registration made before or within five years after first publication of the work is evidence of the validity of the copyright and of the facts stated in the certificate.

Second, plaintiff has the burden of proving by a preponderance of the evidence that the defendant copied original expression from the copyrighted work.

Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the copyrighted work was infringed.

**PROOF OF COPYING**

To prove that the defendant copied the plaintiff's work, the plaintiff may show that the defendant had access to the plaintiff's copyrighted work and that there are substantial similarities between the defendant's work and the plaintiff's copyrighted work.

**LIABILITY FOR INFRINGEMENT**

One who reproduces, publicly distributes, publicly displays, or prepares derivative works from a copyrighted work without authority from the copyright owner during the term of the copyright infringes the copyright.

**DEFENDANT'S CITATIONS RE: DISPUTED INSTRUCTION NO. 17.1D (PRELIMINARY INSTRUCTION - COPYRIGHT)**

9th Circuit Manual of Model Civil Jury Instructions ("MJI"), Instruction 17.1

**DEFENDANT'S OBJECTIONS AND RATIONALE RE: DISPUTED INSTRUCTION NO. 17.1D (PRELIMINARY INSTRUCTION - COPYRIGHT)**

Defendant believes that its proposed instruction, which more closely tracks the Ninth Circuit copyright model instructions, is more appropriate. Defendant's main objection to Plaintiff's instruction is that it is unnecessarily cumulative and redundant with other instructions, especially as to liability, and repeats its version of the law in several different ways, many of which are inaccurate.

Under "PLAINTIFF'S BURDEN OF PROOF," plaintiff departs from the model instruction by replacing "copied original expression from plaintiff's copyrighted work" with "did any of the following without authority from the copyright owner during the term of the copyright: (1) reproduced plaintiff's copyrighted work; (2) publicly distributed plaintiff's copyrighted work; (3) publicly displayed plaintiff's copyrighted work; or (4) prepared derivative works from plaintiff's copyright work." Defendant believes that the model instruction is simpler and more understandable by the jury. In addition, as explained under "LIABILITY FOR INFRINGEMENT" below, the statement of the law by Plaintiff is inaccurate in several respects.

Under "LIABILITY FOR INFRINGEMENT," Plaintiff's instruction as a whole departs substantially from the model instruction followed by Defendant's instruction.

The first paragraph of Plaintiff's version refers to copyright as "strict liability.". This paragraph would make some sense were the jury composed of lawyers, or if there were other claims to contrast a "strict liability" standard to. Here, the sole claim here is for copyright infringement. As such, the paragraph is unnecessary and confusing.

The second through fifth paragraphs under this heading are misleading, and are notably not contained in the model instructions. They imply that, in effect, any activity done with respect to a copyrighted work without the permission of the copyright owner is necessarily copyright infringement. That is not the case, as it ignores both the scope of copyrights and potential defenses. Contrary to the second paragraph, an internet service provider that reproduces a file is not necessarily liable for copyright

infringement pursuant to the Digital Millenium Copyright Act, 17 U.S.C. § 512. As to the third paragraph, a "derivative" of a copyrighted work might copy only uncopyrightable elements of the copyrighted work (*e.g.*, *scenes a faire*), or might be "fair use," or be *de minimis*. *See, e.g.*, *Newton v. Diamond*, 388 F.3d 1189, 1192 (9th Cir. 2004) (no liability for *de minimis* infringement); *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1175 (9th Cir. 2013) (fair use); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994) (scenes a faire). Such "copying" would not constitute infringement, as implied by the instruction. Nor does cropping or resizing a work necessarily result in a derivative work in any event, as implied by the instruction. As to the fifth sentence, "authority" from the copyright owner is ambiguous. Nor is it accurate to say that any "public display" is infringement, especially as applied to the graphic artworks at issue here. A person who buys a lawfully made copy of a copyrighted work can display it directly under the "first sale" doctrine. *See, e.g.*, 17 U.S.C. § 109(a). The same applies to "distribution" – an individual who purchases a lawfully-made original or copy of a copyrighted work may sell that original or copy. *Id.*

In short, Plaintiff's suggestions inaccurately state the law, and there is in any event no need for this sort of rendition of copyright law in a preliminary instruction.

**PLAINTIFF'S DISPUTED INSTRUCTION NO. 17.18P (COPYRIGHT INFRINGEMENT—COPYING—ACCESS DEFINED)**

As part of its burden in Instruction 17.5, the plaintiff must prove by a preponderance of the evidence that the defendant or whoever created the work owned by the defendant had access to the plaintiff's work. You may find that the defendant had access to the plaintiff's work if the defendant or whoever created the work owned by the defendant had a reasonable opportunity to view or copy the plaintiff's work before the defendant's work was created.

Access may be shown by

1. A similarity between the plaintiff's work and the defendant's work that is so "striking" that it is highly likely the works were not created independent of one another; or
2. The plaintiff's work being widely disseminated such as being available for viewing on the Internet; or
3. A chain of events connecting the plaintiff's work and the defendant's opportunity to view or copy that work such as dealings through a third party (such as a Zazzle Designer or Store Owner who uploads a copy of plaintiff's work to www.zazzle.com).

**PLAINTIFF'S CITATIONS RE: DISPUTED INSTRUCTION NO. 17.18P (COPYRIGHT INFRINGEMENT—COPYING—ACCESS DEFINED)**

**Attribution:** 9th Circuit Manual of Model Jury Instructions, Instruction 17.18

**Plaintiff's Citations**:

**PLAINTIFF'S OBJECTIONS AND RATIONALE RE: DISPUTED INSTRUCTION NO. 17.18P (COPYRIGHT INFRINGEMENT—COPYING—ACCESS DEFINED)**

Plaintiff's instruction adds the following additional two ways that access can be shown under the facts of this case set forth in the comments which provide, in part:

Access may be shown by:

[1.] [a chain of events connecting the plaintiff's work and the defendant's opportunity to [view] [hear] [copy] that work [such as dealings through a third party (such as a publisher or record company) that had access to the plaintiff's work and with whom both the plaintiff and the defendant were dealing]] [or]

[2.] [the plaintiff's work being widely disseminated] [or]

**DEFENDANT'S DISPUTED INSTRUCTION NO. 17.18D (COPYING—ACCESS AND SUBSTANTIAL SIMILARITY)**

As part of its burden in Instruction 17.5, the plaintiff must prove by a preponderance of the evidence that the defendant or whoever created the work owned by the defendant had access to the plaintiff's work. You may find that the defendant had access to the plaintiff's work if the defendant or whoever created the work owned by the defendant had a reasonable opportunity to view or copy the plaintiff's work before the defendant's work was created.

Access may be shown by a similarity between the plaintiff's work and the defendant's work that is so "striking" that it is highly likely the works were not created independent of one another.

**DEFENDANT'S CITATIONS RE: DISPUTED INSTRUCTION NO. 17.18D (COPYING—ACCESS AND SUBSTANTIAL SIMILARITY)**

MJI § 17.17

**DEFENDANT'S OBJECTIONS AND RATIONALE RE: DISPUTED INSTRUCTION NO. 17.18D (COPYING—ACCESS AND SUBSTANTIAL SIMILARITY)**

Plaintiff's version of this instruction includes two methods of proving access that are not at issue at this case and would not be supported by the record.

The first factor proposed by Plaintiff, "striking" similarity, is in any event the most appropriate to the case, as it concerns duplicates or near-duplicates of copyrighted works, and is included in Defendant's instruction.

The second is a "chain of events connecting the plaintiff's work and the defendant's opportunity to view or copy that work such as dealings with a third party (such as a Zazzle Designer or Store Owner who uploads a copy of plaintiff's work to www.zazzle.com)." This method simply shifts where access occurred: from Zazzle to a "Designer or Store Owner." Notably, Plaintiff has not designated any such individuals to testify at trial, and has not even sought their contact information from Zazzle.

The third, that a work is "widely disseminated or available for viewing on the internet," puts the cart before the horse. It would effectively gut any meaningful notion of "access," as virtually every work is accessible *somewhere* on the internet for viewing. Even if it were an accurate statement of the law, and Plaintiff has provided no case support for that notion, the instruction erroneously implies that it has been established in this case that Plaintiff's images are "widely disseminated."

During the parties' meet-and-confer, Plaintiff's counsel implied that the second two factors were supported by the commentary in the 9th Circuit Jury Instruction Manual; however, they are not.

**PLAINTIFF'S DISPUTED INSTRUCTION NO. 17.19P (SUBSTANTIAL SIMILARITY – EXTRINSIC TEST; INTRINSIC TEST)**

A plaintiff must prove both substantial similarity under the "extrinsic test" and substantial similarity under the "intrinsic test."

The "extrinsic test" looks at the copyrightable portions of the work. First, you must filter out the portions of plaintiff's works that are not copyrightable. Ideas (such as the idea of a beach sunset) are not copyrightable, so any person may draw a beach sunset. An author's expression of a beach sunset on a drawing, however, is copyrightable. Second, after filtering out the not copyrightable portions, you must determine whether an ordinary, reasonable audience would find the works substantially similar.

The "intrinsic test" is simply whether an ordinary, reasonable audience would find the works substantially similar in the total concept and feel of the works.

**PLAINTIFF'S CITATIONS RE: DISPUTED INSTRUCTION NO. 17.19P (SUBSTANTIAL SIMILARITY – EXTRINSIC TEST; INTRINSIC TEST)**

**Attribution:** 9th Circuit Manual of Model Jury Instructions, Instruction 17.19

**Plaintiff's Citations**:

**PLAINTIFF'S OBJECTIONS AND RATIONALE RE: DISPUTED INSTRUCTION NO. 17.19P (SUBSTANTIAL SIMILARITY – EXTRINSIC TEST; INTRINSIC TEST)**

1. Plaintiff's instruction is shorter and provides a helpful concrete example:

> The "extrinsic test" looks at the copyrightable portions of the work. First, you must filter out the portions of plaintiff's works that are not copyrightable***. Ideas (such as the idea of a beach sunset) are not copyrightable, so any person may draw a beach sunset. An author's expression of a beach sunset on a drawing, however, is copyrightable***.

In contrast, defendant's instruction is longer and contains law unhelpful or confusing to the jury in this case:

> The "extrinsic test" looks at the copyrightable portions of the work. First, you must filter out the portions of plaintiff's works that are not copyrightable. Ideas***, procedures, processes, systems***, and concepts are not copyrightable. ***Material traceable to common sources or in the public domain is not copyrightable. Elements of the plaintiff's work that are indispensable or standard in the treatment of an idea are not copyrightable***. ***Elements of expression that necessarily follow from an idea or are standard in the treatment of a given idea are also not copyrightable.***

Under defendant's instruction, a juror may be confused and erroneously conclude that a painting of a sunset is not copyrightable.

**DEFENDANT'S DISPUTED INSTRUCTION NO. 17.19D (SUBSTANTIAL SIMILARITY – EXTRINSIC TEST; INTRINSIC TEST)**

A plaintiff must prove both substantial similarity under the "extrinsic test" and substantial similarity under the "intrinsic test."

The "extrinsic test" looks at the copyrightable portions of the work. First, you must filter out the portions of plaintiff's works that are not copyrightable.

Ideas, procedures, processes, systems, and concepts are not copyrightable. Material traceable to common sources or in the public domain is not copyrightable.

Elements of the plaintiff's work that are taken from other works are not copyrightable.

Elements of the plaintiff's work that are indispensable or standard in the treatment of an idea are not copyrightable.

Elements of expression that necessarily follow from an idea or are standard in the treatment of a given idea are also not copyrightable.

Second, after filtering out the not copyrightable portions, you must determine whether an ordinary, reasonable audience would find the works substantially similar.

The "intrinsic test" is simply whether an ordinary, reasonable audience would find the works substantially similar in the total concept and feel of the works.

**DEFENDANT'S CITATIONS RE: DISPUTED INSTRUCTION NO. 17.19D (SUBSTANTIAL SIMILARITY – EXTRINSIC TEST; INTRINSIC TEST)**

MJI § 17.19; 17 U.S.C. § 102(b); *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010); *Chase-Riboud v. Dreamworks, Inc.*, 987 F. Supp. 1222, 1226 (C.D. Cal. 1997); *Pasillas v. McDonald's Corp.*, 927 F. 2d 440, 443 (9th Cir. 1991); *Satava v. Lowry*, 323 F. 3d 805 (9th Cir. 2003)

**DEFENDANT'S OBJECTIONS AND RATIONALE RE: DISPUTED INSTRUCTION NO. 17.19D (SUBSTANTIAL SIMILARITY – EXTRINSIC TEST; INTRINSIC TEST)**

Plaintiff's version of the instruction is incomplete as applied to this case, only discussing the difference between "idea" and "expression." Other factors discussed in Defendant's version are applicable to this case: (1) material traceable to common sources (as Plaintiff's artwork heavily relied on pre-existing material), and (2) scenes a faire (as much of Plaintiff's artwork naturally flows from the ideas of, *e.g.*, a woman on a beach).

Defendant's version accurately recounts Ninth Circuit law on substantial similarity and the extrinsic and intrinsic test. A plaintiff must prove both substantial similarity under the "extrinsic test" and substantial similarity under the "intrinsic test." *See Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010). The "extrinsic test" looks at the copyrightable portions of the work, filtering out the portions of plaintiff's works that are not copyrightable. *Id.* Ideas, procedures, processes, systems, and concepts are not copyrightable. 17 U.S.C. § 102(b). Material traceable to common sources or in the public domain is not copyrightable. *Chase-Riboud v. Dreamworks, Inc.*, 987 F. Supp. 1222, 1226 (C.D. Cal. 1997). Elements of the plaintiff's work that are indispensable or standard in the treatment of an idea are not copyrightable. *Pasillas v. McDonald's Corp.*, 927 F. 2d 440, 443 (9th Cir. 1991). Elements of expression that necessarily follow from an idea or are standard in the treatment of a given idea are also not copyrightable. *Satava v. Lowry*, 323 F. 3d 805 (9th Cir. 2003). After filtering out the not copyrightable portions, the trier of fact must determine whether an ordinary, reasonable audience would find the works substantially similar. *Mattel, Inc.*, 616 F.3d at 913-914. The "intrinsic test" is simply whether an ordinary, reasonable audience would find the works substantially similar in the total concept and feel of the works. *Mattel, Inc.*, 616 F.3d at 913-914.

**PLAINTIFF'S DISPUTED INSTRUCTION NO. 17.24P (COPYRIGHT—AFFIRMATIVE DEFENSE—COPYRIGHT MISUSE)**

The defendant asserts as an equitable affirmative defense that the plaintiff has misused its copyrights.

The copyright misuse equitable defense may be applied when a defendant can prove either: (1) a violation of the antitrust laws; (2) that the copyright owner otherwise illegally extended its monopoly; or (3) that the copyright owner violated the public policies underlying the copyright laws.

The copyright misuse equitable defense applies where a copyright licensor prevented its licensee from using any other competing product.

When the copyright misuse equitable defense applies, the court may decline to entertain a lawsuit for copyright infringement on a work  until the improper practice has been abandoned and the consequences of the misuse of the copyright have been dissipated"

If you find that the defendants have proven by a preponderance of the evidence that the plaintiff misused its copyright on a work, then you may find against plaintiff and in favor of the defendant on the claim for copyright infringement with respect to such work.

**PLAINTIFF'S CITATIONS RE: DISPUTED INSTRUCTION NO. 17.24P (COPYRIGHT—AFFIRMATIVE DEFENSE—COPYRIGHT MISUSE)**

**Attribution:** None

**Plaintiff's Citations**:

*Unicolors, Inc. v. Urban Outfitters, Inc.*, 2017 U.S. App. LEXIS 5732 (9th Cir. Cal. Apr. 3, 2017)

> ***The district court also did not abuse its discretion in refusing to issue a jury instruction on Urban's estoppel defense. HN4Estoppel is an equitable defense that the court, not the jury, must decide***. *Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996).

*Granite States Ins. Co. v. Smart Modular Techs.*, 76 F.3d 1023, 1027 (9th Cir. Cal. Feb. 14, 1996)

> ***A litigant is not entitled to have a jury resolve a disputed affirmative defense if the defense is equitable in nature***. *Adams*, 876 F.2d at 709. A defense is equitable in nature if it could have been asserted in a court of equity, or in a court of law after the passage of the Law and Equity Act of 1915. n5 5 James W. Moore, *Moore's Federal Practice* Par. 38.11[6] (2d ed. 1995); *see also Adams*, 876 F.2d at 709; *In re U.S. Fin. Sec. Litig.*, 609 F.2d 411, 422 (9th Cir. 1979), cert. [**9] denied, 446 U.S. 929 (1980); *Liberty Oil Co. v. Condon Nat'l Bank*, 260 U.S. 235, 242-43, 67 L. Ed. 232, 43 S. Ct. 118 (1922).

*Omega S.A. v. Costco Wholesale Corp.*, 776 F.3d 692, 699-700 (9th Cir. 2015) (Wardlaw, Concurring):

> We expressly adopted ***copyright misuse as an equitable defense*** to a claim of infringement in *Practice Management Information Corp. v. American Medical Ass'n*, 121 F.3d 516 [*700] (9th Cir. 1997), noting that "***copyright misuse does not invalidate a copyright, but precludes its enforcement during the period of misuse***," id. at 520 n.9, as amended by 133 F.3d 1140 (9th Cir. 1998); *see also Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1090 (9th Cir. 2005) (***recognizing the Fifth Circuit's [**19] discussion of copyright misuse "as an unclean hands defense which forbids the use of the copyright to secure an exclusive right or limited monopoly not granted by the Copyright Office and which is***

> ***contrary to public policy to grant***") (internal quotation marks and alterations omitted).
>
> The copyright misuse doctrine "forbids the use of the copyright to secure an exclusive right or limited monopoly not granted by the Copyright Office." *Lasercomb*, 911 F.2d at 977 (alterations omitted). ***The defense is often applied when a defendant can prove either: (1) a violation of the antitrust laws; (2) that the copyright owner otherwise illegally extended its monopoly; or (3) that the copyright owner violated the public policies underlying the copyright laws.*** *Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 65 (1st Cir. 2012), cert. denied, 133 S. Ct. 1315, 185 L. Ed. 2d 195 (2013). We have discussed copyright misuse in only a handful of published opinions. But while we have "applied the doctrine sparingly," *Apple Inc.*, 658 [***1440] F.3d at 1157, copyright misuse is a valid defense, "the contours of which are still being defined," *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 941 (9th Cir. 2010).
>
> * * *
>
> Lastly, because ***copyright misuse is an equitable defense to an infringement action***, the core of our inquiry is whether "[e]quity may rightly withhold its assistance from such a use of the [copyright] by declining to entertain a suit for infringement . . . ***until . . . the improper practice has been abandoned and [the] consequences of the misuse of the [copyright] have been dissipated***." [**23] *Morton Salt Co. v. Suppiger Co.*, 314 U.S. 488, 493, 62 S. Ct. 402, 86 L. Ed. 363, 1942 Dec. Comm'r Pat. 733 [***1441] (1942), *abrogated on other grounds by Ill. Tool Works, Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 126 S. Ct. 1281, 164 L. Ed. 2d 26 (2006).n6 If Omega was using its copyright in a manner contrary to public policy, ***we, as a court of equity, may refuse to aid such misuse***. See Lasercomb, 911 F.2d at 975-76.

*Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1157-1158 (9th Cir. Cal. Sept. 28, 2011) (emphasis added)

> ***Copyright misuse is a judicially crafted affirmative defense to copyright infringement***, derived from the long-standing existence of such a defense in patent litigation. The patent misuse defense was originally recognized by the Supreme Court in 1942, in holding that the owner of the patent on a salt tablet machine could not require licensees to use only unpatented salt

tablets sold by the patent owner. *Morton Salt Co. v. G.S. Suppiger Co.*, 314 U.S. 488, 62 S. Ct. 402, 86 L. Ed. 363, 1942 Dec. Comm'r Pat. 733 (1942). The Court held that this improper tying of a patented product and an unpatented product constituted misuse, and prohibited the patent holder from maintaining infringement actions until the [***1344] patent holder ceased misuse of the patent. Id. at 493, 62 S. Ct. 402, 86 L. Ed. 363, 1942 Dec. Comm'r Pat. 733 ("Where the patent is used as a means of restraining competition with the patentee's sale of an unpatented product . . . [e]quity may rightly withhold its assistance from such a use of the patent by declining to entertain a suit for infringement [until] the [**17] improper practice has been abandoned and [the] consequences of the misuse of the patent have been dissipated.").

In 1990, the Fourth Circuit became the first federal circuit to extend the misuse rationale to copyrights. *See Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 972 (4th Cir. 1990). In *Lasercomb*, a software manufacturer required its customers to agree to a licensing agreement that barred the licensee from creating any competing software. Id. at 978 ("Each time Lasercomb sells its Interact program to a company . . . the company is required to forego utilization of the creative abilities of all its officers, directors and employees in the area of CAD/CAM die-making software."). Drawing on patent misuse jurisprudence, the Fourth Circuit concluded that Lasercomb's licensing agreement was an "egregious" anticompetitive restraint, which amounted to copyright misuse. Id. at 979. It was aimed at preventing the creation of competing software.

Subsequently, our court recognized the existence of a copyright misuse doctrine. *See, e.g., Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1090 (9th Cir. 2005); *Practice Mgmt. Info. Corp. v. AMA*, 121 F.3d 516, 521 (9th Cir. 1997), amended [**18] by 133 F.3d 1140 (9th Cir. 1998). In *Altera*, we made it clear that the defense is not a defense to state law claims, and in *A & N Records v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001), we rejected the applicability of the defense on the merits, upholding, in the circumstances of that case, the district court's conclusion that there was actionable copyright infringement.

***We have thus applied the doctrine sparingly***. The doctrine did not apply in *Altera* when there had been no allegation of copyright infringement. 424 F.3d at 1090. In *Napster*, we observed that the plaintiffs who sought to enjoin unlicensed use of copyrighted works were entitled to do so because they were not seeking to extend a copyright monopoly to other products or

works. We described the purpose of the defense as preventing holders of copyrights "from leveraging their limited monopoly to allow them control of areas outside the monopoly." *Napster*, 239 F.3d at 1026.

Our decision in *Practice Management* is the only case in which we upheld a copyright misuse defense. We did so because the copyright licensor in that case prevented the licensee from using any other competing product. 121 F.3d at 520-21. In Practice Management, [**19] a publisher and distributor of medical books was using a coding system developed by the American [*1158] Medical Association ("AMA") to enable physicians and others to identify particular medical procedures with precision. Id. Practice Management sued the AMA for a declaratory judgment that the AMA's copyright in its coding system, the Physician's Current Procedural Terminology ("CPT"), was not valid. Id. at 518. The CPT had become an industry standard, and the AMA had a licensing agreement that allowed the Health Care Financing Administration ("HCFA") to use the AMA system. The agreement provided, however, that HCFA use only the AMA system. Id. at 520-21 (the agreement required "HCFA to use the AMA's copyrighted coding system and prohibit[ed] HCFA from using any other.").

We held this was copyright misuse, because the AMA was not entitled to use the license agreement to prevent the use of all competitor's products. Id. at 521 ("Conditioning the license on HCFA's promise not to use competitors' products constituted a misuse of the copyright by the AMA."). In recognizing clear abuse of the copyright, we observed that the AMA's misuse was its limitation on the HCFA's right to decide whether or [**20] not to use other systems as well. It was not necessary to decide whether the limitation, in the antitrust context, would have been reasonable or not. We said that HN7"a defendant in a copyright infringement suit need not prove an antitrust violation to prevail on a copyright misuse defense." Id. (citing Lasercomb, 911 F.2d at 978).

**PLAINTIFF'S OBJECTIONS AND RATIONALE RE: DISPUTED INSTRUCTION NO. 17.24P (COPYRIGHT—AFFIRMATIVE DEFENSE—COPYRIGHT MISUSE)**

1. The equitable defense of copyright misuse is determined by the court, not the jury. *See Granite States Ins. Co.*, 76 F.3d at 1027.

2. In the event the jury can determine the equitable defense of copyright misuse, plaintiff's instruction tracks Ninth Circuit law cited above.

> The copyright misuse equitable defense may be applied when a defendant can prove either: (1) a violation of the antitrust laws; (2) that the copyright owner otherwise illegally extended its monopoly; or (3) that the copyright owner violated the public policies underlying the copyright laws.
>
> The copyright misuse equitable defense applies where a copyright licensor prevented its licensee from using any other competing product.

*See Omega S.A.*, 776 F.3d at 699-700 (Wardlaw, Concurring). In contrast, defendant's instruction states:

> Copyright misuse occurs when a copyright holder attempts to use its copyright in an expression of an idea to control or prevent other expressions of that idea. A copyright may not be used improperly to inhibit another person's freedom of expression. An improper use of copyright can arise when a party wrongfully claims copyright protection that it does not have by misrepresenting the scope and content of its alleged copyrights. No party can use the limited grant that a copyright confers to gain control over elements of expression over which it has no rights.

3. Plaintiff's instruction accurately states the law that copyright misuse provides an equitable basis for a court not to entertain a copyright infringement lawsuit while the misuse is still occurring:

> When the copyright misuse equitable defense applies, the court may decline to entertain a lawsuit for copyright infringement on a work ***until the improper practice has been abandoned and the consequences of the misuse of the copyright have been dissipated.***

*See Omega S.A.*, 776 F.3d at 699-700 (Wardlaw, Concurring)

In contrast, defendant's instruction states:

> If you find that the defendants have proven by a preponderance of the evidence that the ***plaintiff attempted*** to claim a copyright in elements of its artworks that the author itself copied from others in order to exercise control over elements of expression in the defendants' works, then you must find that Plaintiff engaged in copyright misuse, and ***must find against Plaintiff and in favor of the Defendants on the claim for copyright infringement***.

**DEFENDANT'S DISPUTED INSTRUCTION NO. 17.24D (COPYRIGHT MISUSE)**

The defendants also assert as an affirmative defense that the plaintiff has misused its copyrights. Copyright misuse occurs when a copyright holder attempts to use its copyright in an expression of an idea to control or prevent other expressions of that idea. A copyright may not be used improperly to inhibit another person's freedom of expression. An improper use of copyright can arise when a party wrongfully claims copyright protection that it does not have by misrepresenting the scope and content of its alleged copyrights. No party can use the limited grant that a copyright confers to gain control over elements of expression over which it has no rights.

If you find that the defendants have proven by a preponderance of the evidence that the plaintiff attempted to claim a copyright in elements of its artworks that the author itself copied from others in order to exercise control over elements of expression in the defendants' works, then you must find that Plaintiff engaged in copyright misuse, and must find against Plaintiff and in favor of the Defendants on the claim for copyright infringement.

**DEFENDANT'S CITATIONS RE: DISPUTED INSTRUCTION NO. 17.24D (COPYRIGHT MISUSE)**

MJI § 17.24; *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1157 (9th Cir. 2011); *Omega S.A. v. Costco Wholesale Corp.*, 776 F.3d 692, 700 (9th Cir. 2015)

**DEFENDANT'S OBJECTIONS AND RATIONALE RE: DISPUTED INSTRUCTION NO. 17.24D (COPYRIGHT MISUSE)**

Plaintiff's version of the proposed instruction contains numerous statements regarding additional elements (*e.g.*, antitrust law, preventing the use of competing products) that are not being raised by Zazzle.

Defendant's version accurately recounts Ninth Circuit law on copyright misuse.

Copyright misuse occurs when a copyright holder attempts to use its copyright in an expression of an idea to control or prevent other expressions of that idea. *See, e.g.*, *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1157 (9th Cir. 2011); *Omega S.A. v. Costco Wholesale Corp.*, 776 F.3d 692, 700 (9th Cir. 2015). While the doctrine is applied "sparingly," the Ninth Circuit has unambiguously "described the purpose of the defense as preventing holders of copyrights 'from leveraging their limited monopoly to allow them control of areas outside the monopoly.'" *Apple, Inc.*, 658 F.3d at 1157 (citing *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir.2001).) The defense is often applied when a defendant can prove either: (1) a violation of the antitrust laws; (2) that the copyright owner otherwise illegally extended its monopoly; or (3) that the copyright owner violated the public policies underlying the copyright laws. *Omega, S.A.*, 776 F.3d at 700 (Wardlaw, J., concurring) (citing *Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 65 (1st Cir.2012).) Defendant's instruction accurately states the law and should be used.

**PLAINTIFF'S DISPUTED INSTRUCTION NO. 17.24A-P (COPYRIGHT—AFFIRMATIVE DEFENSE—UNCLEAN HANDS)**

Defendant asserts the equitable defense of unclean hands.

To establish unclean hands, a defendant must demonstrate (1) inequitable conduct by the plaintiff; (2) that the plaintiff's conduct directly relates to the claim which it has asserted against the defendant; and (3) plaintiff's conduct injured the defendant.

The unclean hands defense forbids the use of the copyright to secure an exclusive right or limited monopoly not granted by the Copyright Office and which is contrary to public policy to grant. In the rare instances where courts have recognized the unclean hands defense as potentially viable, the transgression has involved misuse of the process of the courts, fraud in the procurement of the right asserted, misrepresentations to the court and opposing party about the nature of the right, or obtaining information regarding the defendant's work through unfair means.

Plaintiff's misconduct must be related directly to the subject matter of plaintiff's claim of copyright infringement and of such serious proportions that it would be unfair to allow plaintiff to prevail on its claim of copyright infringement. If that is established by defendant, then plaintiff is barred from claiming copyright infringement.

**PLAINTIFF'S CITATIONS RE: DISPUTED INSTRUCTION NO. 17.24A-P (COPYRIGHT—AFFIRMATIVE DEFENSE—UNCLEAN HANDS)**

**Attribution:** None

**Plaintiff's Citations**:

*Granite States Ins. Co. v. Smart Modular Techs.*, 76 F.3d 1023, 1027 (9th Cir. Cal. Feb. 14, 1996)

> ***A litigant is not entitled to have a jury resolve a disputed affirmative defense if the defense is equitable in nature***. *Adams*, 876 F.2d at 709. A defense is equitable in nature if it could have been asserted in a court of equity, or in a court of law after the passage of the Law and Equity Act of 1915. n5 5 James W. Moore, *Moore's Federal Practice* Par. 38.11[6] (2d ed. 1995); *see also Adams*, 876 F.2d at 709; *In re U.S. Fin. Sec. Litig., 6*09 F.2d 411, 422 (9th Cir. 1979), cert. [**9] denied, 446 U.S. 929 (1980); *Liberty Oil Co. v. Condon Nat'l Bank*, 260 U.S. 235, 242-43, 67 L. Ed. 232, 43 S. Ct. 118 (1922).

*Taylor Holland LLC v. MVMT Watches, Inc.*, 2016 U.S. Dist. LEXIS 187379, 24-25 (C.D. Cal. Aug. 11, 2016) (emphasis added)

> The Ninth Circuit has approved of the application of the doctrine of unclean hands as a defense to a copyright infringement claim. See *Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors*, 786 F.2d 1400, 1408 (9th Cir. 1986) (unclean hands by virtue of copyright misuse). ***"To establish unclean hands, a defendant must demonstrate (1) inequitable conduct by the plaintiff; (2) that the plaintiffs conduct directly relates to the claim which it has asserted against the defendant; and (3) plaintiffs conduct injured the defendant."***n21 *Survivor Prods. LLC v. Fox Broad. Co.*, No. CV01-3234 LGB (SHX), 2001 U.S. Dist. LEXIS 25511, 2001 WL 35829270, at *3 (C.D. Cal. June 12, 2001); *see also Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987) ("To prevail, the defendant must demonstrate that the plaintiffs conduct is inequitable and that the conduct relates to the subject matter of its claims.").
>
> FOOTNOTES

n21 "As Professor Nimmer has written, the defense of illegality or unclean hands is 'recognized only rarely, when the plaintiffs transgression is of serious proportions and relates directly to the subject matter of the infringement action. For instance, the defense has been recognized when plaintiff misused the process of the courts by falsifying a court order or evidence, or by misrepresenting the scope of his copyright to the court and opposing party.'" Dream Games of Arizona, Inc. v. PC Onsite, 561 F.3d 983, 990-91 (9th Cir. 2009) (quoting Nimmer on Copyright § 13.09[B]).

2. Application

The Court finds that Defendant's unclean hands defense [*25] fails as a matter of law. "The application of the unclean hands doctrine raises primarily a question of fact." *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989). But that does not mean that MVMT can use any type of inequitable conduct to raise an unclean hands defense. "***In applying the doctrine, '[w]hat is material is not that the plaintiffs hands are dirty, but that he dirtied them in acquiring the right he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the defendants***.'" *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir. 1985) (*quoting Republic Molding Corp. v. B. W. Photo Utilities*, 319 F.2d 347, 349 (9th Cir. 1963)). "Factual similarity between the misconduct that forms the basis for an unclean hands defense and the plaintiffs allegations in the lawsuit is not sufficient." *Pom Wonderful LLC v. Welch Foods, Inc.*, 737 F. Supp. 2d 1105, 1110 (C.D. Cal. 2010).

**PLAINTIFF'S OBJECTIONS AND RATIONALE RE: DISPUTED INSTRUCTION NO. 17.24A-P (COPYRIGHT—AFFIRMATIVE DEFENSE—UNCLEAN HANDS)**

1. The equitable defense of unclean hands is determined by the court, not the jury. *See Granite States Ins. Co.*, 76 F.3d at 1027.

2. In the event the jury can determine the equitable defense of unclean hands plaintiff's instruction tracks Ninth Circuit law cited above.

> To establish unclean hands, a defendant must demonstrate (1) inequitable conduct by the plaintiff; (2) that the plaintiff's conduct directly relates to the claim which it has asserted against the defendant; and (3) plaintiff's conduct injured the defendant.
>
> The unclean hands defense forbids the use of the copyright to secure an exclusive right or limited monopoly not granted by the Copyright Office and which is contrary to public policy to grant. In the rare instances where courts have recognized the unclean hands defense as potentially viable, the transgression has involved misuse of the process of the courts, fraud in the procurement of the right asserted, misrepresentations to the court and opposing party about the nature of the right, or obtaining information regarding the defendant's work through unfair means.
>
> Plaintiff's misconduct must be related directly to the subject matter of plaintiff's claim of copyright infringement and of such serious proportions that it would be unfair to allow plaintiff to prevail on its claim of copyright infringement. If that is established by defendant, then plaintiff is barred from claiming copyright infringement.

*See Taylor Holland LLC v. MVMT Watches, Inc.*, 2016 U.S. Dist. LEXIS 187379, 24-25 (C.D. Cal. Aug. 11, 2016) In contrast, defendant's instruction incompletely provides:

> Defendant claims as a defense that plaintiffs' misconduct precludes its claim under the legal doctrine called unclean hands. To establish this defense, defendant must prove that plaintiffs' conduct was seriously inequitable in light of plaintiffs' claims and resulted in prejudice to defendant.

**DEFENDANT'S DISPUTED INSTRUCTION §17.24A-D (COPYRIGHT – AFFIRMATIVE DEFENSE –UNCLEAN HANDS)**

Defendant claims as a defense that plaintiffs' misconduct precludes its claim under the legal doctrine called unclean hands. To establish this defense, defendant must prove that plaintiffs' conduct was seriously inequitable in light of plaintiffs' claims and resulted in prejudice to defendant.

Plaintiffs' misconduct must be related directly to the subject matter of plaintiffs' claim of copyright infringement and of such serious proportions that it would be unfair to allow plaintiffs to prevail on its claim of copyright infringement. If that is established by defendant, then plaintiffs are barred from claiming copyright infringement.

**DEFENDANT'S CITATIONS RE: DISPUTED INSTRUCTION NO. 17.24A-D (COPYRIGHT – AFFIRMATIVE DEFENSE –UNCLEAN HANDS)**

No model instruction exists for this defense. Citations: *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 990-991 (9th Cir. 2009) ; 4 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 13.09[B] (2008); *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 909 (9th Cir. 2003); *Los Angeles News Serv. v. Tullo*, 973 F.2d 791, 799 (9th Cir. 1992); *Broad. Music v. Hearst/ABC Viacom Ent. Servs.*, 746 F. Supp. 320 (S.D.N.Y. 1990)

**DEFENDANT'S OBJECTIONS AND RATIONALE RE: DISPUTED INSTRUCTION NO. 17.24A-D (COPYRIGHT – AFFIRMATIVE DEFENSE – UNCLEAN HANDS)**

Plaintiff's instruction raises various aspects of the doctrine that are not being raised by the Defendant and are not applicable to this case.

Defendant's instruction accurately states the applicable law. The defense of unclean hands bars claims for copyright infringement "when the Plaintiff's transgression is of serious proportions and relates directly to the subject matter of the infringement action." *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 990-991 (9th Cir. 2009) (quoting 4 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 13.09[B] (2008)). To prevail on an unclean hands defense, a defendant in a copyright infringement action must demonstrate that (1) the plaintiff's conduct is inequitable and (2) the conduct relates to the subject matter of its claims. *See Brother Records, Inc. v. Jardine*, 318 F.3d 900, 909 (9th Cir. 2003). "The application of the unclean hands doctrine raises primarily a question of fact." *Los Angeles News Serv. v. Tullo*, 973 F.2d 791, 799 (9th Cir. 1992) (internal citation omitted). "To establish this defense, Defendant must show that Plaintiffs acted so improperly with respect to the controversy at bar that the public interest in punishing the plaintiff outweighs the need to prevent defendant's tortious conduct." *Broad. Music v. Hearst/ABC Viacom Ent. Servs.*, 746 F. Supp. 320 (S.D.N.Y. 1990) (citing *Playboy Enter., Inc. v. Chuckleberry Publ'g*, 486 F. Supp. 414, 435 (S.D.N.Y. 1980)). Here, Plaintiff itself has arguably infringed on third-party trademarks and copyrights, as well as rights of publicity. Plaintiff has "unclean hands" with respect to some or all of the copyrights at issue and should be denied recovery as to such copyrights.

**PLAINTIFF'S DISPUTED INSTRUCTION NO. 17.30P (COPYRIGHT—AFFIRMATIVE DEFENSE—LIMITATION ON LIABILITY FOR INFORMATION RESIDING ON SYSTEMS OR NETWORKS AT DIRECTION OF USERS (17 U.S.C. § 512(c))**

Defendant is entitled to assert an affirmative defense under the Digital Millennium Copyright Act ("DMCA") with respect to only the following four works of plaintiff:

1. CS45 Waikiki Beach [Trial Ex. 54-10]
2. CS77 Visit Santa Monica [Trial Ex. 54-25]
3. CS88 Greetings from Waikiki [Trial Ex. 294]
4. SP6 Ginger [Trial Ex. 291]

The defendant has the burden of proving each element of this defense by a preponderance of the evidence. The defendant is eligible to use this defense if the defendant proves that it:

1. Adopted, reasonably implemented and informed users of a policy to terminate users who are repeat copyright infringers;
2. Accommodated and did not interfere with standard technical measures used to identify or protect copyrighted works (such as copyright management information image metadata as explained below);
3. Prior to posting the image displayed on defendant's www.zazzle.com website, defendant did not perform any manual, substantive review process that went beyond the automatic processes that enhance accessibility of the image.
4. Designated an agent to receive notifications of claimed infringement, and made the agent's name, phone number and email address available on its website and to the Copyright Office;

5. Defendant did not have actual knowledge that its display of any of those four works on its www.zazzle.com website was infringing;

6. Defendant was not aware of facts or circumstances from which its infringing display on www.zazzle.com was apparent; or (upon obtaining such knowledge or awareness, acted expeditiously to remove, or disable access to, those four works.

7. does not receive a financial benefit directly attributable to the infringing activity, in a case in which defendant has the right and ability to control such activity.

Copyright management information image metadata means any of the following information stored in EXIF or IPTC metadata fields defined to hold content for any of the following information:

(a) The title and other information identifying the work, including the information set forth on a notice of copyright.

(b) The name of, and other identifying information about, the author of a work.

(c) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.

(d) Terms and conditions for use of the work.

(e) Identifying numbers or symbols referring to such information or links to such information.

EXIF and IPTC image metadata fields and content are not visible on the electronic image itself. Rather, EXIF and IPTC image metadata fields and content are viewable through software designed for display those metadata fields and content. For instance, the copyright management information metadata fields “Authors” “Title” and “Copyright” can be viewed by viewing the Properties of the image file on Windows Explorer.

If you find the defendant has proved all of these elements, then you may not award any monetary relief to plaintiff for any of the four works identified above. If, on

the other hand, you find that the defendant has failed to prove any of these elements, the defendant is not entitled to prevail on this affirmative defense, and you may award monetary relief for the four works identified above.

**PLAINTIFF'S CITATIONS RE: DISPUTED INSTRUCTION NO. 17.30P (COPYRIGHT—AFFIRMATIVE DEFENSE—LIMITATION ON LIABILITY FOR INFORMATION RESIDING ON SYSTEMS OR NETWORKS AT DIRECTION OF USERS (17 U.S.C. § 512(c))**

**Attribution:** 9th Circuit Manual of Model Jury Instructions, Instruction 17.30

**Plaintiff's Citations**:

17 U.S.C. §512(i)

(i) Conditions for eligibility.

(1) Accommodation of technology. The limitations on liability established by this section shall apply to a service provider only if the service provider--

(A) has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers; and

(B) accommodates and does not interfere with standard technical measures.

(2) Definition. As used in this subsection, the term "standard technical measures" means technical measures that are used by copyright owners to identify or protect copyrighted works and--

(A) have been developed pursuant to a broad consensus of copyright owners and service providers in an open, fair, voluntary, multi-industry standards process;

(B) are available to any person on reasonable and nondiscriminatory terms; and

(C) do not impose substantial costs on service providers or substantial burdens on their systems or networks.

17 U.S.C. §1202(c):

As used in this section, the term "copyright management information" means any of the following information conveyed in connection with copies . . . of a work or . . . displays of a work, including in digital form, . . .:

(1) The title and other information identifying the work, including the information set forth on a notice of copyright.

(2) The name of, and other identifying information about, the author of a work.

(3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.

* * *

(6) Terms and conditions for use of the work.

(7) Identifying numbers or symbols referring to such information or links to such information.

*Propet USA, Inc. v. Shugart*, 2007 U.S. Dist. LEXIS 94635, 12-13 (W.D. Wash. Dec. 13, 2007) (jury verdict upheld where defendant removed CMI in image metadata);

17 U.S.C. §512(c)

(c) Information residing on systems or networks at direction of users.

(1) In general. A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider, if the service provider--

(A) (i) does not have actual knowledge that the material or an activity using the material on the system or network is infringing;

(ii) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or

(iii) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;

(B) does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and

(C) upon notification of claimed infringement as described in paragraph (3), responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity.

**PLAINTIFF'S OBJECTIONS AND RATIONALE RE: DISPUTED INSTRUCTION NO. 17.30P (COPYRIGHT—AFFIRMATIVE DEFENSE—LIMITATION ON LIABILITY FOR INFORMATION RESIDING ON SYSTEMS OR NETWORKS AT DIRECTION OF USERS (17 U.S.C. § 512(c))**

1. The court held that Zazzle is a service provider. [ECF 81 (SJ Order)] There is no reason to use that term. Defendant's instruction below is not necessary:

> The defendant contends that the defendant is a ***service provider*** and therefore is not liable for copyright infringement for its public display on its www.zazzle.com website because the infringement was caused by information residing on the defendant's systems or networks at the direction of users

2. With respect to the §512(i) conditions of eligibility, plaintiff's instruction provides context regarding "standard technical measures":

> Accommodated and did not interfere with standard technical measures used to identify or protect copyrighted works (such as copyright management information image metadata as explained below).
>
> * * *
>
> Copyright management information image metadata means any of the following information stored in EXIF or IPTC metadata fields defined to hold content for any of the following information:
>
> (a) The title and other information identifying the work, including the information set forth on a notice of copyright.
>
> (b) The name of, and other identifying information about, the author of a work.
>
> (c) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.
>
> (d) Terms and conditions for use of the work.
>
> (e) Identifying numbers or symbols referring to such information or links to such information.

> EXIF and IPTC image metadata fields and content are not visible on the electronic image itself. Rather, EXIF and IPTC image metadata fields and content are viewable through software designed for display those metadata fields and content. For instance, the copyright management information metadata fields "Authors" "Title" and "Copyright" can be viewed by viewing the Properties of the image file on Windows Explorer.

In contrast, defendant's instruction provides no guidance for the jury:

> accommodated and did not interfere with standard technical measures used to identify or protect copyrighted works

3. Plaintiff's instruction incorporates the copyright infringement liability (*i.e.* display*)* in connection with the elements of §512(c):

> 4. Defendant did not have actual knowledge that ***its display of any of those four works on its www.zazzle.com website*** was infringing;
>
> 5. Defendant was not aware of facts or circumstances from which its ***infringing display*** on www.zazzle.com was apparent; or (upon obtaining such knowledge or awareness, acted expeditiously to remove, or disable access to, those four works.
>
> 6. does not receive a financial benefit directly attributable to the infringing activity, in a case in which defendant has the right and ability to control such activity."

In contrast, defendant's instruction elements makes no reference that it is limited to the infringing display for this defense.

> Is facing ***liability for infringement*** of copyright based on information residing on the defendant's systems or networks at the direction of its users.
> This defense applies if the defendant:
> 1. lacked actual knowledge that the material or ***an activity using the material on the system or network was infringing***;
> 2. was either (a) not aware of facts or circumstances from which ***infringing activity is apparent***; or (b) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;

> 3. does not receive a financial benefit directly attributable to the ***infringing activity***, in a case in which defendant has the right and ability to control such activity.

4. Plaintiff's instruction makes clear that if the DMCA defense is not established, then monetary relief may be awarded:

> If, on the other hand, you find that the defendant has failed to prove any of these elements, the defendant is not entitled to prevail on this affirmative defense, and ***you may award monetary relief for the four works identified above.***

In contrast, defendant's instruction states:

> If, on the other hand, you find that the defendant has failed to prove any of these elements***, the defendant is not entitled to prevail on this affirmative defense.***

**DEFENDANT'S DISPUTED INSTRUCTION NO. 17.30D (COPYRIGHT—AFFIRMATIVE DEFENSE—LIMITATION ON LIABILITY FOR INFORMATION RESIDING ON SYSTEMS OR NETWORKS AT DIRECTION OF USERS )**

The defendant contends that the defendant is a service provider and therefore is not liable for copyright infringement for its public display on its www.zazzle.com website because the infringement was caused by information residing on the defendant's systems or networks at the direction of users.

The defense can apply to Zazzle's display of images on its website. Pursuant to earlier court rulings, the defense cannot apply to Zazzle's manufacture or distribution of physical products. Thus, the following works are at issue:

1. CS45 Waikiki
2. CS77 Santa Monica
3. AL5 Aloha
4. SP6 Ginger

The defendant has the burden of proving each element of this defense by a preponderance of the evidence.

The defendant is eligible to use this defense if the defendant also proves that it:

1. adopted, reasonably implemented and informed users of a policy to terminate users who are repeat copyright infringers;
2. accommodated and did not interfere with standard technical measures used to identify or protect copyrighted works;
3. designated an agent to receive notifications of claimed infringement, and made the agent's name, phone number and email address available on its website and to the Copyright Office; and
4. Is facing liability for infringement of copyright based on information residing on the defendant's systems or networks at the direction of its users.

This defense applies if the defendant:

1. lacked actual knowledge that the material or an activity using the material on the system or network was infringing;
2. was either (a) not aware of facts or circumstances from which infringing activity is apparent; or (b) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;
3. does not receive a financial benefit directly attributable to the infringing activity, in a case in which defendant has the right and ability to control such activity.

There are a number of works at issue in this action. As explained below, you may award a range of damages for each work. If you find defendant has proved all of these elements, then you may not award any monetary relief to plaintiff for the four (4) works at issue for this defense. If, on the other hand, you find that the defendant has failed to prove any of these elements, the defendant is not entitled to prevail on this affirmative defense.

**DEFENDANT'S CITATIONS RE: DISPUTED INSTRUCTION NO. 17.30D (COPYRIGHT—AFFIRMATIVE DEFENSE—LIMITATION ON LIABILITY FOR INFORMATION RESIDING ON SYSTEMS OR NETWORKS AT DIRECTION OF USERS)**

MJI § 17.30; 17 U.S.C. § 512.

**DEFENDANT'S OBJECTIONS AND RATIONALE RE: DISPUTED INSTRUCTION NO. 17.30D (COPYRIGHT—AFFIRMATIVE DEFENSE—LIMITATION ON LIABILITY FOR INFORMATION RESIDING ON SYSTEMS OR NETWORKS AT DIRECTION OF USERS** )

Zazzle's version of the instruction better comports with the Court's ruling on summary judgment and will simplify and clarify the issues for the jury.

Plaintiff's version departs from the model instructions in a number of ways. It combines the "eligibility for the defense," found in 17 U.S.C. § 512(i), with the elements of the defense, found in 17 U.S.C. § 512(c). Defendant's version, consistent with the model instructions, splits them apart, making the requirements clearer and easier for the jury to grasp.

As to Plaintiff's element (2), the commentary about metadata (including the paragraphs of Plaintiff's instruction following the elements) consists of, in effect, expert opinion or testimony that has no place in a jury instruction. This part of the instruction has no documentary or testimonial support anywhere in the record. In effect, Plaintiff seeks to improperly gain the benefits of expert testimony regarding copyright management information without having designated lay or expert witness who could plausibly testify on the subject. It is completely inappropriate for a jury instruction.

As to Plaintiff's element (3) ("Prior to posting…"), it is found nowhere in the model instructions or in the statute. It is, in effect, an attempt to re-litigate the Court's summary judgment ruling. On summary judgment, Plaintiff argued that Zazzle taking various actions with respect to the images uploaded onto its website meant that it was not a "service provider." *See* Dkt. 50-1 at 12-18 (arguing service providers must play a "passive and/or automatic role"). The Court firmly rejected that argument. *See* Dkt. 81 at 7-8 ("There is nothing in the statutory text or in Ninth Circuit precedent that suggests an entity must be primarily engaged in providing online services to benefit from § 512(c)'s safe harbor. The Court will not impose such a requirement by implication.").

On the remaining elements, Defendant's proposal tracks the model instructions.

**PLAINTIFF'S DISPUTED INSTRUCTION NO. 17.35P (COPYRIGHT—DAMAGES—STATUTORY DAMAGES (17 U.S.C. § 504(c))**

If you find for the plaintiff on the plaintiff's copyright infringement claims, you must determine the plaintiff's damages. The plaintiff seeks a statutory damage award, established by Congress for each work infringed. Its purpose is not only to compensate the plaintiff for its losses, which may be hard to prove, but also to penalize the infringer and deter future violations of the copyright laws.

The range of statutory damages depends on the type of infringement.

For willful infringement of a work, you must award between $750 and $150,000 for that work.

For non-willful infringement of a work, you must award between $750 and $30,000 for that work.

For innocent infringement of a work, you must award between $200 and $30,000 for that work.

Instructions 17.36 and 17.37 will tell you what constitutes innocent infringement and what constitutes willful infringement.

You have wide discretion in determining the amount of statutory damages, constrained by the statutory minimum and maximum. Because statutory damages serve both compensatory and punitive purposes, plaintiff can recover statutory damages whether or not there is adequate evidence of the actual damage suffered by plaintiff or the profits reaped by the defendant. There is no required nexus between the amount of statutory damages awarded and any damages suffered by plaintiff or any profits reaped by defendant.

The following is a non-exclusive list of factors relevant to the amount of a statutory damages award within those ranges:

1. The circumstances of the infringement.
2. The total number of infringements involved in this action.

3. Whether defendant is in the business of manufacturing, selling and/or distributing copyrighted works the expenses saved and profits reaped by the defendant in connection with the infringements;
4. The revenues lost by the plaintiff as a result of the defendant's conduct;
5. The infringer's state of mind—whether willful, knowing, or merely innocent
6. The value of the copyright;
7. The deterrent effect on others besides the defendant;
8. Whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and
9. The potential for deterring the defendant.

**PLAINTIFF'S CITATIONS RE: DISPUTED INSTRUCTION NO. 17.35P (COPYRIGHT—DAMAGES—STATUTORY DAMAGES (17 U.S.C. § 504(c))**

**Attribution:** 9th Circuit Manual of Model Jury Instructions, Instruction 17.35

**Plaintiff's Citations**:

*Beastie Boys v. Monster Energy Co.*, 66 F. Supp. 3d 424, 433 (S.D.N.Y. Dec. 4, 2014)

> The Copyright Act authorizes statutory ***damages between $750 and $150,000 for willful infringement;*** between ***$200 and $30,000 for innocent infringement***; and between ***$750 and $30,000 for "regular" infringement***. See 17 U.S.C. §§ 504(c)(1)-(2)

**PLAINTIFF'S OBJECTIONS AND RATIONALE RE: DISPUTED INSTRUCTION NO. 17.35P (COPYRIGHT—DAMAGES—STATUTORY DAMAGES (17 U.S.C. § 504(c))**

1. Plaintiff's instruction makes clear for the jury what the different statutory damages ranges are:

> The range of statutory damages depends on the type of infringement.
>
> For willful infringement of a work, you must award between $750 and $150,000 for that work.
>
> For non-willful infringement of a work, you must award between $750 and $30,000 for that work.
>
> For innocent infringement of a work, you must award between $200 and $30,000 for that work."

*See Beastie Boys*, 66 F. Supp. 3d at 433. In contrast, defendant's instruction may confuse the jury regarding the ranges:

> The range of statutory damages depends on the type of infringement. The amount you may award as statutory damages is not less than $750, nor more than $30,000, for each work you conclude was infringed. ***However, if you find the infringement was innocent, you may award as little as $200 for each work*** you conclude was infringed. If you find the infringement was willful, ***you may award as much as $150,000 for each work willfully infringed.***

2. Plaintiff's instruction contains important law regarding the amount of statutory damages is not dependent or even related to plaintiff's damages or defendant's profits:

> You have wide discretion in determining the amount of statutory damages, constrained by the statutory minimum and maximum. Because statutory damages serve both compensatory and punitive purposes, ***plaintiff can recover statutory damages whether or not there is adequate evidence of the actual damage suffered by plaintiff or the profit3. s reaped by the defendant. There is no required nexus between the amount of statutory***

***damages awarded and any damages suffered by plaintiff or any profits reaped by defendant.***

"There is no required nexus between actual and statutory damages under 17 U.S.C. § 504(c)." *New Form, Inc. v. Tekila Films, Inc.*, 357 Fed. Appx. 10, 11-12 (9th Cir. 2009). The Ninth Circuit affirmed a district court's refusal to instruct the jury regarding a nexus between actual and statutory damages because such an instruction "would have been a misstatement of the law." Id. *See also Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 507 (1st Cir. 2011) (following New Form "We join our sister circuits, who have rejected similar objections to jury instructions.")

The comments to Instruction 17.35 state: "Because statutory damages serve both compensatory and punitive purposes, plaintiff can recover statutory damages whether or not there is adequate evidence of the actual damage suffered by plaintiff or the profits reaped by the defendant."

3. Plaintiff's instruction adds as a non-exclusive factor: "1. The circumstances of the infringement." *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) ("the court is to be guided by . . 'the circumstances of the infringement'")

4. Plaintiff's instruction adds as a non-exclusive factor: "2.The total number of infringements involved in this action." *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1337 (9th Cir. 1990) ("Given the number of willful infringements committed . . . we find the court did not abuse its discretion in awarding $ 4 million in statutory damages.)

5. Plaintiff's instruction adds as a non-exclusive factor: "Whether defendants are in the business of manufacturing, selling and/or distributing copyrighted works." *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1337 (9th Cir. 1990) ("Given . . . the fact Pausa is engaged in the business of selling copyrighted works, we find the court did not abuse its discretion in awarding $ 4 million in statutory damages.")

**DEFENDANT'S DISPUTED INSTRUCTION NO. 17.35D (STATUTORY DAMAGES)**

If you find for the plaintiff on the plaintiff's copyright infringement claims, you must determine the plaintiff's damages. The plaintiff seeks a statutory damage award, established by Congress for each work infringed. Its purpose is not only to compensate the plaintiff for its losses, which may be hard to prove, but also to penalize the infringer and deter future violations of the copyright laws.

The range of statutory damages depends on the type of infringement.

The amount you may award as statutory damages is not less than $750, nor more than $30,000, for each work you conclude was infringed.

However, if you find the infringement was innocent, you may award as little as $200 for each work you conclude was infringed.

If you find the infringement was willful, you may award as much as $150,000 for each work willfully infringed.

Instructions 17.36 and 17.37 will tell you what constitutes innocent infringement and what constitutes willful infringement.

You have wide discretion in determining the amount of statutory damages, constrained by the statutory minimum and maximum. In addition to the circumstances of the infringements, the following is a non-exclusive list of factors relevant to the amount of a statutory damages award within those ranges:

1. the expenses saved and profits reaped by the defendant in connection with the infringements;
2. the revenues lost by the plaintiff as a result of the defendant's conduct;
3. the infringer's state of mind—whether willful, knowing, or merely innocent;
4. the value of the copyright;
5. the deterrent effect on others besides the defendant;

6. whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and

7. the potential for discouraging the defendant.

**DEFENDANT'S CITATIONS RE: DISPUTED INSTRUCTION NO. 17.35D (STATUTORY DAMAGES)**

MJI § 17.35; 17 U.S.C. § 504; *Unicolors, Inc. v. Colon Mfg., Inc.*, No. CV 13-5726 SVW, 2014 WL 12600832 (C.D. Cal. Jan. 28, 2014); Peer Int'l Corp. v. Pausa Records, Inc., 909 F.2d 1332(9th Cir. 1990); *Grateful Dead Prods., Inc. v. Auditory Odyssey*, 76 F.3d 386 (9th Cir. 1996); *Brayton Purcell LLP v. Recordon & Recordon*, No. C-04-4995 EMC, 2007 WL 420122(N.D. Cal. Feb. 6, 2007); *Nike, Inc. v. B & B Clothing Co.*, No. CIV S-06-2828GEBDAD, 2007 WL 1515307(E.D. Cal. May 22, 2007)

**DEFENDANT'S OBJECTIONS AND RATIONALE RE: DISPUTED INSTRUCTION NO. 17.35D (STATUTORY DAMAGES)**

Defendant's proposed instruction simply follows the factors recently enumerated by this Court in another case. This Court, in *Unicolors, Inc. v. Colon Mfg., Inc.*, No. CV 13-5726 SVW, 2014 WL 12600832, at *3–4 (C.D. Cal. Jan. 28, 2014), endorsed the following factors as being relevant to the statutory damages determination:

1. the expenses saved and profits reaped by the defendant in connection with the infringements;
2. the revenues lost by the plaintiff as a result of the defendant's conduct;
3. the infringer's state of mind—whether willful, knowing, or merely innocent;
4. the value of the copyright;
5. the deterrent effect on others besides the defendant;
6. whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and
7. the potential for discouraging the defendant.

Plaintiff, instead of adopting this coherent list of factors, added three additional factors: (1) the circumstances of the infringement; (2) the total number of infringements involved in this action; and (3) whether defendant is in the business of manufacturing, selling and/or distributing copyrighted works.

Plaintiff's factor (2), "the total number of infringements involved," which cites *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990), is misleading and not supported by *Peer Int'l Corp*. or the statutory text. 17 U.S.C. § 504(c)(1) states that "an award of statutory damages for all infringements involved in the action, with respect to any one work" may be granted. *See, e.g., Grateful Dead Prods., Inc. v. Auditory Odyssey*, 76 F.3d 386 (9th Cir. 1996). Plaintiff's instruction invites error by conflating the number of statutory works at issue (39) with the number of alleged infringements.

Plaintiff's factor (3), whether the company is "in the business of manufacturing, selling and/or distributing copyrighted works," similarly misreads *Peer Int'l Corp.* In *Peer Int'l Corp.*, that factor was discussed in the context of upholding a large statutory damage award based on a *willfulness* determination. 909 F.2d at 1337 ("Given the number of willful infringements committed by Pausa, the compulsory nature of the licenses, and the fact Pausa is engaged in the business of selling copyrighted works, we find the court did not abuse its discretion….") It did not endorse a company's business model as some sort of stand-alone factor. In any event, the factor is more than adequately addressed by factors (3) and (7), as defendant's state of mind and the potential for deterring the defendant more than adequately address concerns regarding business or its model.

Plaintiff's approach of giving "ranges" of damages for willful and innocent infringement depart from the model instructions. The model instructions are more appropriate, insofar as when a range is given, the natural tendency is to look to the middle of the range.

Plaintiff's suggested language regarding the lack of a "nexus" misstates the law. The Ninth Circuit held the following in an unpublished disposition:

> The district court did not abuse its discretion in declining to adopt Tekila Films's proposed jury instruction that would direct the jury to measure statutory damages in relation to actual damages using the "fair market value" of the infringed works. A statutory damages award within the limits prescribed by Congress is appropriate "[e]ven for uninjurious and unprofitable invasions of copyright." *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233, 73 S.Ct. 222, 97 L.Ed. 276 (1952). We have consistently held and stated that statutory damages are recoverable without regard to the existence or provability of actual damages. *See, e.g., Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir.2001); *L.A. News Serv. v.*

> *Reuters Television Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir.1998); *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1337 (9th Cir.1990). There is no required nexus between actual and statutory damages under 17 U.S.C. § 504(c). Accordingly, the district court did not err in refusing Tekila Films's proposed instruction, which itself would have been a misstatement of the law.

*New Form, Inc. v. Tekila Films, Inc.*, 357 F. App'x 10, 11–12 (9th Cir. 2009). In context, it is clear that the Ninth Circuit was rejecting a jury instruction that *required* a nexus between actual and statutory damages. However, affirmatively instructing a jury that there is "no required nexus" implies that there is no connection at all between the economic realities of the infringement and statutory damages, which also misstates the law.

Plaintiff's language that it need not show its actual damages is superfluous in light of the enumerated "non-exclusive" factors for the jury to consider. It is also misleading in this case, as Zazzle has made detailed sales information available to Plaintiff that Plaintiff, if it so chooses, could use to argue its actual damages.

**PLAINTIFF'S DISPUTED INSTRUCTION NO. 17.37P (COPYRIGHT—DAMAGES—WILLFUL INFRINGEMENT (17 U.S.C. § 504(c)(2))**

An infringement is considered willful when the plaintiff has proved both of the following elements by a preponderance of the evidence:

1. the defendant engaged in acts that infringed the copyright; and
2. the defendant knew that those acts infringed the copyright, or the defendant acted with reckless disregard for, or willful blindness to, the copyright holder's rights.

The following is a non exclusive list of factors relevant to determining whether an infringement was willful:

1. Whether the defendant was in the business of manufacturing, selling and/or distributing copyrighted works at the time of the infringement.
2. Whether defendant had knowledge of copyright laws at the time of the infringement.
3. Whether the defendant did anything to determine if the product was infringing, apart from relying upon the representations of the product's supplier.
4. Whether the defendant had any procedures or policies to prevent the sale of infringing goods at the time of the infringement.
5. Whether the defendant paid prices for the infringing products comparable to those it would have paid for non infringing products.
6. The degree of similarity between the defendant's infringing design and plaintiff's copyrighted design.

**PLAINTIFF'S CITATIONS RE: DISPUTED INSTRUCTION NO. 17.37P (COPYRIGHT—DAMAGES—WILLFUL INFRINGEMENT (17 U.S.C. § 504(c)(2))**

**Attribution:** 9th Circuit Manual of Model Jury Instructions, Instruction 17.30

**Plaintiff's Citations**:

*Segrets, Inc. v. Gillman Knitwear Co.*, 42 F. Supp. 2d 58, 82 (D. Mass. Aug. 12, 1998)

> Turning to the Blanket Stitch design, Gillman's Christie I sweater was an ***exact copy*** of the copyrighted work except for the color. n45 See *Kenbrooke Fabrics, Inc. v. Holland Fabrics, Inc.*, 602 F. Supp. at 155 ("***high degree of similarity between the two designs" served as basis for finding of wilfulness***)

*Kenbrooke Fabrics, Inc. v. Holland Fabrics, Inc.*, 602 F. Supp. 151, 155 (S.D.N.Y. Nov. 20, 1984)

> ***Statutory damages are also appropriate where the copying was willful***. The court finds that the copying in this case was willful. This is based on the ***high degree of similarity between the two designs which could only be attributable to copying. . .***

**PLAINTIFF'S OBJECTIONS AND RATIONALE RE: DISPUTED INSTRUCTION NO. 17.37P (COPYRIGHT—DAMAGES—WILLFUL INFRINGEMENT (17 U.S.C. § 504(c)(2))**

1. Plaintiff's instruction adds the non-exclusive factor: "6. The degree of similarity between the defendant's infringing design and plaintiff's copyrighted design" *Segrets, Inc. v. Gillman Knitwear Co.*, 42 F. Supp. 2d 58, 82 (Dist. Ma. 1988); *Kenbrooke Fabrics, Inc. v. Holland Fabrics, Inc.*, 602 F. Supp. 151, 155 (S.D.N.Y. 1984)

**DEFENDANT'S DISPUTED INSTRUCTION NO. 17.37D (COPYRIGHT—DAMAGES—WILLFUL INFRINGEMENT)**

An infringement is considered willful when the plaintiff has proved both of the following elements by a preponderance of the evidence:

1. the defendant engaged in acts that infringed the copyright; and
2. the defendant knew that those acts infringed the copyright, or the defendant acted with reckless disregard for, or willful blindness to, the copyright holder's rights.

The following is a non exclusive list of factors relevant to determining whether an infringement was willful:

1. Whether the defendant was in the business of manufacturing, selling and/or distributing copyrighted works at the time of the infringement.
2. Whether defendant had knowledge of copyright laws at the time of the infringement.
3. Whether the defendant did anything to determine if the product was infringing, apart from relying upon the representations of the product's supplier.
4. Whether the defendant had any procedures or policies to prevent the sale of infringing goods at the time of the infringement.
5. Whether the defendant paid prices for the infringing products comparable to those it would have paid for non infringing products.

**DEFENDANT'S CITATIONS RE: DISPUTED INSTRUCTION NO. 17.37D (COPYRIGHT—DAMAGES—WILLFUL INFRINGEMENT)**

MJI § 17.37.

**DEFENDANT'S OBJECTIONS AND RATIONALE RE: DISPUTED INSTRUCTION NO. 17.37D (COPYRIGHT—DAMAGES—WILLFUL INFRINGEMENT)**

Defendant merely objects to one of the purported "nonexclusive" elements. Plaintiff's element (6) does not make sense in this case. It might make sense in a case involving "knock-offs" or deliberate attempts to make close copies of original works. Here, where Zazzle was essentially a conduit for what its users uploaded, it makes no sense to examine the similarity between the users' designs and plaintiff's designs in determining whether Zazzle willfully infringed.

Respectfully submitted,

Dated: July 27, 2017

Jeffrey S. Young, Esq.
Jacob P. Ainciart
LAW OFFICES OF JEFFREY S. YOUNG

Jason A. Aquilino,
AQUILINO LAW

/s/ Darren J. Quinn
Darren J. Quinn
LAW OFFICES OF DARREN J. QUINN

Attorneys for Plaintiff
GREG YOUNG PUBLISHING, INC.

Dated: July 27, 2017

/s/ Keith G. Adams
Keith G. Adams, Esq.
MURPHY, PEARSON, BRADLEY & FEENEY
Attorneys for Defendant
ZAZZLE INC.

**Attestation Regarding Signatures**

The undersigned attests that all signatories listed, and on whose behalf this filing is submitted, concur in this filing's content and have authorized its filing.

Dated: July 27, 2017

/s/ Darren J. Quinn
Darren J. Quinn

**CERTIFICATE OF SERVICE**

I certify that all counsel of record is being served on July 27, 2017 with a copy of this document via the Court's CM/ECF system.

*/s/ Darren J. Quinn*
DARREN J. QUINN