LAW OFFICES OF JEFFREY S. YOUNG
JEFFREY S. YOUNG, SBN 172016
jeff@jeffreyyounglaw.com
JACOB P. AINCIART, SBN 313588
ainciart@mac.com
1307 State Street, First Floor
Santa Barbara, CA 93101
Tel: (805) 884-0338

LAW OFFICES OF DARREN J. QUINN
DARREN J. QUINN, SBN 149679
dq@dqlaw.com
12702 Via Cortina, Suite 105
Del Mar, CA  92014
Tel : (858) 509-9401

Additional Counsel Listed on Signature Block

*Attorneys for Plaintiff GREG YOUNG PUBLISHING, INC.*

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| GREG YOUNG PUBLISHING, INC., a corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ZAZZLE, INC., a corporation, and DOES 1 to 10<br><br>Defendants. | Case No. 2:16-cv-04587-SVW-KS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT ZAZZLE INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO F.R.C.P. 50(b) AND/OR FOR AN AMENDED JUDGMENT PURSUANT TO F.R.C.P. 59(e)**<br><br>Judge:     Hon Stephen V. Wilson<br>Date:      October 16, 2017<br>Time:      1:30 p.m.<br>Courtroom: 10A |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................- 1 -

II.     STANDARD OF REVIEW ................................................................................- 3 -

III.    THE COURT SHOULD DENY ZAZZLE'S MOTION BECAUSE THE JURY HAD
        SUBSTANTIAL EVIDENCE TO SUPPORT WILLFUL INFRINGEMENT .....................- 5 -

        A.      Plaintiff Presented Substantial Evidence Of Zazzle's Infringement After Notice Of
                Infringement By Plaintiff ............................................................................- 7 -

        B.      Plaintiff Presented Substantial Evidence On The Non-Exclusive Willfulness
                Factors ......................................................................................................- 9 -

                1.      Zazzle Admitted It Was In The Business Of Manufacturing, Selling
                        And/Or Distributing Copyrighted Works At The Time Of The Infringement ...- 9 -

                2.      Zazzle Admitted It Had Knowledge Of Copyright Laws At The Time Of
                        The Infringement ......................................................................- 10 -

                3.      Zazzle Did Nothing To Determine If The Product Was Infringing, Apart
                        From Relying Upon The Representations Of The Product's Designer ...........- 11 -

                4.      Zazzle's Procedures Or Policies To Prevent The Sale Of Infringing Goods
                        At The Time Of The Infringement Were Ineffective .......................- 13 -

IV.     ZAZZLE'S ARGUMENTS DO NOT ESTABLISH THAT THE JURY AWARDS FOR
        EACH OF THE FIVE WORKS MUST BE REDUCED TO $30,000 ................- 15 -

        A.      The Verdict Form Does Not Require An Affirmative Finding Of Willful ..............- 15 -

        B.      Willful Infringement and Reckless Disregard ...........................................- 16 -

                1.      Zazzle's Purported "Strict No-Infringement Policy" .......................- 18 -

                2.      Zazzle's Purported Requirement That Users "Contractually Warrant That
                        Each Design Was Authorized For Use By Zazzle" .........................- 19 -

                3.      Zazzle's Purportedly "Employing A Large Team To Help Enforce Its No-
                        Infringement Policy" ...............................................................- 20 -

                4.      Zazzle Purportedly "Responding Expeditiously To Every One Of
                        Plaintiff's Takedown Requests" ...............................................- 21 -

                5.      Zazzle Purportedly "Making A Special Effort To Try To Locate And
                        Remove Additional Infringements From Plaintiff's Catalogue" ...............- 22 -

V.      CONCLUSION ...............................................................................................- 23 -

i

1

# TABLE OF AUTHORITIES

2

3  ## CASES

4  *Arista Records LLC v. Myxer Inc.*,

5     2011 WL 11660773, *13  (C.D. Cal. 2011) ................................................. 23

6  *Bailey v. County of Riverside*,
      414 F.3d 1023, 1024 (9th Cir. 2005) ........................................................ 7

7  *Bank of the West v. Valley Nat'l. Bank of Arizona*,

8     41 F.3d 471, 477 (9th Cir. 1994) .............................................................. 7

9  *Chi-Boy Music v. Charlie Club Inc.*,
      930 F.2d 1224, 1227 (7th Cir. 1991) ...................................................... 10

10 *Coach, Inc. v. Celco Customs Services Co.*,

11    2014 WL 12573411 (C.D. Cal. 2014) ........................................................ 8

12 *Dream Games of Ariz., Inc. v. PC Onsite*,
      561 F.3d 983, 992 (9th Cir. 2009) ...................................................... 5, 24

13 *Educ. Testing Serv. v. Simon*,

14    95 F. Supp.2d 1081, 1087 (C.D.Cal.1999) ............................................. 23

15 *El-Hakem v. BJY Inc.*,
      415 F.3d 1068, 1072 (9th Cir. 2005) ........................................................ 7

16
17 *Evergreen Safety Council v. RSA Network, Inc.*,
      697 F.3d 1221, 1228-1229 (9th Cir. 2012) ............................................. 21

18 *Friedman v. Live Nation Merch., Inc.*,

19    833 F.3d 1180, 1186 (9th Cir. 2016) ................................................ *18, 19*

20 *Globefill Incorporated v. Elements Spirits, Inc.*,
      2014 WL 12515336, *1 (C.D. Cal. 2014) ................................................. 7

21 *Hearst Corp. v. Stark*,

22    639 F. Supp. 970, 979 (N.D. Cal. 1986) ................................................. 12

23 *Johnson v. Paradise Valley Unified Sch. Dist.*,
      251 F.3d 1222, 1226 (9th Cir.), cert. denied, 534 U.S. 1055 (2001) .............. 8

24 *Landes Constr. Co. v. Royal Bank of Canada*,

25    833 F.2d 1365, 1371 (9th Cir. 1987) ........................................................ 6

26 *Mangum v. Action Collection Serv., Inc.*,
      575 F.3d 935, 938 (9th Cir. 2009) ............................................................ 6

27 *McLean v. Runyon*,

28    222 F.3d 1150, 1153 (9th Cir. 2000) ........................................................ 6

ii

*Pavao v. Pagay*,
   307 F.3d 915, 918 (9th Cir.2002). ....................................................................... 7

*Peer Int'l Corp. v. Pausa Records, Inc.*,
   909 F.2d 1332, 1336 (9th Cir. 1990) ........................................................ 5, 11, 24

*Playboy Enters. v. Sanfilippo*,
   No. 97-0670-IEG (LSP), 1998 U.S. Dist. LEXIS 5125, at *14 n.9 (S.D. Cal. Mar. 24,
   1998) ................................................................................................................. 15

*Polar Bear Productions Inc. v. Timex Corp.*,
   384 F.3d 700, 708 (9th Cir. 2004), ............................................................... 7, 19

*Reeves v. Sanderson Plumbing Prods.*,
   530 U.S. 133, 150 (2000) ................................................................................... 7

*Reno-Tahoe Specialty, Inc. v. Mungchi, Inc.*,
   2014 U.S. Dist. LEXIS 177168 *22-23 (D. Nev. Dec. 19, 2014) ................................ 10

*Services Employees Intern. Union v. National Union of Healthcare Workers*,
   718 F.3d 1036 (9th Cir. 2013). ......................................................................... 6, 7

*Taylor Holland LLC v. MVMT Watches, Inc.*,
   No. 2:15-cv-03578-SVW-JC, 2016 U.S. Dist. LEXIS 187379, at *28 (C.D. Cal. Aug.
   11, 2016) ..................................................................................................... 20, 21

*Telemasters, Inc. v. Vintage Club Master Association*,
   2008 WL 11343561(C.D. Cal. 2008) ....................................................................... 8

*Torres v. City of Los Angeles*,
   548 F.3d 1197, 1205 (9th Cir. 2008) ................................................................. 6, 7

*UMG Recordings, Inc. v. Disco Azteca Distribs.*,
   446 F. Supp. 2d 1164, 1174 (E.D. Cal. Aug. 14, 2006) .............................. 6, 13, 21, 23

*Unicolors, Inc. v. Urban Outfitters, Inc.*,
   853 F.3d 980, 991 (9th Cir. 2017) ......................................................... 4, 17, 18, 19

*United Features Syndicate, Inc. v. Spree, Inc.*,
   600 F. Supp. 1242, 1247 (E.D. Mich. 1984) .......................................................... 15

*United States for Use and Benefit of Reed v. Callahan*,
   884 F.2d 1180, 1183 (9th Cir. 1989)) .................................................................... 8

*Viacom Int'l, Inc. v. Fanzine Int'l, Inc.*,
   2001 U.S. Dist. LEXIS 11925, at *13-14 (S.D.N.Y. Aug. 15, 2001) ............................ 12

*Washington Shoe Co. v. A-Z Sporting Goods, Inc.*,
   704 F.3d 668, 674 (9th Cir. 2012) .............................................................. 10, 11, 19

*White v. Ford Motor Co.*,
   312 F.3d 998, 1010 (9th Cir. 2002) ...................................................................... 6

**STATUTES**

17 U.S.C. §106 ............................................................................................................4

Fed.R.Civ.Proc. 50(b) ...............................................................................................4

Fed.R.Civ.Proc. 59(e) ...............................................................................................4

Plaintiff Greg Young Publishing, Inc. ("GYPI" or "Plaintiff") hereby opposes the Motion for Judgment as a Matter of Law Pursuant to Fed. R.Civ.Proc. 50(b) and/or for an Amended Judgment Pursuant To Fed.R.Civ.Proc. 59(e) filed by Defendant Zazzle Inc. ("Zazzle" or "Defendant").

## I.   INTRODUCTION

Defendant seeks to reduce the jury's award of damages for five of the thirty-five infringed works at issue, based on the argument that no reasonable jury could have found from the evidence presented at trial that Zazzle's infringement was "willful" – *i.e.* "the defendant knew that those acts infringed the copyright, or the defendant acted with reckless disregard for, or willful blindness to, the copyright holder's rights." Quinn Decl.[1], Ex. B, p. 2 (Dkt. 131 Jury Instructions at 22:4-6). *See also Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 991 (9th Cir. 2017) ("[T]o prove willfulness under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights.").

The Jury Verdict Form [Quinn Decl., Ex. A (Dkt.129)] reflects willful infringement statutory damages for the following five works (in order of number of infringements):

| Verdict ¶ Dkt. 129 | Artwork Dkt. 129 | Image Tr. Ex. | Total Qty Sold Tr. Ex 287 | Jury Award Dkt. 129 |
|---|---|---|---|---|
| ¶7 | Visit Cuba, CS37 | 35-07 | 282   [p.287-2] | $36,000 |
| ¶31 | Havana, CS99 | 35-33 | 328   [p.287-10] | $42,400 |
| ¶10 | The Lindbergh Line, CS46 | 35-11 | 384   [p.287-3] | $49,500 |
| ¶24 | San Francisco, CS78 | 35-26 | 509   [p.287-7] | $65,000 |
| ¶27 | Napa Valley, CS81 | 35-29 | 518   [p.287-8] | $66,800 |

---

[1] All references to "Quinn Decl." refer to the concurrently filed Declaration Of Darren J. Quinn In Opposition To Defendant Zazzle Inc.'s Motion For Judgment As A Matter Of Law Pursuant To F.R.C.P. 50(b) And/Or For An Amended Judgment Pursuant To F.R.C.P. 59(e)

- 1 -

As shown above, the jury's awards on these five works were proportional to the number of infringements.  Because violation of each exclusive right under 17 U.S.C. §106 constitutes a separate infringement, each unit sold constituted five infringements (reproduction of electronic file, creation of derivative work, display work, reproduction on physical goods and distribute/sell goods). "'T]he [jury] has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima.'" *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 992 (9th Cir. 2009) *quoting  Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990).

As discussed in §III, plaintiff's numerous written notices of infringement to Zazzle constitutes substantial evidence and perhaps the most persuasive evidence of "willful" infringement.  Additionally, the jury had other substantial evidence to support a finding of willfulness, including evidence on one or more of the "non-exclusive list of factors relevant to determining whether an infringement was willful."

> 1. Whether the defendant was in the business of manufacturing, selling and/or distributing copyrighted works at the time of the infringement.
>
> 2. Whether defendant had knowledge of copyright laws at the time of the infringement.
>
> 3. Whether the defendant did anything to determine if the product was infringing, apart from relying upon the representations of the product's supplier.
>
> 4. Whether the defendant had any procedures or policies to prevent the sale of infringing goods at the time of the infringement.
>
> 5. Whether the defendant paid prices for the infringing products comparable to those it would have paid for non-infringing products.

Quinn Decl., Ex. B, p. 2 (Dkt. 131 Jury Instructions at 22:10-19).

Zazzle's argument that other "evidence presented at trial refuting willful infringement was uncontroverted" is incorrect and/or misses the point. Dkt. 141-1 (D. Brf.) at 1:7-8. As Zazzle concedes: "The central inquiry in a Rule 50(b) motion is whether there is 'substantial evidence' to **support** the verdict." Dkt. 141-1 at 4:11-12 *quoting Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987) (emphasis added).   As discussed in §II and §IV, Zazzle is improperly construing evidence to **oppose** the jury's willful verdict instead of construing the evidence in **support** of the verdict.  Substantial evidence "is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence." *Services Employees Intern. Union v. National Union of Healthcare Workers*, 718 F.3d 1036 (9th Cir. 2013).

Ironically, Zazzle's other evidence relates to Zazzle's check box representation from the uploader that the uploader has permission to use the uploaded image without infringing any copyrights.  Dkt. 141-3 (Trial Transcript 08/08/2017 P.M. Session - Ly Testimony) at 120:21-121:4; 130:24-131:9.  But the jury was properly instructed that "Whether the defendant did anything to determine if the product was infringing, apart from relying upon the representations of the product's supplier" is evidence in **support** of a finding of willfulness.  Quinn Decl., Ex. B, p. 2 (Dkt. 131 Jury Instructions at 22:14-15). *See also UMG Recordings, Inc. v. Disco Azteca Distribs*., 446 F. Supp. 2d 1164, 1174 (E.D. Cal. Aug. 14, 2006) ("Defendant admits that other than relying on the representations of Musical Del Norte that it was an authorized distributor, defendant did not do anything to verify whether the product it received was authorized.").

## II.   STANDARD OF REVIEW

"Judgment as a matter of law is appropriate when the evidence presented at trial permits only one reasonable conclusion."  *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 938 (9th Cir. 2009) (*quoting Torres v. City of Los Angeles*, 548 F.3d 1197, 1205 (9th Cir. 2008)). It should only be granted if the evidence, "construed in the light most

- 3 -

favorable to the nonmoving party, permits only one reasonable conclusion as to the verdict and that conclusion is contrary to the jury." *White v. Ford Motor Co.*, 312 F.3d 998, 1010 (9th Cir. 2002); *McLean v. Runyon*, 222 F.3d 1150, 1153 (9th Cir. 2000). *See also Bank of the West v. Valley Nat'l. Bank of Arizona*, 41 F.3d 471, 477 (9th Cir. 1994) ("We must determine, *de novo*, whether viewing the evidence as a whole, there was substantial evidence present that could support a finding, by reasonable jurors, for [the nonmoving party]").

"A jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir.2002). *See also Polar Bear Productions Inc. v. Timex Corp.,* 384 F.3d 700, 708 (9th Cir. 2004); *Bailey v. County of Riverside,* 414 F.3d 1023, 1024 (9th Cir. 2005). Substantial evidence "is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence." *Services Employees Intern. Union v. National Union of Healthcare Workers*, 718 F.3d 1036 (9th Cir. 2013). "The relevant inquiry is whether the evidence, construed in the light most favorable to the non-moving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury verdict. Although [we] should review the record as a whole, [we] **must disregard evidence favorable to the moving party** that the jury is not required to believe…" *Polar Bear Productions Inc.*, 384 F.3d 700, 708 (internal quotations omitted, emphasis added).

Thus, "[a] motion for judgment as a matter of law is properly granted only if no reasonable juror could find in the non-moving party's favor." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1205 (9th Cir. 2008) (quoting *El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1072 (9th Cir. 2005)). "The court may not separately make credibility determinations or weigh the evidence." *Globefill Incorporated v. Elements Spirits, Inc.*, 2014 WL 12515336, *1 (C.D. Cal. 2014) (*citing Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000)). "Rather, as the Supreme Court instructed in *Reeves*, the court

- 4 -

must 'disregard all evidence favorable to the moving party that the jury is not required to believe.'" *Id. citing Reeves*, 530 U.S. at 151.

"If the verdict is supported by substantial evidence, the court cannot substitute its judgment for that of the jury, but must uphold the verdict." *Coach, Inc. v. Celco Customs Services Co.*, 2014 WL 12573411 (C.D. Cal. 2014)  (*citing Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1226 (9th Cir.), cert. denied, 534 U.S. 1055 (2001); *United States for Use and Benefit of Reed v. Callahan*, 884 F.2d 1180, 1183 (9th Cir. 1989)).   "[J]udgment as a matter of law is proper only if the evidence, together with all reasonable inferences in favor of the verdict, could lead a reasonable person to only one conclusion: that the moving party was entitled to judgment." *Telemasters, Inc. v. Vintage Club Master Association*, 2008 WL 11343561(C.D. Cal. 2008) (*citing Johnson v. Paradise Valley*, 251 F.3d at 1227).

## III.   THE COURT SHOULD DENY ZAZZLE'S MOTION BECAUSE THE JURY HAD SUBSTANTIAL EVIDENCE TO SUPPORT WILLFUL INFRINGEMENT

During closing argument, plaintiff's counsel discussed numerous categories of evidence for the jury regarding "willfulness."  *See* Quinn Decl., Ex. D, pp. 29-37 (Dkt. 147 Trial Transcript Closing Arguments, 08/08/2017 at 96:25-104:3).  Some of the evidence argued regarding "willfulness" includes:

- Zazzle's motive to have image uploader check a box that very vaguely affirms the uploader's right to use the image because "a check in that box means another potential check in Zazzle's mailbox."  Quinn Decl., Ex. D p. 31 (Dkt. 147 at 98:16-17).

- Zazzle does not have a check box requiring more meaningful specific representations that the uploader "created this artwork" or "obtained the design with a transfer agreement or something other like that."  Quinn Decl., Ex. D p. 35 (Dkt. 147 at 102:6-10).

- Zazzle does "not have a proper policy to terminate designers with copyright violations after two, three, four, or five violations."  Quinn Decl., Ex. D p. 32 (Dkt. 147 at 99:4-6).

- 5 -

- "It doesn't even present an ultimatum of final actions if copyright violations can continue to occur."  Quinn Decl., Ex. D p. 34 (Dkt. 147 at 101:7-8).

- "Zazzle has 500 corporate partners who have signed proper contracts and authorized Zazzle to use their intellectual property. If Zazzle only offered products from these authorized partners -- and you heard the testimony of that being about ten percent of their business -- it would no longer need to struggle to review 20,000 orders per day for content violations."  Quinn Decl., Ex. D p. 32 (Dkt. 147 at 99:14-20).

- "Zazzle is understaffed; that is a decision they make. . . These employees are able to take just the 30 to 60 seconds on average to review an image for 12 different content violations such as hate speech, profanity, trademark violations, copyright violations. Plus these employees are having to check for violations of the content of all of their 500 corporate content partners."  Quinn Decl., Ex. D p. 32-33 (Dkt. 147 at 99:23-23 and 100:6-11).

- Zazzle was more "concerned" about the copyrights of its 500 corporate content partners and was "familiar" their designs. Quinn Decl., Ex. D p. 33 (Dkt. 147 at 100:11-16).

- "Zazzle knows that infringements are being uploaded.  Zazzle knows that infringements are slipping through its content review team's 32-second review process that are conducted on computer screens where the image being reviewed gets a whopping 25 percent of the screen's space."  Quinn Decl., Ex. D p. 34 (Dkt. 147 at 101:18-22).

- Despite 12 notices to Zazzle sent by GYPI regarding copyright infringement, Zazzle was not familiar with GYPI's images. Zazzle content management team members were not trained "to look out for" GYPI copyrighted images.  Zazzle did not provide a place where GYPI copyrighted images "can be located and referred to and looked at."  Quinn Decl., Ex. D p. 33-34 (Dkt. 147 at 100:19-101:2).

- "There is evidence of that -- of repeated uploading of similar images. Zazzle does nothing to actively monitor or update its monitoring procedures in response to any images that it gets notified about. This results in Zazzle needing to be notified again and again about the same image. Zazzle then leaves it up to the copyright holder to once again search its site and tell Zazzle about any additional infringing images."  Quinn Decl., Ex. D p. 36 (Dkt. 147 at 103:8-15).

- Zazzle expects full immunity when it takes the infringing "images down, yet Zazzle is the entity that created this problem."  Quinn Decl., Ex. D p. 36 (Dkt. 147 at 103:24-25).

- "Zazzle is the entity who is breaking the law, but nothing to this moment has changed its behavior."  Quinn Decl., Ex. D p. 37 (Dkt. 147 at 104:1-3).

- 6 -

As discussed in §III.A below, plaintiff's numerous notices of infringement to Zazzle is perhaps the most persuasive evidence of willful.  As discussed in §III.B below, the evidence on one or more of the non-exclusive "willfulness" factors also supports the jury's finding of willfulness.

## A.   Plaintiff Presented Substantial Evidence Of Zazzle's Infringement After Notice Of Infringement By Plaintiff

"Importantly, and for purposes of establishing willfulness, 'evidence that notice had been accorded to the alleged infringer is perhaps the most persuasive evidence of willful.'" *Reno-Tahoe Specialty, Inc. v. Mungchi, Inc.*, 2014 U.S. Dist. LEXIS 177168 *22-23 (D. Nev. Dec. 19, 2014) *quoting Washington Shoe Co. v. A-Z Sporting Goods, Inc.,* 704 F.3d 668, 674 (9th Cir. 2012) *quoting Chi-Boy Music v. Charlie Club Inc.*, 930 F.2d 1224, 1227 (7th Cir. 1991)).

Plaintiff's president (Greg Young) testified to numerous written notices of infringement to Zazzle from 2013 to 2017.  Plaintiff's written notices to Zazzle include the:

(1) *March 26, 2103 notice*. *See* Quinn Decl., Ex.[2] 142 and Ex. C, pp. 8-10 (Dkt. 120 Trial Testimony 8/8/17 G. Young at 15:18-17:11);

(2) *July 24, 2103 notice*. *See* Quinn Decl., Ex. 144 and Ex. C p. 10 (Dkt. 120 Trial Testimony 8/8/17 G. Young at 17:12-23);

(3*) September 17, 2013 notice*. *See* Quinn Decl. Ex. 146 and Ex. C pp. 10-11 (Dkt. 120 Trial Testimony 8/8/17 G. Young at 17:24-18:15);

(4) *September 26, 2013 notice*. *See* Quinn Decl.Tr. Ex. 148 and Ex. C, pp. 11-12 (Dkt. 120 Trial Testimony 8/8/17 G. Young at 18:16-19:7);

(5) *October 3, 2013 notice (attaching catalog)*. *See* Quinn Decl. Ex. 149 and Ex. C, pp. 12-14 (Dkt. 120 Trial Testimony 8/8/17 G. Young at 19:8-21:15);

---

[2] All numbered exhibits attached to the Quinn Decl. were Trial Exhibits admitted in evidence.

1   (6) *September 15, 2014 notice*. *See* Quinn Decl., Ex. 154 and Ex. C, pp. 16-17 (Dkt.

2   120 Trial Testimony 8/8/17 G. Young at 23:12-24:25);

3   (7) *July 27, 2015 notice*. *See* Quinn Decl., Ex. 155 and Ex. C, pp. 18-24 (Dkt. 120

4   Trial Testimony 8/8/17 G. Young at 25:1-31:10);

5   (8) *This lawsuit*. *See* Quinn Decl. Ex. C, p. 24 (Dkt. 120 Trial Testimony 8/8/17 G.

6   Young at 31:18-19);

7   (9) *December 28, 2016 notice*. *See* Quinn Decl., Ex. 159 and Ex. C, p. 24 (Dkt. 120

8   Trial Testimony 8/8/17 G. Young at 31:11-23);

9   (10) *February 19, 2017 notice*. *See* Quinn Decl., Ex. 164 and Ex. C, pp. 25-26 (Dkt.

10   120 Trial Testimony 8/8/17 G. Young at 32:1-33:6);

11   (11) *May 4, 2017 notice*. *See* Quinn Decl., Ex. 167 and Ex. C., p. 26 (Dkt. 120 Trial

12   Testimony 8/8/17 G. Young at 33:6-21); and

13   (12) *June 9, 2017 notice*. *See* Quinn Decl., Ex. 280 and Ex. C., pp. 27-28 (Dkt. 120

14   Trial Testimony 8/8/17 G. Young at 38:22-39:6).

15   With respect to the five infringed works at issue on this motion, Zazzle received

16   multiple written notices.  Zazzle received written notice before the lawsuit was filed for

17   these five infringed works on: (1) September 26, 2013. *See* Quinn Decl., Ex. 148

18   (regarding CS46); (2) October 3, 2013. *See* Quinn Decl., Ex. 149 at pp. 3, 5, 10 (regarding

19   CS46, CS78, CS81, and CS37); (3) September 15, 2015. *See* Quinn Decl., Ex. 154 at p. 2

20   (regarding CS46 and CS99); and (4) July 27, 2015. *See* Quinn Decl.,Ex. 155 at p. 5

21   (regarding CS37, CS46, and CS99). Of course, plaintiff's Complaint constitutes written

22   notice.

23   Thus, Zazzle's receipt of numerous notices of infringement to Zazzle alone

24   constitutes substantial evidence sufficient to defeat Zazzle's motion, but it is also

25   "'perhaps the most persuasive evidence of willful.'" *Washington Shoe Co.*, 704 F.3d at

26   674.

27

28

**B.      Plaintiff Presented Substantial Evidence On The Non-Exclusive Willfulness Factors**

As set forth in §I above, this Court properly instructed the jury as to "non-exclusive list of factors relevant to determining whether an infringement was willful." Quinn Decl., Ex. B, p. 2 (Dkt. 131 Jury Instructions at 22:8-19).  As discussed below, substantial evidence supports the non-exclusive willfulness factors.

**1.      Zazzle Admitted It Was In The Business Of Manufacturing, Selling And/Or Distributing Copyrighted Works At The Time Of The Infringement**

Regarding "willfulness," the court instructed the jury to consider: "Whether the defendant was in the business of manufacturing, selling and/or distributing copyrighted works at the time of the infringement." Quinn Decl., Ex. B, p. 2 (Dkt. 131 Jury Instructions at 22:10-11). *See e.g. Peer Int'l Corp.*, 909 F.2d at 1337 ("Given . . . the fact Pausa is engaged in the business of selling copyrighted works, we find the court did not abuse its discretion in awarding $ 4 million in statutory damages.").

The record is replete with evidence that Zazzle was in the business of manufacturing, selling and/or distributing copyrighted works at the time of the infringement.  For instance, Zazzle's co-founder, Robert Beaver, III, testified:

> Q: . . .So the question is since its founding in 1999, Zazzle has always endeavored to understand the risks of its copyright liability ***with respect to its business of manufacturing and selling physical products that contain uploaded images***, correct?
>
> A. Correct.

Quinn Decl., Ex. D, p. 22 (Dkt. 147 Trial Testimony 8/8/17 – Beaver at 38:13-18) (emphasis added).  Mr. Beaver testified Zazzle manufactures "hundreds of millions, if not billions, of physical products each year." Quinn Decl., Ex. D, p. 18 (Dkt. 147  at 34:8-11). *See also* Quinn Decl., Ex. 287 (accounting showing Zazzle produced infringing goods with GYPI's copyrighted works).  This substantial evidence is sufficient to deny Zazzle's

- 9 -

motion.

Zazzle is the manufacturer and seller of the physical goods.  Zazzle licenses the right to use images on the physical goods it sells and pays royalties to the claimed image owner.  *See* Quinn Decl., Ex. C, pp. 37-38 (Dkt. 120 Trial Testimony 8/8/17 Ly at 97:23-98:23).

### 2.    Zazzle Admitted It Had Knowledge Of Copyright Laws At The Time Of The Infringement

Regarding "willfulness," the court instructed the jury to consider: "Whether defendant had knowledge of copyright laws at the time of the infringement."  Quinn Decl., Ex. B, p. 2 (Dkt. 131 Jury Instructions at 22:12-13). *See, e.g., Hearst Corp. v. Stark*, 639 F. Supp. 970, 979 (N.D. Cal. 1986). ("Plaintiffs argue that defendants' familiarity with copyright law raises an inference that they had knowledge that their activities were infringing.");  *Viacom Int'l, Inc. v. Fanzine Int'l, Inc.*, 2001 U.S. Dist. LEXIS 11925, at *13-14 (S.D.N.Y. Aug. 15, 2001) (finding willfulness where defendant was sophisticated and "is or should be familiar with copyright law").

In trial, Zazzle co-founder Robert Beaver III admitted that Zazzle was well aware of copyright laws throughout the entire life of the company, including the time of the infringements. *See* Quinn Decl., Ex. D, pp. 21 (Dkt. 147 Trial Testimony 8/9/17 Beaver at 37:12-14) ("[Q:] And Zazzle has a firm knowledge of copyright laws, correct? [A:] Yes. [Q:] And Zazzle has two in-house attorneys as well as outside attorneys on copyright matters, correct? [A:] We do."). *See also* Quinn Decl., Ex. D, p. 22 (Dkt. 147 Trial Testimony 8/9/17 Beaver at 38:13-18 ("[Q:] Zazzle has always endeavored to understand the risks of its copyright liability with respect to its business of manufacturing and selling physical products that contain uploaded images, correct? [A:] Correct.")

Zazzle's former manager of the validation department, Tony Ly, stated in trial that through his course of duties, he would train Zazzle's content management team specifically about copyright and other intellectual property matters. *See* Quinn Decl., Ex. D, pp. 6-7 (Dkt. 147 Trial Testimony 8/9/17 Ly at 22:23-23:2) ("[Q:] Now, with respect to

- 10 -

the PowerPoint that you put together to help teach people that were going to be content reviewers to do that work, did you talk in terms of your presentation at all about intellectual property, copyright, that kind of thing? [A:] Yes, that was covered.").

### 3. Zazzle Did Nothing To Determine If The Product Was Infringing, Apart From Relying Upon The Representations Of The Product's Designer

Regarding "willfulness," the court instructed the jury to consider: "Whether the defendant did anything to determine if the product was infringing, apart from relying upon the representations of the product's supplier."  Quinn Decl., Ex. B, p. 2 (Dkt. 131 Jury Instructions at 22:14-15).  *See e.g., UMG Recordings, Inc* 446 F. Supp. 2d at 1174 ("Defendant admits that other than relying on the representations of Musical Del Norte that it was an authorized distributor, defendant did not do anything to verify whether the product it received was authorized.").

Zazzle's website does not allow a product with an uploaded image to be displayed for sale until the uploader checks a box that states, quote, "I have the right to publish and sell this product without violating other's rights, and I agree to Zazzle's user agreement." Quinn Decl., Ex. D, p. 19 (Dkt. 147 Trial Testimony 8/9/17 Beaver at 35:5-9.  By and large, "*Zazzle doesn't do any individual verification after that fact to actually determine whether that designer does in fact have permission to use that design*."  Quinn Decl., Ex. C, p. 61 (Dkt. 120 Trial Testimony 8/8/17 Ly at 121:3-14) (emphasis added). The *vague* check box statement did nothing to meaningfully prevent copyright infringement as shown by the 35 separate works infringed by Zazzle in this action.

Zazzle was reckless or willfully blind when it could have easily asked *specific* questions regarding copyrights to prevent infringing image uploads to Zazzle.  Zazzle's co-founder, Mr. Beaver testified:

> Q: If Zazzle wanted to, it wouldn't be hard for Zazzle to add a second check box that provides, "I certify that I personally created the image being uploaded."
>
> A: Per my earlier comment, we can add additional check boxes.

- 11 -

Q: And it wouldn't be hard, correct?

A: Correct.

Quinn Decl., Ex. D, pp. 20-21 (Dkt. 147 Trial Testimony 8/9/17 Beaver at 36:16-37:4). In some respects, compliance with copyright law is simple: If you didn't create a work, then you probably need permission to reproduce, modify, display, or sell it.

Implicitly recognizing that its vague check box statement would not meaningfully prevent copyright infringement or violation of its terms of use, Zazzle's employed an average of 30 content management review team members. Quinn Decl., Ex. D, p. 15 (Dkt. 147 Trial Testimony 8/9/17 Ly at 31:10-13). The content management "team that was responsible for reviewing designs to make sure they abide by our terms of service and content guidelines." Quinn Decl., Ex. C, p. 30 (Dkt. 120 Trial Testimony 8/8/17 Ly at 90:12-14). With respect to the average of "20,000 orders a day, there is about 1,000 to 1,200 of these purchases that [Zazzle's] management review team is flagging for some type of issue with respect to [Zazzle's] guidelines." Quinn Decl., Ex. C., p. 35 (Dkt. 120 Trial Testimony 8/8/17 Ly at 95:10-13). But Zazzle was reckless or willfully blind by effectively setting up its team to fail at detecting and preventing any copyright infringement of plaintiff's works.

Zazzle was reckless or willfully blind by having its team search for text instead of infringing images. Zazzle's co-founder, Mr. Beaver, agreed: "Historically, *it's been very difficult for Zazzle to determine whether or not someone is a rightful copyright owner or has appropriate license of copyright*; so Zazzle has talked about the *need for some sort of database of known copyrighted images in copyrighting information*." Quinn Decl., Ex. D, p. 25 (Dkt. 147 Trial Testimony 8/9/17 Beaver at 44:17-22) (emphasis added). Mr. Beaver testified that the cost to set up a database of 100 GYPI images was insignificant. Quinn Decl., Ex. D, p. 26 (Dkt. 147 Trial Testimony 8/9/17 Beaver at 45:19-20). Mr. Ly testified that it only maintained a database of words ("hotlist"), so "*Unfortunately our search is only by text*." Quinn Decl., Ex. C, p. 42 (Dkt. 120 Trial Testimony 8/8/17 Ly at 102:3-9) (emphasis added). "We call it the hot list. Every time

someone opens up a product, if they add words, Coca Cola, either on the title, search tags or description, it gets flagged for review from one of our content reviewers to make sure the design isn't infringing in any way." Quinn Decl., Ex. C, pp. 39-40 (Dkt. 120 Trial Testimony 8/8/17 Ly at 99:12-100:3).

Zazzle was reckless or willfully blind with respect its reviewers' ability to detect infringing images. Per image, Zazzle spent "only 30 to 60 seconds in review, on average." Quinn Decl., Ex. C, p. 42 (Dkt. 120 Trial Testimony 8/8/17 Ly at 102:11-12). The image being reviewed is only "maybe a quarter of the screen" on the reviewer's computer. Quinn Decl., Ex. C, p. 62 (Dkt. 120 Trial Testimony 8/8/17 Ly at 133:6-8). Zazzle's reviewers had no "hotlist" of plaintiff's images to even attempt to identify whether the image being reviewed infringed plaintiff's copyrights." Quinn Decl., Ex. C, p. 42 (Dkt.120 Trial Testimony 8/8/17 Ly at 102:3-9). Mr. Beaver testified: "So it hasn't generally been in our interest to build a reverse image system; it doesn't have a place in Zazzle." Quinn Decl., Ex. D, p. 23 (Dkt. 147 Trial Testimony 8/9/17 Beaver at 42:23-24). Mr. Ly does not think that all of the 30 or so content management team reviewers were advised when plaintiff sent Zazzle its catalog of 97 images. *See* Quinn Decl., Ex. D, p. 15 (Dkt. 147 Trial Testimony 8/9/17 Ly at 31:3-22).

### 4. Zazzle's Procedures Or Policies To Prevent The Sale Of Infringing Goods At The Time Of The Infringement Were Ineffective

Regarding "willfulness," the court instructed the jury to consider: "Whether the defendant had any procedures or policies to prevent the sale of infringing goods at the time of the infringement." Quinn Decl., Ex. B, p. 2 (Dkt. 131 Jury Instructions at 22:16-17). *See generally Playboy Enters. v. Sanfilippo*, No. 97-0670-IEG (LSP), 1998 U.S. Dist. LEXIS 5125, at *14 n.9 (S.D. Cal. Mar. 24, 1998) ("Once plaintiff initiated contact with defendant concerning the potential for copyright infringement, it was unreasonable for plaintiff to continue his business practices without thoroughly investigating the copyrighted status of the images in his database files."); *United Features Syndicate, Inc. v.*

- 13 -

*Spree, Inc.*, 600 F. Supp. 1242, 1247 (E.D. Mich. 1984) (willfulness where defendant disingenuously testified "he did not realize that checking for copyrights was something he was supposed to do" and "he does not know how to go about ascertaining whether an article is copyrighted.").

As discussed in §III.B.3 above, Zazzle was reckless or willfully blind with respect to using a vague check box representation to prevent copyright infringement and with respect to Zazzle reviewing uploaded images for copyright infringement.

Once Zazzle was on notice of copyright infringement, it was reckless or willfully blind with respect to terminating the accounts of uploaders of infringing images. Mr. Ly testified:

> Q Okay. And so, does Zazzle have a policy for how many copyright violations a designer could accumulate before they are terminated?
>
> A There is no set number for that.

Quinn Decl., Ex. C, p. 49 (Dkt. 120 Trial Testimony 8/8/17 Ly at 109:17-20). When Zazzle sends out automatic emails, it "did not tell the designer that you have committed X number of content violations, and if you commit one more, we're going to terminate your access to our site." Quinn Decl., Ex. C, p. 57 (Dkt. 120 Trial Testimony 8/8/17 Ly at 117:7-10).

Zazzle has "no written rules" to objectively determine when an uploader's account would be terminated. Quinn Decl., Ex. C, p. 58 (Dkt. 120 Trial Testimony 8/8/17 Ly at 118:14-19). Recklessly, Zazzle did not terminate the accounts of some persons who uploaded infringing images of plaintiff's copyrighted images even though those persons had over "1,000" or even "2,000" content management violations. Quinn Decl., Ex. C, pp. 51 and 53 (Dkt. 120 Trial Testimony 8/8/17 Ly at 111:13-18, 113:12-13). A content violation "means a product was removed from their store due to a violation in terms of service." Quinn Decl., Ex. C, p. 54 (Dkt. 120 Trial Testimony 8/8/17 Ly at 114:22-23).

Zazzle's procedures and policies were so ineffective that even after receiving numerous cease and desist letters from GYPI, its entire content management team was not

- 14 -

aware of the infringing images.  Quinn Decl., Ex. D, p. 15 (Dkt. 147 Trial Testimony 8/9/17 Ly at 31:3-9) ("[Q:] I was asking Mr. Ly if you advise all members of your content management review testimony of Mr. Young's 97 images when they were received? [A:] I don't think all of them were...").

## IV.   ZAZZLE'S ARGUMENTS DO NOT ESTABLISH THAT THE JURY AWARDS FOR EACH OF THE FIVE WORKS MUST BE REDUCED TO $30,000

### A.   The Verdict Form Does Not Require An Affirmative Finding Of Willful

Without citation, Zazzle's memorandum begins: "Absent an affirmative finding of 'willful' infringement, the Copyright Act limits statutory damages awards to a maximum of $30,000 per copyrighted work."  Dkt. 141-1 ( D. Brf) at 1:2-6.  Zazzle cites no law to support that the Verdict Form required a separate finding of "willful infringement" prior to stating an amount for statutory damages.

In fact, the Court simplified the Verdict form to remove any affirmative findings regarding "willful" or "infringement" because that is "too many subquestions."  Quinn Decl., Ex. D, p. 27 (Dkt. 147 Trial 8/9/17 at 65:15-16).  *Compare* Dkt. 129 (Verdict Form) to Dkt. 109 (Disputed Verdict Forms).  The Verdict Form properly only asked the jury two simple questions for each work: (1) "Did plaintiff GYPI prove that defendant ZAZZLE INC. infringed that copyright?"; and (2) "State the amount of statutory damages for all infringements with respect to this work."  Quinn Decl., Ex. B, (Dkt. 129 Verdict Form).

The Court's jury instruction as to the amount of statutory damages for willful, non-willful and innocent infringement made separate express findings on the jury verdict unnecessary.  *See* Dkt. 131 (Jury Instructions) at 19-20. The court explained that "everything else is covered in the jury instruction. Be very simple."  Quinn Decl., Ex. D, p. 27 (Dkt. 147 Trial 8/9/17 at 65:23-24).

As to five (5) works at issue on this motion, the jury's awards of statutory damages of greater than $30,000.00 constitutes an affirmative finding of willfulness as to those works.  As shown in the chart in §I, Zazzle infringed each of these five works *hundreds of times*.

In contrast, the jury's awards of statutory damages of $200 as to three (3) works constitute an affirmative finding of innocent infringement.  *See e.g.* Quinn Decl., Ex. A (Dkt. 129  Jury Verdict, ¶6 (Catalina by Air CS36), ¶33 (Pineapple, SP1) and ¶35 (Palm Beach, CS85)).  This may be because the "Total Qty Sold" for those three works was only *one (1) unit*.  *See* Quinn Decl., Ex. 287, at pp. 2, 8, 10.

## B.   Willful Infringement and Reckless Disregard

Zazzle correctly cites *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 991 (9th Cir. 2017) that "'the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights.'"  Dkt. 141-1 (D. Brf) at 5:17-20 (citations omitted).  In *Unicolor*, the Ninth Circuit upheld a jury's finding of "willfulness" as follows:

> At trial, [plaintiff] presented, evidence that [defendant] adopted a reckless policy with regard to copyright infringement because it made *no attempt to check or inquire into whether any of the designs it used in its apparel were subject to copyright protections*. [Plaintiff] showed that [defendant] keeps thousands of fabric swatches at its design studio that it has purchased from art studios or taken from vintage clothing remnants; [defendant's] designers use these swatches to create thousands of apparel designs each year; [defendant] pays tens of thousands of dollars each year to purchase art and *has a general awareness that fabric designs may be copyrighted*; and [5] that *[defendant] does not take any affirmative action to determine if the specific designs it is using are copyrighted*. [Plaintiff] also showed that *[defendant] did not attempt to discover the origin of the Subject Design in this case*. These facts are sufficient to show that [defendant] acted with *reckless disregard for the possibility* that the fabric it sampled was *protected by copyright*, and such conduct is sufficient evidence of willful infringement to support the jury's verdict.

*Unicolors, Inc*, 853 F.3d at 991-92 (emphasis added).  The Ninth Circuit rejected as an

- 16 -

"improperly strict standard of willfulness" the defendant's argument that "these facts cannot support a finding of willfulness because there is no evidence that [defendant]had **knowledge** that its conduct constituted infringement." *Id.* at 992 (emphasis in original). The Ninth Circuit reiterated prior holdings that "merely reckless behavior" can support a finding of willful infringement and that "a finding of willful infringement does not require a showing of actual knowledge." *Id.*

Zazzle admits that "a copyright defendant may be liable for willful infringement if it fails to make any 'attempt to check or inquire into' the copyright status of a design when it 'has a general awareness' that the design might be unauthorized. . ." Dkt. 141-1 (D. Brf) at 6:8-11 (*quoting Unicolors, Inc.* 853 F.3d at 991-992). As discussed in §III.B.3 above, Zazzle did not meaningfully check or inquire whether the five (5) designs at issue on this motion were infringing prior to manufacture and sale. As discussed in §III.A above, plaintiff gave Zazzle written notice of its copyrights in these five (5) works on multiple occasions.

Zazzle also admits that "a copyright defendant may be liable for willful infringement . . . if the defendant uses 'an approval process that never explicitly asks about copyrights at all. . .'" Dkt. 141-1 (D. Brf) at 6:11-12 (*quoting Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1186 (9th Cir. 2016)). As discussed in §III.B.3, Zazzle's vague check box representation does not explicitly ask about copyrights. More recently, the Ninth Circuit in *Unicolors* explained: "Regardless of how difficult it may be to determine whether particular designs have been registered with the Copyright Office, a party may act recklessly by refusing, as a matter of policy, to even investigate or attempt to determine whether particular designs are subject to copyright protections." *Unicolors, Inc.*, 853 F.3d at 992.

Most importantly, Zazzle admits that "a copyright defendant may be liable for willful infringement . . . if the defendant deliberately sells infringing products after receiving a cease-and-desist notice..." Dkt. 141-1 at 6:13-14 (*citing Wash. Shoe Co.* 704 F.3d at 674). As discussed in §III.A above, Zazzle received numerous cease and desist

notices.  Quinn Decl, Ex. 287 shows hundreds of infringing sales after the date of these notices.  *Compare, e.g.* Quinn Decl., Ex. 149 (10/3/13 GYPI notice attaching catalog with 97 images) *with* Ex. 287 at pp. 124-190.

Zazzle tries to distinguish itself from the defendants in *Unicolors* and *Friedman* by arguing that it "went out of its way to avoid infringement by (1) adopting a strict no-infringement policy, (2) requiring its users to contractually warrant that each design was authorized for use by Zazzle, (3) employing a large team to help enforce its  no-infringement policy, (4) responding expeditiously to every one of Plaintiff's takedown requests, and (5) making a special effort to try to locate and remove additional infringements from Plaintiff's catalogue."  Dkt. 141-1 (D. Brf) at 8:7-12.  As discussed in §II above, the court "must disregard evidence favorable to the moving party that the jury is not required to believe…" *Polar Bear Productions Inc*., 384 F.3d at 708.  Plaintiff addresses each of Zazzle's purported undisputed facts below.

### 1.     Zazzle's Purported "Strict No-Infringement Policy"

As discussed in §III.B.3 and B.4 above, Zazzle did not adopt a "strict no-infringement policy."  Dkt. 141-1 (D. Brf)  at 8:7-8.  For instance, Zazzle did not terminate the accounts of uploaders with thousands of content violations. Zazzle had no policy to terminate repeat infringers after a certain number of content violations.

Zazzle cites Mr. Ly's testimony in support of this purported "Strict Policy Against Infringement," but ***no written Zazzle policy was in evidence***. *See* Dkt. 141-1 (D. Brf) at 2:15-17 *citing* Mr. Ly's testimony at Dkt. 120 at 120:21-121:4.  Given the absence of evidence and/or conflicting evidence, the jury could disbelieve that Zazzle had any explicitly stated, strict no-infringement policy with respect to infringement of copyrights.

1

2

**2.     Zazzle's Purported Requirement That Users "Contractually Warrant That Each Design Was Authorized For Use By Zazzle"**

3       As discussed in §II.B.3, Zazzle had a vague check box representation that was not

4   explicit about copyrights.  Zazzle could have easily had check box representations that

5   were explicit about copyright, but it chose not to.

6       The legal conclusion that Zazzle required "its users to contractually warrant that

7   each design was authorized for use by Zazzle" is unsupported.  Dkt. 141-1 (D. Brf) at 8:8-

8   9.  Zazzle's check box representation is so vague and general that the jury could

9   reasonably interpret it not to even refer to copyrights.

10       Zazzle relies on *Taylor Holland LLC v. MVMT Watches, Inc.*, No. 2:15-cv-03578-

11   SVW-JC, 2016 U.S. Dist. LEXIS 187379, at *28 (C.D. Cal. Aug. 11, 2016) to argue

12   "willful infringement could not be shown as a matter of law where a third party supplied

13   the defendant with a copyrighted photograph and falsely represented that she had the right

14   to authorize the defendant to use the image." Dkt. 141-1 (D. Brf) at 6:20-23.  In *Taylor*

15   *Holland*, the court found genuine issues of material fact regarding defendant's defenses of

16   equitable estoppel (*id.* at *24) with respect to defendant's use of a photograph that was

17   used beyond the terms of a signed license agreement that restricted use to "Social Media"

18   (*id.*, at *3-4).  The court then found "genuine issue of fact with respect to willfulness" (*id.*

19   at *27) based upon "no evidence that MVMT knew or should have known that Marchese

20   did not have the right to convey the Photograph to MVMT for the use that MVMT had

21   requested" and plaintiff's failure to present "other evidence that would could (sic) lead a

22   reasonable trier of fact to conclude that MVMT should have been suspicious about the

23   origin or rights to the Photograph."  Similarly, Zazzle also relies on *Evergreen Safety*

24   *Council v. RSA Network, Inc.*, 697 F.3d 1221, 1228-1229 (9th Cir. 2012) where the

25   undisputed evidence showed that a willfulness exception to laches applied where

26   defendant had a "reasonable and good faith belief in the possible existence of an express

27   license" and "reasonably believed that its use of the diagrams was non-infringing" under

28   the doctrine of fair use. Dkt. 141-1 (D. Brf) at 7:3-6.

- 19 -

Unlike *Taylor Holland* and *Evergreen*, in the instant case, there is substantial evidence that Zazzle knew or should have known that a vague check box representation at time of image upload could not be relied upon. As discussed in §III.B.3 above, Zazzle monthly sees tens of thousands of content violations regarding images subject to the check box representation. Additionally, Zazzle knows a significant percentage of the check box representations will be untrue, so it employs an average of 30 content review team members. In the instant case, the jury had substantial evidence of willfulness.

Thus, the instant case is more akin to *UMG Recordings* where the plaintiff moved for summary judgment on the issue of defendant's willfulness. In *UMG,* "Defendant admits that ***other than relying on the representations of Musical Del Norte that it was an authorized distributor***, defendant did not do anything to verify whether the product it received was authorized." 446 F. Supp. 2d at 1174 (emphasis added). Although the court found plaintiff's "facts are undisputed, they do not establish willfulness as a matter of law, as defendant has proffered evidence in rebuttal sufficient to raise a triable issue of fact as to defendant's state of mind." 446 F. Supp. 2d at 1174-1775. By implication, plaintiff's facts in *UMG Recordings* would constitute substantial evidence to support a jury verdict on willfulness. Likewise, in the instant case, plaintiff's facts in §III.B.3 above constitute substantial evidence of willfulness.

### 3. Zazzle's Purportedly "Employing A Large Team To Help Enforce Its No-Infringement Policy"

The jury could disbelieve Zazzle's argument of "employing a large team to help enforce its no- infringement policy." Dkt. 141-1 (D. Brf) at 8:9-10.

As discussed in §IV.B.1 above, Zazzle's "no-infringement" policy is unsupported or at least illusory. As discussed in §III.B.3, Zazzle spent only 30 to 60 seconds in review of each image that filled maybe a quarter of the reviewer's computer screen. Zazzle's reviewers had no "hotlist" of plaintiff's images to even attempt to identify whether the image being reviewed infringed plaintiff's copyrights. All of the 30 or so

- 20 -

content management team reviewers were not advised when plaintiff sent Zazzle its catalog of 97 images.

Based upon the fact that hundreds of reproductions of GYPI images escaped the notice of these employees for the five (5) works at issue on this motion, the jury had substantial evidence to find: (a) Zazzle's content reviewers lack the proper tools (*e.g.* reverse image search and/or database of plaintiff's copyrighted images) and training to prevent copyright infringement; (b) they were only trained to look for infringements of Zazzle's 500 or so corporate partners' images; and/or (c) 30 to 50 people is just an insufficient number to properly prevent infringements given Zazzle's large volume of orders.

### 4.   Zazzle Purportedly "Responding Expeditiously To Every One Of Plaintiff's Takedown Requests"

Zazzle incorrectly asserts that it responded "expeditiously to every one of Plaintiff's takedown requests." Dkt. 141-1 (D. Brf) at 8:10-11.   After taking more than a month to respond to plaintiff's September 15, 2014 notice of infringement, Zazzle sent a reply email that states: "***My apologies for the late reply on this matter***." Tr. Ex. 154 at p.1 (emphasis added).

The jury could infer that Zazzle (as a matter of economics and risk/benefit analysis) had a business practice of infringing and then expeditiously removing infringing items when it got caught to attempt to reduce its exposure. The jury heard evidence that Zazzle's co-founder, Mr. Beaver, "graduated from Stanford in 2000 with a B.A. in economics shortly after Zazzle was founded." Quinn Decl., Ex. D, p. 16-17 (Dkt. 147 Trial Testimony 8/9/17 Beaver at 32:24-33:1). Mr. Beaver "used the principals (sic) you learned while obtaining your degree in economics from the standpoint to help guide Zazzle's company strategy . . ." Quinn Decl., Ex. D, p. 17 (Dkt. 147 at  33:2-4). "Zazzle has always endeavored to understand the risks of its copyright liability with respect to its

- 21 -

business of manufacturing and selling physical products that contain uploaded images."
Quinn Decl., Ex. D, p. 22 (Dkt. 147 Trial Testimony 8/9/17 Beaver at 38:13-16).

Thus, the jury had substantial evidence to infer that Zazzle made the business decision to willfully infringe copyrights instead of preventing the infringement in the first place. In other words, it made more economic sense to ask for forgiveness (and pay) for any infringements than to spend money to comply with the law.[3]  Zazzle has clearly taken a "wait and see" policy, whereby it operates under the willfully blind assumption that nothing is infringing unless and until it receives a takedown notice, and then as long as it takes down the noticed product it committed no wrong.

### 5.   Zazzle Purportedly "Making A Special Effort To Try To Locate And Remove Additional Infringements From Plaintiff's Catalogue"

Zazzle refers to "making *a* special effort to try to locate and remove additional infringements from Plaintiff's catalogue." Dkt. 141-1 (D. Brf) at 8:11-12 (emphasis added)  Zazzle clarifies: "***At one point in time***, Zazzle made *a* specific effort to try to remove all products that might potentially infringe Plaintiff's copyrights by using ***keyword searches*** to try to find those products and remove them." Dkt. 141-1 (D. Brf)  at 8:11-12 (emphasis added).

Zazzle's one-time effort using keyword searches (not reverse images searches), supports the jury's finding that Zazzle's conduct was willful. Zazzle established that it could (and did *once*) search for images that infringed plaintiff's copyrights. Thus, Zazzle admits it could have searched for and prevented further infringements after its one-time word search, but it did not want to be bothered with complying with copyright law.

---

[3] "It is well-established that copyright infringement is a strict liability tort; there is no need to prove the defendant's mental state to establish copyright infringement." *Arista Records LLC v. Myxer Inc.*, 2011 WL 11660773, *13  (C.D. Cal. 2011), *citing Educ. Testing Serv. v. Simon*, 95 F. Supp.2d 1081, 1087 (C.D.Cal.1999) ("There is no need to prove anything about a defendant's mental state to establish copyright infringement; it is a strict liability tort."); and *citing UMG Recordings, Inc. v. Disco Azteca Distrib., Inc.*, 446 F. Supp.2d 1164, 1172 (E.D.Cal.2006) ("A plaintiff need not demonstrate the defendant's intent to infringe the copyright in order to demonstrate copyright infringement.")

*Playboy Enters.*, 1998 U.S. Dist. LEXIS 5125, at *14 n.9  ("Once plaintiff initiated contact with defendant concerning the potential for copyright infringement, it was unreasonable for plaintiff to continue his business practices without thoroughly investigating the copyrighted status of the images in his database files.") This is substantial evidence of willful blindness.

With respect to its one-time word search, Zazzle argues that, on October 10, 2013, "Plaintiff thanked Zazzle "for all of [its] hard work in clearing off the infringements," and stated that it was "pleased with the response and the work you have done."  Dkt. 141-1 at 3:17-19 (emphasis added).  Plaintiff's subsequent notices of infringement, lawsuit and further post-lawsuit notices clearly show that plaintiff was not "pleased" thereafter.  *See* §III.A above.

Further, Zazzle made hundreds of infringing sales after its one-time word search for infringing images. *Compare, e.g.* Quinn Ex. 149 (10/3/13 GYPI notice attaching catalog with 97 images) *with* Quinn Ex. 287 at pp. 124-190.   The jury had substantial evidence to find that a reverse image search using TinEye would have been more effective than a word search.

## V.   CONCLUSION

For the foregoing reasons, defendant's motion for judgment as a matter of law as to the willfulness of the five (5) infringed images should be denied because it is supported by substantial evidence.  Further, the jury had "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima'" with respect to these five (5) willfully infringed works.  *Dream Games of Ariz., Inc.*, 561 F.3d at 992 *quoting Peer Int'l Corp*, 909 F.2d at 1336.

Dated:        September 7, 2017                    Respectfully Submitted,

                                    LAW OFFICES OF JEFFREY YOUNG
                                    JEFFREY S. YOUNG
                                    JACOB P. AINCIART

- 23 -

1  
2  

AQUILINO LAW  
JASON A. AQUILINO  

3  
4  

LAW OFFICES OF DARREN J. QUINN  
DARREN J. QUINN  

5  

6  

By:   <u>  s/s   Darren  J. Quinn_____</u>  
       Darren J. Quinn  

7  

8  

12702 Via Cortina, Suite 105  
Del Mar, CA 92014  

9  

10  

*Attorneys for Plaintiff Greg Young*  
*Publishing, Inc.*  

11  
12  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28

## CERTIFICATE OF SERVICE

I certify that all counsel of record are being served on September 25, 2017 with a copy of the following documents via the Court's CM/ECF system.

–      MEMORANDUM OF POINTS AND AUTHORITIES IN  OPPOSITION TO DEFENDANT ZAZZLE INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO F.R.C.P. 50(b) AND/OR FOR AN AMENDED JUDGMENT PURSUANT TO F.R.C.P. 59(e)

- DECLARATION OF DARREN J. QUINN IN  OPPOSITION TO DEFENDANT ZAZZLE INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO F.R.C.P. 50(b) AND/OR FOR AN AMENDED JUDGMENT PURSUANT TO F.R.C.P. 59(e)

_____ /s/ Darren J. Quinn
DARREN J. QUINN