LAW OFFICES OF JEFFREY S. YOUNG
JEFFREY S. YOUNG, SBN 172016
jeff@jeffreyyounglaw.com
JACOB P. AINCIART, SBN 313588
ainciart@mac.com
1307 State Street, First Floor
Santa Barbara, CA 93101
Tel: (805) 884-0338

LAW OFFICES OF DARREN J. QUINN
DARREN J. QUINN, SBN 149679
dq@dqlaw.com
12702 Via Cortina, Suite 105
Del Mar, CA  92014
Tel: (858) 509-9401

Additional Counsel Listed on Signature Block

*Attorneys for Plaintiff GREG YOUNG PUBLISHING, INC.*

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| GREG YOUNG PUBLISHING, INC., a corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ZAZZLE, INC., a corporation, and DOES 1 to 10<br><br>Defendants. | Case No. 2:16-cv-04587-SVW-KS<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR POST-TRIAL EQUITABLE RELIEF**<br><br>Judge:    Hon Stephen V. Wilson<br>Date:    October 16, 2017<br>Time:    1:30 p.m.<br>Courtroom:  10A |

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   THE PRESENT: *ONE-TIME* "DESTRUCTION" OF INFRINGING ELECTRONIC
      FILES PURSUANT TO §503(B) ..........................................................................3

      A.    The Court Has Discretion To Order Destruction of Infringing Electronic Files
            With Or Without "Extreme Circumstances"..................................................4

      B.    *One-Time* "Destruction" of Presently Existing Electronic Files Under §503(b)
            Does Not Require Weighing of Four Injunctive Relief Factors For *Ongoing*
            Permanent Injunctive Relief Under §502 .....................................................5

III.  THE FUTURE: *ONGOING* PERMANENT INJUNCTIVE RELIEF TO "PREVENT OR
      RESTRAIN INFRINGEMENT" PURSUANT TO §502 .......................................8

      A.    The Four Injunctive Relief Factors Weigh In Favor Of A Permanent Injunction ............8

            1.    Irreparable Harm .......................................................................8

            2.    Inadequate Remedy At Law .....................................................14

            3.    Balance of Hardships ...............................................................15

            4.    Public Interest ..........................................................................19

      B.    The Proposed Permanent Injunction ...........................................................20

            1.    Zazzle Implicitly Concedes Injunction Proper As To Manufacture And Sale
                  Of 35 Works At Trial...............................................................20

            2.    Zazzle's Objections To Proposed Permanent Injunction......................20

      C.    Zazzle Can Always Move To Modify Injunction ..........................................24

IV.   CONCLUSION...................................................................................................24

# TABLE OF AUTHORITIES

**CASES**

*Active Sports Lifestyle USA, LLC v. Old Navy, LLC*,
 2014 U.S. Dist. LEXIS 45575 (C.D. Cal. Mar. 21, 2014) ........................... 10

*Apple Inc. v. Psystar Corp.*,
 673 F. Supp. 2d 943 (N.D. Cal. 2009) ........................................................ 13

*Brighton Collectibles, Inc. v. Pedre Watch Co.*,
 2013 U.S. Dist. LEXIS 151023 (S.D. Cal. Oct. 21, 2013) ........................... 15

*Brighton Collectibles, LLC v. IPPO Jewelry Corp.*,
 2017 U.S. Dist. LEXIS 24868 (C.D. Cal. Feb. 22, 2017) ........................... 13

*Broad. Music, Inc. v. Hathcock*,
 2017 U.S. Dist. LEXIS 136310 (E.D. Cal. Aug. 23, 2017) ........................ 21

*Busch v. Seahawk Software Dev.*, L.L.C., No. CV 04-0425-PHX-PGR,
 2006 U.S. Dist. LEXIS 39484 (D. Ariz. June 12, 2006) ........................... 24

*Educ. Testing Serv. v. Simon*,
 95 F. Supp. 2d 1081 (C.D. Cal. 1999) ........................................................ 21

*ePlus, Inc. v. Lawson Software, Inc.*,
 2011 U.S. Dist. LEXIS 54957 (E.D. Va. May 23, 2011) ........................... 11

*Flexible Lifeline Sys. v. Precision Lift, Inc.*,
 654 F.3d 989 (9th Cir. 2011) ...................................................................... 14

*George Basch Co. v. Blue Coral, Inc.*,
 968 F.2d 1532 (2d Cir. 1992) ...................................................................... 10

*Getty Images (US), Inc. v. Virtual Clinics*,
 2014 U.S. Dist. LEXIS 37611 (W.D. Wash. Mar. 20, 2014) ........................ 5

*Goldie's Bookstore, Inc. v. Superior Court of California*,
 739 F.2d 466 (9th Cir. 1984), ............................................................... 12, 16

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
 481 F.3d 60 (2d Cir. 2007) ............................................................................ 4

*Lermer Germany GmbH v. Lermer Corp.*,
 94 F.3d 1575 (Fed. Cir. 1996). ..................................................................... 9

*Lockheed Martin Corp. v. Network Sols., Inc.*,
 985 F. Supp. 949 (C.D. Cal. 1997) ............................................................. 20

<u>*Malibu Media, LLC v. Sianturi,*</u> 2017 U.S. Dist. LEXIS 123654 (E.D. Cal. Aug. 3, 2017)
 ..................................................................................................................... 22

*McKinney v. Anderson*,
 924 F.2d 1500 (9th Cir. 1991) ....................................................................... 7

*MercExchange, L.L.C. v. eBay, Inc.,*
  500 F. Supp. 2d 556 (E.D. Va. 2007)..................................................................10

*MGM Studios, Inc. v. Grokster, Ltd.,*
  518 F. Supp. 2d 1197 (C.D. Cal. 2007)...........................................7, 13, 19, 23

*Mytee Prods. v. Harris Research, Inc.,*
  2010 U.S. Dist. LEXIS 148463 (S.D. Cal. Jan. 20, 2010)....................9, 10, 11

*Olan Mills, Inc. v. Linn Photo Co.,*
  23 F.3d 1345 (8th Cir. 1994);...........................................................................23

*Pac. & S. Co., Inc. v. Duncan,*
  744 F.2d 1490 (11th Cir. 1984)........................................................................23

*Perfect 10, Inc. v. Amazon.com, Inc.,*
  487 F.3d 701 (9th Cir. 2007)............................................................................23

*Perfect 10, Inc. v. CCBill LLC,*
  488 F.3d 1102 (9th Cir. 2007)..........................................................................20

*Princeton Univ. Press v. Michigan Document Serv. Inc.,*
  99 F.3d 1381 (6th Cir. 1996)............................................................................23

*Religious Tech. Ctr. v. Netcom On-Line Commun. Servs.,*
  923 F. Supp. 1231 (N.D. Cal. 1995)...................................................................6

*Silverstein v. Penguin Putnam, Inc.,*
  368 F.3d 77 (2d Cir. 2004)...............................................................................16

*Ted Arnold Ltd. v. Silvercraft Co.,*
  259 F. Supp. 733 (S.D.N.Y. 1966).....................................................................4

*Tiffany (NJ) Inc. v. eBay, Inc.,*
  576 F. Supp. 2d 463 (S.D.N.Y. 2008)..............................................................20

*Wakefield v. Olenicoff,*
  2015 U.S. Dist. LEXIS 43274 (C.D. Cal. Mar. 30, 2015)...............................17

*Warner Bros. Inc. v. Dae Rim Trading, Inc.,*
  877 F.2d 1120 (2d Cir.1989).........................................................................4, 7

*Warner Bros. Records, Inc. v. Romero,*
  2007 U.S. Dist. LEXIS 83158 (N.D. Cal. Aug. 14, 2007)...............................23

*Williams v. Bridgeport Music, Inc.,*
  2015 WL 4479500 (C.D. Cal. July 14, 2015)."...................................................6

**STATUTES**

15 U.S.C. §1116.....................................................................................................6
15 U.S.C. §1118.....................................................................................................6
17 U.S.C. § 502(a).................................................................................................8
17 U.S.C. § 503(a)(1)C)........................................................................................8
17 U.S.C. § 503(b).................................................................................................4
17 U.S.C. § 512(c)...............................................................................................25

iii

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR POST-TRIAL EQUITABLE RELIEF.
CASE NO. 2:16-CV-04587

17 U.S.C. § 512(i) .................................................................................................. 25

17 U.S.C. § 512(j)(1)(A) ....................................................................................... 25

17 U.S.C. §106 ....................................................................................................... 14

Cal. Civ. Code §3422(2) ........................................................................................ 13

Fed. R. Civ. Proc. 53(a)(1)(B) ................................................................................ 7

Fed. R. Civ. Proc. 53(a)(1)(C) ................................................................................ 7

iv

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR POST-TRIAL EQUITABLE RELIEF.

CASE NO. 2:16-CV-04587

Plaintiff Greg Young Publishing, Inc. ("GYPI" or "Plaintiff") respectfully submits this reply memorandum in support of post-trial equitable relief against defendant Zazzle Inc. ("Zazzle" or "Defendant").

## I. INTRODUCTION

With the exception of a single one-time effort in 2013 to root out infringements by using text searches[1], Zazzle's business practice has been to manufacture and sell products that infringe plaintiff's copyrights until it gets caught.

Zazzle's opposition makes clear it has not and will not change its "infringe until caught" business practice unless ordered by the court to do so. Zazzle opposes a permanent injunction requiring it not to infringe 108 (39 listed in complaint + 69 others) copyrighted images owned by plaintiff, in part, because of "the impact on Zazzle and its business model." Dkt. 149 (D. Brf) at 13:16. Zazzle's opposition claims it "spends millions of dollars on anti-infringement measures." Dkt. 149 (D. Brf) at 12:2-3. But Zazzle does not even maintain a database of plaintiff's copyrighted images to give Zazzle's Content Management Team members even the ability to determine whether an uploaded image infringes any of plaintiff's copyrights (even though the cost of such a database would be "insignificant"). Quinn Reply Decl.[2], ¶2(f). Zazzle's opposition produces no evidence that rebuts plaintiff's evidence that the published cost to conduct a reverse image search on TinEye would be a fraction of a penny per image searched. Since Zazzle is reportedly owned, in part, by Google, perhaps Zazzle could license Google's reverse image search software for even less. Quinn Reply Decl., ¶8.

As discussed in §II, this court has discretion under 17 U.S.C. §503 to order the *one time* "destruction" of Zazzle's *presently existing infringing electronic files* that infringe

---

[1] Dkt. 141-1 (D.MJ.Brf), at 3:14-16 ("At *one point in time* [October 2013], Zazzle made a *specific effort to try to remove all products* that might potentially infringe Plaintiff's copyrights *by using keyword searches* to try to find those products and remove them.") (emphasis added).

[2] All references to "Quinn Reply Decl." refer to the Reply Declaration Of Darren J. Quinn In Support Of Plaintiff's Motion For Post-Trial Equitable Relief, filed concurrently.

1

plaintiff's specified copyrighted images located after a ***reverse image search***.  It has been four years since Zazzle conducted its one time ***text search*** to remove infringing images in 2013.  Zazzle has absolutely no need to retain infringing electronic files, and their destruction will help prevent infringement of plaintiff's copyrights in the future.  As discussed in §II.A, a §503 "destruction" order is not (and should not be) limited to extreme circumstances in the Ninth Circuit. *See* Dkt. 149 (D.Opp), at 18:15.  As discussed in §II.B, because it is only a ***one-time*** reverse image search of plaintiff's 108 images (39 listed in complaint + 69 others), there should be no requirement that the four part test for ***ongoing*** injunctive relief against a party be satisfied.  In fact, the court could order a third party court-appointed expert to carry out the reverse image search, which obviously does not require the four factor injunctive relief inquiry.  Once the infringing images are identified for "destruction," then the court and plaintiff will finally know whether the infringing sales on Trial Ex. 287 (Dkt. 150-22) were just the tip of the iceberg or the entire iceberg.

As discussed in §III, an ***ongoing*** permanent injunction is required to "prevent or restrain infringement" under 17 U.S.C. §502 with respect to the manufacture and sale of infringing physical products from infringing images ***uploaded in the future*** (after the destruction of presently existing infringing files).  As discussed in §III.A., Zazzle has not rebutted plaintiff's strong showing that the four injunctive relief factors weigh in favor of a permanent injunction.  As discussed in §III.B, the language of plaintiff's proposed Permanent Injunction (Dkt. 142-10) is supported by case law, but the court could exercise its discretion to narrow some language based upon Zazzle's objections.  As discussed in §III.C, the parties can always move the court to modify (or even terminate) the permanent injunction if a proper showing is made.

In short, Zazzle's "infringe until caught" business practice needs to end as it relates to plaintiff.  Plaintiff does not want to file any more copyright infringement lawsuits against Zazzle and face the uncertainty of statutory damages as low as $750 (or even $200) per infringed work.  Zazzle, on the other hand, apparently wants to argue that this

2

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR POST-TRIAL EQUITABLE RELIEF.
CASE NO. 2:16-CV-04587

Court should not order it to destroy infringing electronic files or stop infringing, so it can argue that its "infringe until caught" business practice has been blessed by the Court.

## II.   THE PRESENT: *ONE-TIME* "DESTRUCTION" OF INFRINGING ELECTRONIC FILES PURSUANT TO §503(B)

Zazzle implicitly concedes that its 2013 one-time effort to identify and remove infringing images via text search (not reverse image search) resulted in a reduction of infringing sales.   Zazzle's motion for judgment opening brief states: "At *one point in time* [October 2013], Zazzle made a *specific effort to try to remove all products* that might potentially infringe Plaintiff's copyrights *by using keyword searches* to try to find those products and remove them." Dkt. 141-1 (D.MJ.Brf), at 3:14-16 (emphasis added). Zazzle's opposition brief also notes: "Zazzle undertook an active effort to remove all of Plaintiff's images that it could locate from its website in late 2013" and that infringing sales thereafter decreased.  Dkt. 149 (D.Opp.Brf) at 12:6-8.  This makes sense because, presumably, if Zazzle destroyed an infringing image from supplier/designer A, then Zazzle could no longer manufacture and sell infringing products from supplier/designer A's image.  Of course, if supplier/designer B was not identified by Zazzle's text search for infringing images, then Zazzle would continue to manufacture and sell infringing physical products from supplier/designer B.

But Zazzle also concedes that infringing sales after its one time effort in 2013 did not completely stop its manufacture and sale of infringing products.  Zazzle argues that about "half" of the infringing sales occurred after its October 2013 one-time effort. Zazzle's opposition also argues that the destruction of presently existing infringing electronic files "would have no practical effect, as new files would simply be generated if the images were uploaded again by" its image licensors/designers. Dkt. 149 (D.Opp.Brf) at 19:3-4.  This is why a permanent injunction is also required as set forth in §III.

Zazzle's opposition argues the Court should not order the destruction of presently existing infringing files because: (1) there are no "extreme circumstances" that justify

"destruction" under §503; and (2) plaintiff "does not meet the standard for injunctive relief" under the four injunctive relief factors.  *See* Dkt. 149 (D.Opp.Brf) at 18:23-28. Zazzle is wrong as discussed below.

### A.   The Court Has Discretion To Order Destruction of Infringing Electronic Files With Or Without "Extreme Circumstances"

Zazzle's opposition argues: "Impoundment is a 'drastic act,'" "Impoundment and destruction are rare and extraordinary remedies that are not warranted here" and "[t]here are no similarly extreme circumstances here."  Dkt. 149 (D.Opp.Brf) at 18:15-28.

Section 503(b) contains no language that hints that a post-verdict remedy of "destruction" is available only in rare, extraordinary or extreme circumstances.  Section 503(b) simply provides common "may" discretionary language:

> As part of a final judgment or decree, the court **may** order the destruction or other reasonable disposition of all copies or phonorecords found to have been made or used in violation of the copyright owner's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced.

(Emphasis added).

Further, Zazzle's cases using "drastic" or "extraordinary" are Second Circuit *preliminary injunction* cases discussing impoundment under *§503(a)*.  *See* Dkt. 149 (D.Opp.Brf) at 18 citing *Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1125 (2d Cir.1989) and *Ted Arnold Ltd. v. Silvercraft Co.*, 259 F. Supp. 733, 736 (S.D.N.Y. 1966).  The Second Circuit describes a preliminary injunction as an "extraordinary and drastic remedy."  *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 62 (2d Cir. 2007).

In contrast, plaintiff seeks "destruction" under §503(b) of infringing electronic files after a jury verdict against Zazzle on 35 of plaintiff's copyrighted works.  Congress

obviously made a distinction between impoundment before judgment under §503(a) and after a jury award under §503(b).

Finally, it appears that an order under §503(b) after liability has been established is common.

> ***Courts in the Ninth Circuit have ordered the destruction of electronic materials used to infringe copyrights under 17 U.S.C. § 503(b).*** *See, e.g., Sony BMG Music Enter. v. Gray*, No. C-07-4854 WDB, 2008 U.S. Dist. LEXIS 70128, 2008 WL 4239219, at *3-4 (N.D. Cal. Sept. 15, 2008); *Autodesk, Inc. v. Flores*, No. 10-CV-01917-LHK, 2011 U.S. Dist. LEXIS 11687, 2011 WL 337836, at *11 (N.D Cal. Jan. 31, 2011).

*Getty Images (US), Inc. v. Virtual Clinics*, 2014 U.S. Dist. LEXIS 37611, at *26 (W.D. Wash. Mar. 20, 2014) (emphasis added).  None of those cases described the "destruction" remedy under §503(b) as proper only in drastic, extreme or extraordinary circumstances.

### B. *One-Time* "Destruction" of Presently Existing Electronic Files Under §503(b) Does Not Require Weighing of Four Injunctive Relief Factors For *Ongoing* Permanent Injunctive Relief Under §502

Zazzle's opposition argues it must "meet the standard for injunctive relief" to obtain impoundment under §503(b).  *See* Dkt. 19 (D.Brf) at 18:23.  Zazzle's opposition acknowledges that the Ninth Circuit has not determined this issue:

> "Although ***the Ninth Circuit has not identified appropriate factors to consider in making this determination***, several courts have found that the standard for granting a request for impoundment 'mirrors the standard for granting injunctive relief.' *Williams v. Bridgeport Music, Inc.*, 2015 WL 4479500, at *42 (C.D. Cal. July 14, 2015)."

Dkt. 149 (D.Opp.Brf) at 18:19-23 (emphasis added).

Congress provided for the ***one-time*** "destruction" of presently existing infringing copies under §503(b) after copyright infringement has been established.  Similarly, in the trademark infringement cases where a violation "***shall have been established***, the court may order that . . . any reproduction, counterfeit, copy, or colorable imitation thereof  . . . ***shall be delivered up and destroyed***."  15 U.S.C. §1118 (emphasis added).  There is no

5

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR POST-TRIAL EQUITABLE RELIEF.
CASE NO. 2:16-CV-04587

reason to apply weight and apply the four injunctive relief factors with respect to one-time acts.

In contrast, with respect to ***ongoing*** infringing conduct by a party, however, Congress provided for "temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." §503(a). Similarly, in the trademark infringement context, Congress also provided courts the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 43 [15 USCS § 1125]." 15 U.S.C. §1116.  Because the party is being enjoined for a period of time or even permanently, application of the four injunctive relief factors is proper.

Congress did not specify that the "destruction" of infringing copies under §503(b) has to be done by a party.  With respect to prejudgment impounding under §503(a), such impounding is done by a law enforcement officer, such as a U.S. Marshal.  *Religious Tech. Ctr. v. Netcom On-Line Commun. Servs.*, 923 F. Supp. 1231, 1240 (N.D. Cal. 1995) ("order directing the clerk to issue a writ of seizure under 17 U.S.C. § 503(a). . . in execution of the writ of seizure, local police officers entered Erlich's home to conduct the seizure.").  Zazzle's citation of *Warner Bros. v. Dae Rim Trading, Inc*, 877 F.2d 1120, 1125 (2d Cir. 1989) ("When the Supreme Court provided in Rules 4 and 5 that the writ of seizure should be issued to and executed by a marshal, it adopted a rule widely and wisely used in both civil and criminal cases.") also supports this.  *See* Dkt. 149 (D.Opp.Brf) at 18:14.

The Court appointment of its own expert does not require the Court to apply the four injunctive relief factors.  The Court could appoint its own expert to coordinate, manage or supervise the identification of infringing electronic files for "destruction" under §503(b).

> Under Rule 706, *the court may on its own motion or on the motion of another party appoint an expert witness*. Fed. R. Evid. 706(a). The expert so appointed is entitled to reasonable compensation as the court may allow, and in a civil case the compensation is "paid by the parties in [*1511] such proportion and at such time as the court directs, and thereafter charged in like manner as other costs," unless funds have been provided by law to pay the compensation. Fed. R. Evid. 706(b).

*McKinney v. Anderson*, 924 F.2d 1500, 1510-11 (9th Cir. 1991) (emphasis added).

The Court can also appoint a special master under Fed. R. Civ. Proc. 53(a)(1)(B) to "perform an accounting" of the original Zazzle electronic files that are flagged as infringing as a result of a reverse image search or under Fed. R. Civ. Proc. 53(a)(1)(C) to "address. . .posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district."  In *MGM Studios, Inc. v. Grokster, Ltd*., 518 F. Supp. 2d 1197, 1237 (C.D. Cal. 2007) the Court ordered it would appoint a special master to "assist this Court in selecting a filtering regimen that reduces Morpheus's infringing capacity, preserves its noninfringing functionality as feasible, and analyzes any potential cost concerns."  This is similar to the reverse image search technology that plaintiff proposes for the one-time identification of files for destruction under §503(b) and the optional safe harbor for Zazzle on the injunctive relief under §502.

Plaintiff proposes expert Prof. Jeff Sedlik as a prospective court expert witness and/or special master regarding reverse image search issues regarding Zazzle electronic files.  Prof.Sedlik, who is in Pasadena, California, has extensive experience on reverse image searching and can coordinate, manage or supervise the identification of infringing electronic files under §503(b).  Zazzle has already deposed Prof. Sedlik in another copyright infringement action.  Quinn Reply Decl., ¶¶3-5.

The report identifying the infringing electronic files will indicate whether the infringing sales on Trial Ex. 287 (Dkt. 150-22) were just the tip of the iceberg for infringing sales.  The Court has the power under §503(a)(1)C to order the impounding of "records documenting the manufacture, sale, or receipt of things involved in any such violation."

In the event the Court determines that it must apply the four injunctive relief factors to order the one-time "destruction" of presently existing infringing electronic files under §503(b), then as discussed in §III.A below, those factors also support "destruction" under §503(b).

## III.   THE FUTURE: *ONGOING* PERMANENT INJUNCTIVE RELIEF TO "PREVENT OR RESTRAIN INFRINGEMENT" PURSUANT TO §502

Zazzle agrees: "A court 'may ... grant ... injunctions on such terms as it may deem reasonable to prevent or restrain infringement.' 17 U.S.C. § 502(a)." Dkt. 149 at 2.

As discussed in §III.A, Zazzle incorrectly argues that each of the four injunctive relief factors weigh against permanent injunction.

As discussed in §III.B, the Court should reject Zazzle's objections to the language of plaintiff's proposed Permanent Injunction.  To the extent the Court finds that any of Zazzle's objections have merit, the language of the Permanent Injunction can be easily modified.

As discussed in §III.C, even a permanent injunction can be modified or terminated if the facts or law warrant.

### A.   The Four Injunctive Relief Factors Weigh In Favor Of A Permanent Injunction

#### 1.   Irreparable Harm

##### a.   Plaintiff's Request For Permanent Injunctive Relief Is Timely

Primarily citing *preliminary injunction* cases, Zazzle argues that plaintiff's "long delay in seeking injunctive relief, . . . , weighs heavily against any claim of irreparable harm." Dkt. 149 (D.OppBrf) at 3:16-18.   "Preliminary and permanent injunctions are two 'distinct forms of equitable relief that have different prerequisites and serve entirely different purposes.'" *Mytee Prods. v. Harris Research, Inc.*, 2010 U.S. Dist. LEXIS

148463, at *6 (S.D. Cal. Jan. 20, 2010) *quoting Lermer Germany GmbH v. Lermer Corp.*, 94 F.3d 1575, 1577 (Fed. Cir. 1996).

Plaintiff's instant motion for ***permanent injunction*** was timely filed pursuant to stipulation and court order within a month of the jury verdict.   *See* Dkt. 138 (Stipulation), ¶1 and Dkt. 139 ("The parties shall file any post-judgment motions on or before **September 7, 2017** with the hearing on such motions to be held **Monday, October 16, 2017 at 1:30 p.m**.")  "Because a permanent injunction cannot be sought until after a full determination on the merits, Harris did not delay in seeking a permanent injunction." *Mytee Prods.*, 2010 U.S. Dist. LEXIS 148463, at *6.

Excluding preliminary injunction cases, Zazzle does cite permanent injunction cases that found a plaintiff's failure to seek preliminary injunctive relief was a factor weighing against a permanent injunction.  *See Dkt*. 149 (D.Opp.Brf) at 3-4 citing *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1542 (2d Cir. 1992); *Active Sports Lifestyle USA, LLC v. Old Navy, LLC*, 2014 U.S. Dist. LEXIS 45575, at *10 (C.D. Cal. Mar. 21, 2014) (*citing George Basch*); and *MercExchange, L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d 556, 573 (E.D. Va. 2007).  The only Ninth Circuit District Court case that Zazzle cites, *Active Sports Lifestyle*, also had distinguishable facts: "The jury found Old Navy liable for infringement of Active's federally registered and common law trademarks in the word ACTIVE, but awarded Active no damages and none of Old Navy's profits."  2014 U.S. Dist. LEXIS 45575, at *2.  Here, the jury has awarded plaintiff statutory damages.

Other cases, however, have held that a failure to seek a preliminary injunction is not a factor weighing against a permanent injunction because there are significant differences between preliminary and permanent injunctions; moreover, there is a policy concern that preliminary injunction cases would substantially increase merely to protect the future right to a permanent injunction.  In *Mytee Prods.*, the district court rejected defendant's argument that because plaintiff "did not seek a preliminary injunction, it delayed in seeking equitable relief and should not be afforded such relief now after a determination

1  on the merits."  2010 U.S. Dist. LEXIS 148463, at *6.  On appeal, the Southern District of

2  California Court was affirmed.

> Mytee also argues that the district court erred by failing to consider Harris's delay in moving for an injunction. ***Mytee's claim of delay refers to Harris's decision not to seek a preliminary injunction. HN6*** While we have held that delay in seeking an injunction is a factor to be considered in determining whether to issue a preliminary injunction*, **we have never held that failure to seek a preliminary injunction must be considered as a factor weighing against a court's issuance of a permanent injunction***. See Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1457 (Fed. Cir. 1988) ("The period of delay exercised by a party prior to seeking a preliminary injunction . . . . is but one circumstance that the district court must consider in the context of the totality of the circumstances [in entering a preliminary injunction]."). ***Mytee has failed to persuade us that we should adopt such a rule.*** There are ***significant differences in the requirements and uses of preliminary and permanent injunctions***. *See Lermer Ger. GmbH v. Lermer Corp.*, 94 F.3d 1575, 1577 (Fed. Cir. 1996) ([Preliminary and permanent injunctions] are distinct forms of equitable relief that have different prerequisites and serve entirely different purposes."). ***Moreover, adopting a rule such as that proposed by Mytee would likely result in a substantial increase in the number of requests for preliminary injunctions***; in many cases, ***such requests would be filed not because of the need for preliminary injunctive relief, but merely to protect the patent owner's ultimate right to a permanent injunction***. Accordingly, we reject Mytee's "delay" argument and conclude that the district court did not abuse its discretion in entering a permanent injunction in this case.

19  *Mytee Prods. v. Harris Research, Inc.*, 439 F. App'x 882, 888 (Fed. Cir. 2011).  *See also*

20  *ePlus, Inc. v. Lawson Software, Inc.*, 2011 U.S. Dist. LEXIS 54957, at *42 (E.D. Va. May

21  23, 2011) ("Moreover, there is no requirement that a party must seek a preliminary

22  injunction as the predicate to securing a permanent one. . . . Indeed, principles of judicial

23  efficiency and sound judicial administration strongly militate against such a rule, lest the

24  courts be besieged with motions for preliminary injunction filed to preserve the right to

25  permanent injunctive relief.").

26      Thus, plaintiff's decision not to file a preliminary injunction is not a factor

27  weighing against a permanent injunction.  To the extent it is a factor, it should be given

28  little to no weight because the case proceeded on an expedited summary judgment and

trial schedule.  A preliminary injunction motion would have also delayed the case –
especially if either side exercised its right to immediate appeal of any preliminary
injunction order.

**b.**        **Loss of Market Share, Customers, Goodwill or Reputation**

In response to plaintiff's unrebutted evidence of "Loss Of Market Share,
Prospective Customers, Goodwill or Reputation" (Dkt. 142-1 at 2-3), Zazzle irrelevantly
argues that plaintiff did not present such evidence during the jury trial.  *See* Dkt. 149
(D.Opp.Brf) at 4.  As the jury instructions on amount of statutory damages make clear,
plaintiff was not required to present ***any*** evidence regarding loss of market share,
customers, goodwill or reputation.  *See* Dkt. 131 (Jury Instructions) at pdf 19-20.

Zazzle next argues that Greg Young's declaration's "assertions of harm amount to
the mere parroting of conclusory arguments."  Dkt. 149 (D.Opp.Brf) at 4:16-17.  Mr.
Young's declaration clearly shows ***fact of damage*** with respect to loss of market share,
customers, goodwill or reputation.  *See* Dkt. 142-2 (G. Young Decl.), ¶¶2-4.  Thus, unlike
*Goldie's Bookstore, Inc. v. Superior Court of California*, 739 F.2d 466, 472 (9th Cir.
1984), a finding with respect to the fact (but not amount) of loss of market share,
customers, goodwill or reputation would be based upon specific facts including thousands
of infringing sales shown on Ex. 287 (Dkt. 150-22) and poor quality infringing images on
Zazzle's products.  *See* Dkt. 142-2 (G. Young Decl.), ¶¶2-3.

This Court should reject Zazzle's argument that, at the permanent injunction stage,
plaintiff needs "testimony from any experts on lost market share or reputation."  Dkt. 149
(D.Opp.Brf) at 4:11-12.  Further, the difficulty in ascertaining the amount of
compensation for loss of market share, customers, goodwill or reputation should be a
further reason why permanent injunctive relief is appropriate.  *See, e.g.* Cal. Civ. Code
§3422(2) (permanent injunction proper "[w]here it would be extremely difficult to
ascertain the amount of compensation which would afford adequate relief").
Additionally, as explained in §II, until a reverse image search identifies all infringing

11

images, it is impossible to tell if the thousands of infringing sales on Ex. 287 (Dkt. 150-22) is the tip of the iceberg or the entire iceberg.

Zazzle argues that plaintiff did not show "its licensees competed with Zazzle. . ." Dkt. 149 (D.Opp.Brf) at 5:20.  On the contrary, Mr. Young's declaration states "Plaintiff and defendant Zazzle compete directly with respect to many items" and then backed up the statement with admitted trial exhibits. *See* Dkt. 142-2 (G. Young Decl.), ¶2.

Zazzle then incorrectly argues: "But even if GYPI had such evidence, lost sales or market share is insufficient to support an injunction.   Such losses are clearly compensable by money damages and do not constitute irreparable harm."  Dkt. 149 (D.Opp.Brf) at 5:23-24.  Zazzle's argument is contrary to case law that holds that in "run-of-the-mill copyright litigation" irreparable harm is not difficult to establish through evidence of harm to business reputation or market share.  *See, e.g.  MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1215 (C.D. Cal. 2007); *Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 948 (N.D. Cal. 2009); and *Brighton Collectibles, LLC v. IPPO Jewelry Corp.*, 2017 U.S. Dist. LEXIS 24868, at *10 (C.D. Cal. Feb. 22, 2017).

### c.      Right to Control the Copyright

Zazzle argues that plaintiff's loss of control of plaintiff's exclusive rights under 17 U.S.C. §106 cannot constitute irreparable harm after *Flexible Lifeline Sys. v. Precision Lift, Inc.*, 654 F.3d 989, 1000 (9th Cir. 2011). *See* Dkt. 149 (D.Opp.Brf) at 6:13-14. The Ninth Circuit in *Flexible Lifeline* merely held that there is no presumption of irreparable harm in copyright infringement cases and made no holdings regarding loss of control or application of the facts to four injunctive relief factors.  "We believe the better course is to remand to allow the district court to make the requisite factual determinations regarding irreparable harm and apply those factual findings to the four-factor framework to determine whether injunctive relief is warranted."

Next, Zazzle attempts to factually distinguish plaintiff's cases that hold a copyright owner has the right to control use of its copyrighted materials. *See* Dkt. 149 (D.Opp.Brf)

at 6-7.  No amount of legal gymnastics by Zazzle can negate the exclusive rights Congress granted a copyright owner under 17 U.S.C. §106.

Finally, Zazzle incorrectly argues that Mr. Young's declaration regarding loss of control of exclusive rights under §106 is conclusory.  Zazzle confuses conclusory with clear, when Mr. Young states: "***Plaintiff does not want defendant Zazzle to reproduce and distribute any product bearing plaintiff's copyrights***."  Dkt. 142-2 (G. Young Decl.), ¶4 (emphasis added).  If that was not clear enough, Mr. Young explains: "Plaintiff's licensing program is based upon its ability to license its copyrights to its licensors.  Plaintiff also faces the additional harm of damage to relationships with its licensors if plaintiff cannot effectively exercise its exclusive copyrights."  Dkt. 142-2 (G. Young Decl.), ¶4.  Thus, irreparable harm on this ground is sufficiently supported.

### d.    The Threat of Future Infringement and Additional Lawsuits

Zazzle argues "An injunction is improper where any 'future threat of infringement is questionable.'"  Dkt. 149 (D.Opp.Brf) at 7:21-22 quoting *Brighton Collectibles, Inc. v. Pedre Watch Co.*, 2013 U.S. Dist. LEXIS 151023, at *13 (S.D. Cal. Oct. 21, 2013).  In *Brighton Collectibles*, the Court states: "It would be absurd for Defendant to even think about committing another act of infringement." *Id*.

Unlike *Brighton Collectibles*, Zazzle has not changed its business practice and implicitly concedes future infringements when it states that the destruction of presently existing infringing electronic files "would have no practical effect, as new files would simply be generated if the images were uploaded again by" its image licensors/designers.  *See* Dkt. 149 (D.Opp.Brf) at 19:3-4.  Zazzle's opposition also appears to concede future infringement when it argues Zazzle's platform is "overwhelmingly used for non-infringing purposes.  Occasional third-party infringement does not justify an injunction."  Dkt. 149 (D.Opp.Brf) at 8:23-24.

As to additional lawsuits, the Court declined to add plaintiff's copyrighted work AL10 "Aloha from Hawaii" to the lawsuit because it was too close to trial.  As a result

Zazzle's counsel did not revise Trial Exhibit 287 (Dkt. 150-22) showing infringing sales to include AL10.  In an email dated August 7, 2017 (day before trial), Zazzle's counsel states: "AL10 was not included pursuant to the Judge's comments at the pre-trial conference."  Quinn Reply Decl., ¶6.  After the trial, plaintiff has attempted without success to obtain an accounting on AL10.  Quinn Reply Decl., ¶7.  Plaintiff's counsel warned on September 28, 2017:

> The message I am taking from this is that Zazzle is telling GYP, "If you want the accounting, you will have to file a lawsuit to get it."
>
> If that is the message, then rest assured a lawsuit will be filed.

Quinn Reply Decl., ¶7(a).   On August 15, 2017, plaintiff's counsel warned: "if we have to file a lawsuit to get the accounting we will."  Quinn Reply Decl., ¶7(b).

### 2.    Inadequate Remedy At Law

#### a.    Statutory Damages

Zazzle argues: "As adequate compensatory relief for financial injury will always be available to compensate GYPI, an injunction is improper."  Dkt. 149 (D.Opp.Brf) at 9:16-18.

No court has held that a copyright owner's ability to recover statutory damages for copyright infringement makes injunctive relief unavailable.  As a result, Zazzle misplaces its reliance on non-copyright cases.  *See, e.g. Goldie's Bookstore, Inc. v. Superior Court of Cal.*, 739 F.2d 466, 471 (9th Cir. 1984) (unlawful detainer of commercial lease).  Further, as discussed in §III.A.1 above, plaintiff has shown irreparable harm.

#### b.    License

Zazzle also argues "a fair-market value license would also appropriately compensate" plaintiff in the event of future infringement.  Dkt. 149 (D.Opp.Brf) at 9:19-20.

"In the copyright realm, it has been said that an injunction should be granted if denial would amount to a ***forced license*** to use the creative work of another." *Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77, 84 (2d Cir. 2004) (emphasis added). *See also Wakefield v. Olenicoff*, 2015 U.S. Dist. LEXIS 43274, at *23-24 (C.D. Cal. Mar. 30, 2015) (citing *Silverstein* "copyright law does not promote forced transactions"). As discussed in §III.A.1 above, "***Plaintiff does not want defendant Zazzle to reproduce and distribute any product bearing plaintiff's copyrights***." Dkt. 142-2 (G. Young Decl.), ¶4 (emphasis added).

### 3. Balance of Hardships

#### a. Costs of Third Party Reverse Image Search Software

Plaintiff's opening papers presented detailed evidence on the commercially available reverse image search software TinEye and its commercial product MatchEngine. *See* Dkt. 142-4 (Quinn Decl.), ¶¶4-9.

With respect to the ***one-time*** identification and **"destruction"** of infringing electronic files pursuant to §503(b), plaintiff's proposed Permanent Injunction only ***requires*** use of a reverse image search software (*e.g.* TinEye). *See* Dkt. 142-10 (proposed Permanent Injunction), ¶2(a). The reverse image search is ***only*** as to certain uploaded ***original*** electronic files (as opposed to numerous infringing derivative electronic files derived therefrom). *See* Dkt. 142-10 (proposed Permanent Injunction), at 2 n. 1.

With respect to an ***ongoing*** permanent injunction pursuant to §502, plaintiff's proposed Permanent Injunction ***does not require*** use of a reverse image search software (*e.g.* TinEye). Rather, it provides Zazzle the ***option*** of the ***safe harbor*** of a reverse image search to establish no violation of the Permanent Injunction. *See* Dkt. 142-10 (proposed Permanent Injunction), ¶1(c). Thus, since a reverse image search is an ***optional safe harbor***, any cost or effort by Zazzle to take advantage of the ***optional safe harbor*** is not relevant in the balance of hardships factor.

Zazzle argues that plaintiff did not establish "Tineye's ability to search for all of GYPI's images across Zazzle's entire website." Dkt. 149 (D.Opp.Brf) at 10:25. As an initial matter, the reverse image search is not "across Zazzle's entire website." *Id.* Rather, once all infringing electronic files have been destroyed pursuant to §503(b), Zazzle could reverse image search only the approximately 20,000 new images uploaded each day to take advantage of the ***optional safe harbor***. Zazzle makes no argument that TinEye's MatchEngine could not search 20,000 images a day. In lieu of TinEye's technological solution, Zazzle could attempt to search for infringing images through its 30 to 50 or so Content Management Team Members, if only it would provide them with plaintiff's images and instruct them to flag any infringing images. Depending on staffing, Zazzle's team members would have about a minute to review each new image for infringement (20,000 images/ 40 team member / 8 hours) = 62.5 images/hour).

Zazzle also argues "the pricing for Tineye is not what GYPI represents it to be." Dkt. 149 (D.Opp.Brf) at 11:8. TinEye's Corporate plan is $.003/search, so the monthly ***optional safe harbor*** cost to reverse image the search of the 20,000 new images a day would be about **$1,800**. *See* Dkt. 142-4 (Quinn Decl.), ¶8(b) (20,000 X 30 days X $.003). Of course, Zazzle could also at the same time search the images for all of its 500 or so corporate partners for the same price, because the Corporate plan allows Zazzle to search up to "50,000 different images" in addition to the 108 (39 listed in complaint + 69 others) listed in the proposed Permanent Injunction. If so, the pro-rata cost with respect to plaintiff may be **less than $4/month** ($1,800/500 corporate partners = $3.60/month).

In contrast, Zazzle estimates the cost for the ***required one-time*** reverse image to identify infringing original electronic files for "destruction" under §503(b) may be about **$28,500** using TinEye. *See* Dkt. 149 (D.Opp.Brf) at 11:19-20 ("To search against even 10 million images on the 'Corporate' plan would cost $28,500 per month."). Zazzle has not established how many original images there are, but it is hard to conceive that the reverse image searches would take an entire month. Again, as discussed in §II.B, the Court does not have to balance the hardships for a one-time search pursuant to §503(b).

16

Zazzle may have access to reverse image search technology much cheaper than TinEye from its major investor Google.  A July 18, 2005 news post states:

> Google, the online search giant, have invested $16 million in Menlo Park, California based, online marketplace company called Zazzle.

Quinn Reply Decl., ¶8.  Google has very powerful reverse image search software.  *See. e.g.* https://images.google.com/.  Zazzle's own Chief Technology Officer, Robert Beaver III, testified that Zazzle doesn't "have any need to license reversing the search; it's available for free at Google." Dkt. 147 at 42:7-8. Plaintiff would not object to Zazzle licensing Google reverse image search software to search the approximately 20,000 new images Zazzle licenses each day for infringing images.

Additionally, the "mere fact that an adjudicated infringer may have to expend substantial resources to prevent the consummation of further [] infringements is not a central concern," (*Grokster V*, 518 F. Supp. 2d at 1237).

### b.    Zazzle Claimed Millions of Dollars on Anti-Infringement Measures

Zazzle argues that "Zazzle spends millions of dollars on anti-infringement measures." (Dkt. 149 at 12:2-3).  Zazzle does not provide a breakdown for this amount. How much was spent on copyright infringement measures?  Was it primarily related to copyright infringement of its 500 or so corporate partners that represent 10% or so of its $250 million revenues?

As discussed above, in §III.A.3.a, the $4/month to $1,800/month for reverse image searching the approximately 20,000 new images Zazzle licenses each day for infringing images seems miniscule.  Assuming that Zazzle's "millions" represents two million per year, a reverse image search investment would represent at most only about 1% of that budget ($1,800 X 12/$2,000,000) and would certainly be more effective than whatever measures it is currently using.

### c.     Claimed De Minimis Infringing Sales

Zazzle argues that the infringing sales are *de minimis*.  *See* Dkt. 149 (D.Opp.Brf) at 12:19.  Zazzle bases its *de minimis* argument on its listing of infringing sales on Ex. 287 (Dkt. 150-22).

As discussed above, the infringing sales on Ex. 287 may just be the tip of the iceberg because they represent the infringements that Zazzle got caught on by plaintiff.

Until a reverse image search to identify infringing electronic files for deletion pursuant to §503(b) is completed, the entire iceberg will not be known.

### d.     Shift Burden of Policing

Zazzle argues that plaintiff's proposed injunction seeks "to shift the burden of policing its copyrights onto Zazzle."  Dkt. 149 (D.Opp.Brf) at 23.

In support, Zazzle irrelevantly cites DMCA §512(c)(3) notice cases and trademark contributory infringement cases – *not direct copyright infringement permanent injunction cases.* *Perfect 10, Inc. v. CCBill LLC,* 488 F.3d 1102, 1113 (9th Cir. 2007) ("The *DMCA notification procedures* place the burden of policing copyright infringement -- identifying the potentially infringing material and adequately documenting infringement -- squarely on the owners of the copyright.); *Lockheed Martin Corp. v. Network Sols., Inc.*, 985 F. Supp. 949, 967 (C.D. Cal. 1997) ("Lockheed's evidence would only establish liability for *contributory infringement* if NSI had an affirmative duty to police the Internet for infringing uses of Lockheed's *service mark*."); and *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 518 (S.D.N.Y. 2008) ("In effect, Tiffany's *contributory trademark infringement* argument rests on the notion that because eBay was able to screen out potentially counterfeit Tiffany listings more cheaply, quickly, and effectively than Tiffany, the burden to police the Tiffany trademark should have shifted to eBay.") (emphasis supplied above).  The requested permanent injunction is to stop Zazzle's direct copyright infringement.  Direct copyright infringement is strict liability.

18

*See Educ. Testing Serv. v. Simon, 95 F. Supp. 2d 1081, 1087* (C.D. Cal. 1999) (copyright infringement " strict liability").

Plaintiff has the remedy under §502 of a permanent injunction "to prevent or restrain infringement of a copyright."  This statutory remedy would be meaningless if courts could deny an injunction on the ground that plaintiff must police its copyrights.

Further, plaintiff has no effective way to police its copyrights on Zazzle.  First, Zazzle does not offer any reverse image search function to find infringements.  Second, the idea that Zazzle only employs (and only offers) a textual search to look for infringing images is as ridiculous as the idea of a photographer trekking into the jungle with a typewriter instead of a camera for the purpose of capturing wildlife.  Third, Zazzle actually limits  Plaintiff's ability to police its copyrights by only allowing a fraction of Zazzle's image database to be publicly searched.  Young Reply Decl.[3], ¶¶2-3.

### 4.    Public Interest

Without support Zazzle argues: "While the prevention of copyright infringement may serve the public interest in some sense, protection of GYPI's copyrights is fundamentally a private interest."  Dkt. 149 (D.Opp.Brf) at 13.  Plaintiff's law to the contrary is unchallenged.  *See e.g. Broad. Music, Inc. v. Hathcock*, 2017 U.S. Dist. LEXIS 136310 (E.D. Cal. Aug. 23, 2017) ("the public interest would not be disserved by a permanent injunction restraining Defendants from infringing Plaintiffs' copyrights"); *Malibu Media, LLC v. Sianturi*, 2017 U.S. Dist. LEXIS 123654 (E.D. Cal. Aug. 3, 2017) ("Finally, the prevention of copyright infringement serves the public interest.").

Zazzle argues that an injunction "could effectively require Zazzle to individually look at each and every uploaded image to determine whether or not it incorporates any of GYPI's alleged copyrights, severely hampering Zazzle's ability to provide its services to its users."  Dkt. 149 (D.Opp.Brf) at 13:22-23.  This is an "I'm too big to be bothered by

---

[3] All references to "Young Reply Decl." refer to the Reply Declaration Of Greg Young In Support Of Plaintiff's Motion For Posttrial Equitable Relief, filed concurrently.

copyright law" argument.  As discussed above, Zazzle has the **option** to take advantage of a reverse image search **safe harbor** if it believes that is in its interest.

Zazzle also argues "GYPI's proposed injunction would hamstring Zazzle's ability to compete in this sphere and is thus against the public interest." Dkt. 149 (D.Opp.Brf) at 14:3-4.  As a matter of law, Zazzle does not have the right to compete based upon a willfully blind "infringe until caught" business policy.

### B.     The Proposed Permanent Injunction

#### 1.     Zazzle Implicitly Concedes Injunction Proper As To Manufacture And Sale Of 35 Works At Trial

Zazzle argues: "GYPI proceeded to trial on the theory that Zazzle's manufacture of thirty-five specific artworks violated GYPI's copyrights.  GYPI's injunction goes beyond the manufacture of products, and includes any "display" of the copyrighted works, and then goes on to include numerous works not at issue at trial."  Dkt. 14:25-26.

By implication, Zazzle does not oppose plaintiff's proposed Permanent Injunction (Dkt. 142-10) to the extent it is limited to the 35 works at trial and excludes injunctive relief regarding the display of infringing images on its website.  If necessary, plaintiff is willing to modify and narrow the proposed Permanent Injunction.  As discussed below, however, no modification appears to be necessary.

#### 2.     Zazzle's Objections To Proposed Permanent Injunction

#### a.     Works In Addition To 35 Works At Trial

Zazzle argues: "There were thirty-five (35) works at issue at trial. Any injunction must be limited to those works – the "specific harm" alleged and proven."  Dkt. 149 (D.Opp.Brf) at 15:25-26.

"Because the permanent injunction may extend to 'any copyright,' this includes: (1) all valid and subsisting copyrights in existence at the time the injunction is issued (not simply those a defendant has been held liable for infringement), and (2) any valid and

20

subsisting copyright not yet created." *MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1229 (C.D. Cal. 2007).    The Ninth Circuit explains:

> Once a court has jurisdiction over an action for copyright infringement under section 411, ***the court may grant injunctive relief to restrain infringement of any copyright, whether registered or unregistered****. See, e.g., Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1349 (8th Cir. 1994); *Pac. & S. Co., Inc. v. Duncan*, 744 F.2d 1490, 1499 n.17 (11th Cir. 1984).

*Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 710 n.1 (9th Cir. 2007).  *See also Warner Bros. Records, Inc. v. Romero*, 2007 U.S. Dist. LEXIS 83158, at *24-25 (N.D. Cal. Aug. 14, 2007) ("An injunction protecting against infringement of future copyrighted works is permitted"); *Princeton Univ. Press v. Michigan Document Serv. Inc.*, 99 F.3d 1381, 1392-93 (6th Cir. 1996) ("The weight of authority supports the extension of injunctive relief to future works."); *Busch v. Seahawk Software Dev., L.L.C.*, No. CV 04-0425-PHX-PGR, 2006 U.S. Dist. LEXIS 39484, at *14 (D. Ariz. June 12, 2006) ("The Court further concludes that Seahawk and Bullock should be permanently enjoined from infringing not only the copyrighted software at issue, but also from infringing all of the plaintiff's copyrighted works, including his future copyrighted works.").

The proposed Permanent Injunction (Dkt. 142-10) attaches as **Exhibit A** (Dkt. 142-11) the 39 "copyrighted works identified on the joint trial exhibit list."  Dkt. 142-10 (proposed Permanent Injunction), ¶1.  Thus, the Court should rule that the 35 works that the jury awarded damages on and the four (4) "display only" works plaintiff did not seek damages on at trial should be part of the Permanent Injunction.

The proposed Permanent Injunction (Dkt. 142-10) attaches as **Exhibit B** (Dkt. 142-12) 69 "other copyrighted works owned by Plaintiff."  Dkt. 142-10 (proposed Permanent Injunction), ¶1.  Pursuant to the above authority, the Permanent Injunction may include these works as well.

Finally, the proposed Permanent Injunction (Dkt. 142-10) provides: "Plaintiff may supplement and update the copyrighted works identified in Exhibit B by filing and serving via CM/ECF a Supplement identifying additional copyrighted works owned by Plaintiff." Dkt. 142-10 (proposed Permanent Injunction), ¶1.  These are akin to "future works" under the above authority.

### b.    "Display Only" Copyrighted Works

To simplify the jury trial, plaintiff did not pursue an award of statutory damages with respect to four "display only" copyrighted works, so the jury would not have to determine numerous DMCA §512(i) eligibility and §512(c) safe harbor issues.  Zazzle claims this means that plaintiff cannot obtain injunctive relief with respect to such "display only" works.

Zazzle argues: "GYPI cannot now assert that an injunction ought to reach alleged "image-only" infringements, where GYPI prevented Zazzle from litigating the DMCA issue before a jury."  Dkt. 149 (D.Opp.Brf) at 15:10-12.

As explained above in §III.B.2.a, a permanent injunction can reach unregistered copyrights and future works never litigated.  There is no reason why the injunction cannot reach "display only" copyrighted works – especially since Zazzle never established all of the conditions of eligibility under §512(i) and its lack of a proper copyright infringement policy and implementation makes any §512(c) safe harbor remote.

But even assuming Zazzle did fully establish its DMCA §512(c) safe harbor defense, §512(j) would still allow an injunction as to "display only" works.  Section 512(j)(1)(A) provides, in part:

> (A)  With respect to conduct other than that which qualifies for the limitation on remedies set forth in subsection (a), the court may grant injunctive relief with respect to a service provider only in one or more of the following forms:
>
> (i)  An order restraining the service provider from providing ***access to infringing material or activity residing at a particular online site on the provider's system or network***.
>
> * * *

(iii)  Such other injunctive relief as the court may consider necessary to ***prevent or restrain infringement of copyrighted material specified in the order of the court at a particular online location***, if such relief is the least burdensome to the service provider among the forms of relief comparably effective for that purpose.

(Emphasis added).  Thus, even if Zazzle's DMCA §512(c) defense was established, the Court could still restrain "access to infringing [display only] material or activity residing at a particular online site [www.zazzle.com] under §512(j)(1)(A)(i).  Similarly, the Court could still "prevent or restrain infringement of copyrighted [display only] material specified in the order of the court [at Exs. A and B] at a particular online location [www.zazzle.com]. . . ."

If the Court disagrees with the above, then the Court can modify the language to add a subparagraph that: "This permanent injunction does not apply to the display of images on www.zazzle.com"

### c.    No Limitation on Plaintiff's Ability to Supplement Works

Zazzle argues: "it is inequitable to allow this "supplement" process, because GYPI is under no obligation to prove (1) that it owns the works in question, (2) that Zazzle has infringed the works in question, or (3) that there is any likelihood that Zazzle will infringe the works in question."  Dkt. 149 (D.Opp.Brf) at 16:7-10.

Currently, the proposed Permanent Injunction provides: "Plaintiff may supplement and update the copyrighted works identified in Exhibit B by filing and serving via CM/ECF a Supplement identifying additional copyrighted works owned by Plaintiff." Dkt. 142-10 (Proposed Permanent Injunction), ¶1.  If the court believes that Zazzle's proposed process is necessary, then plaintiff does not oppose modifying the language to read: "Plaintiff may file CM/ECF a motion to supplement and update the copyrighted works identified in Exhibit B that establishes it owns the works in question."

The court should not include Zazzle's suggested language: "(2) that Zazzle has infringed the works in question, or (3) that there is any likelihood that Zazzle will infringe

the works in question." Dkt. 149 (D.Opp.Brf) at 16:7-10.  No such language is required for future works under the above authorities.

### d.     Contempt for Unknown Acts by Unknown Third Parties

Zazzle argues that the proposed Permanent Injunction "threatens contempt for unknown acts by unknown third parties who upload images onto Zazzle's website."  Dkt. 149 (D.Opp.Brf) at 17:23-24.

Zazzle's image licensor/designers who upload images are not "unknown third parties."  Zazzle has a contractual licensor-licensee relationship, and Zazzle has their names and contact information.

### C.     Zazzle Can Always Move To Modify Injunction

Paragraph 5 of the proposed Permanent Injunction provides: "The Court shall maintain jurisdiction over this action for the purposes of enforcing this Permanent Injunction and for amending the injunction in response to future changes in the law or factual circumstances.  *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster*, 518 F. Supp. 2d 1197, 1239-40 (C.D. Cal. 2007) (collecting cases)."

Thus, either party can move to modify or terminate the injunction as allowed by law.

## IV.   CONCLUSION

This court should enter plaintiff's proposed Permanent Injunction.  Dkt. 142-10.  If necessary, plaintiff does not oppose the modifications to the proposed Permanent Injunction discussed herein.

Dated:          October 2, 2017                    Respectfully Submitted,

                                                   LAW OFFICES OF JEFFREY YOUNG
                                                   JEFFREY S. YOUNG
                                                   JACOB P. AINCIART

24

AQUILINO LAW
JASON A. AQUILINO

LAW OFFICES OF DARREN J. QUINN
DARREN J. QUINN


By:   ___s/s___Darren__J._Quinn_____
              Darren J. Quinn

12702 Via Cortina, Suite 105
Del Mar, CA 92014

*Attorneys for Plaintiff Greg Young
Publishing, Inc.*

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR POST-TRIAL EQUITABLE RELIEF.
CASE NO. 2:16-CV-04587

## CERTIFICATE OF SERVICE

I certify that all counsel of record are being served on October 2, 2017 with a copy of the following documents via the Court's CM/ECF system.

– **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR POST-TRIAL EQUITABLE RELIEF**
-- **REPLY DECLARATION OF GREG YOUNG IN SUPPORT OF PLAINTIFF'S MOTION FOR POSTTRIAL EQUITABLE RELIEF**
-- **REPLY DECLARATION OF DARREN J. QUINN IN SUPPORT OF PLAINTIFF'S MOTION FOR POSTTRIAL EQUITABLE RELIEF**

                                _____/s/ Darren J. Quinn_____
                                DARREN J. QUINN

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR POST-TRIAL EQUITABLE RELIEF.
CASE NO. 2:16-CV-04587